**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DERRICK JACOBS,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 19-4616 |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| Defendants. | : | |

## ORDER

    **AND NOW**, this _____ day of _____, 2021, upon consideration of Defendants City of Philadelphia, Commissioner Danielle Outlaw, Deputy Commissioner Christine Coulter, District Attorney Lawrence Krasner, Assistant District Attorney Tracy Tripp, Chief Inspector Dennis Wilson, Deputy Commissioner Benjamin Naish, Inspector DF Pace, Lieutenant Jason Hendershot, and Lieutenant Patrick Quinn's Motion to Dismiss, and any response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**. All claims against Defendants are dismissed.

**BY THE COURT:**

_____
**HARVEY BARTEL, III,** J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DERRICK JACOBS,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 19-4616 |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS CITY OF PHILADELPHIA, COMMISSIONER DANIELLE OUTLAW,
DEPUTY COMMISSIONER CHRISTINE COULTER, DISTRICT ATTORNEY
LAWRENCE KRASNER, ASSISTANT DISTRICT ATTORNEY TRACY TRIPP, CHIEF
INSPECTOR DENNIS WILSON, DEPUTY COMMISSIONER BENJAMIN NAISH,
INSPECTOR DF PACE, LIEUTENANT JASON HENDERSHOT, AND LIEUTENANT
PATRICK QUINN'S
<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

Defendants City of Philadelphia, Commissioner Danielle Outlaw, Deputy Commissioner
Christine Coulter, District Attorney Lawrence Krasner, Assistant District Attorney Tracy Tripp,
Chief Inspector Dennis Wilson, Deputy Commissioner Benjamin Naish, Inspector DF Pace,
Lieutenant Jason Hendershot, and Lieutenant Patrick Quinn file this Motion to Dismiss for
Failure to State a Claim under Fed. R. Civ. Pro. 12(b)(6), seeking that the claims against them be
dismissed on the grounds more fully described in the supporting memorandum of law.

Respectfully Submitted,

CITY OF PHILADELPHIA
LAW DEPARTMENT

Date: <u>February 10, 2021</u>  BY: <u>  s/ Kia Ghee  </u>
Kia Ghee, Esq.
Deputy City Solicitor

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DERRICK JACOBS,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 19-4616 |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS CITY OF PHILADELPHIA, COMMISSIONER DANIELLE OUTLAW, DEPUTY COMMISSIONER CHRISTINE COULTER, DISTRICT ATTORNEY LAWRENCE KRASNER, ASSISTANT DISTRICT ATTORNEY TRACY TRIPP, CHIEF INSPECTOR DENNIS WILSON, DEPUTY COMMISSIONER BENJAMIN NAISH, INSPECTOR DF PACE, LIEUTENANT JASON HENDERSHOT, AND LIEUTENANT PATRICK QUINN'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

Defendants City of Philadelphia, Commissioner Danielle Outlaw, Deputy Commissioner Christine Coulter, District Attorney Lawrence Krasner, Assistant District Attorney Tracy Tripp, Chief Inspector Dennis Wilson, Deputy Commissioner Benjamin Naish, Inspector DF Pace, Lieutenant Jason Hendershot, and Lieutenant Patrick Quinn submit this Memorandum of Law in Support of their Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6), and seek dismissal of Plaintiff's Second Amended Complaint for the following reasons:

- All claims against District Attorney Lawrence Krasner and ADA Trip should be dismissed because the alleged constitutional violations occurred in the course of their role as advocate for the state and are entitled to absolute immunity from suit for damages;

- Plaintiff fails to state a First Amendment retaliation claim actionable under § 1983;

- Plaintiff fails to state a claim under the Pennsylvania Whistleblower Law;

- Plaintiff fails to state a Fourteenth Amendment due process claim actionable under §1983; and

- Plaintiff' Fails to state an actionable §1983 conspiracy claim.

## I.    **FACTUAL SUMMARY**[1]

### a.   **Plaintiff's employment history.**

On January 22, 1996, Plaintiff Derrick Jacobs ("Plaintiff"), was appointed as a Police Officer for the Philadelphia Police Department. He was promoted to Detective on December 16, 1998. *See* Plaintiff's Amended Compl. (ECF 2:19-cv-04616-HB Doc. 3)

On June 5, 2017, Plaintiff was transferred to an assignment within the District Attorney's Office ("DAO") at the Officer Involved Shooting Investigation ("OIS") Unit. *Id.*

### b.   **Plaintiff is assigned to the Police Shooting involving Officer Ryan Pownall.**

On June 8, 2017, Plaintiff investigated a police shooting involving Police Officer Ryan Pownall ("Pownall"). Plaintiff became an integral part of the investigation, interviewing the majority of fact witnesses. *Id. See also* Pl. 2nd Am. Compl. ¶ 1.

In November 2017 Plaintiff alleges he was "informed" by the Pennsylvania Attorney General's Office ("AGO") that there would be no charges brought against Pownall. *Id.* ¶ 2.

After the election of District Attorney Krasner, the DAO sought to prosecute Pownall. *Id.* ¶¶ 3-4. Assistant District Attorney Tracy Tripp ("ADA Tripp") initiated an indicting grand jury against Pownall. *Id.* ¶

On Thursday, August 2, 2018, ADA Tripp contacted Plaintiff to review his potential grand jury testimony. During this conversation, Plaintiff relayed his concerns regarding the

---

[1] For the limited purposes of this Motion to Dismiss, Defendants accept the facts as pled by Plaintiff as true.

prosecution of Pownall and stated that Attorney General Christopher Phillips ("AG Phillips") told him that no charges would be brought against Pownall based on AG Phillips's meeting with a key witness. ECF 2:19-cv-04616-HB Doc. 3.ADA Tripp never involved Plaintiff in investigation after their phone call. *Id.*

### c. Plaintiff believes Pownall inditement is based on false or perjured testimony.

On or around September 2018, Plaintiff reviewed the grand jury presentment pertaining to Officer Pownall. *See* Pl. 2nd Am. Compl. ¶ 9.After reviewing the grand jury presentment of Pownall, Plaintiff concluded that ADA Trip knowingly presented false, misleading, or perjured testimony to the grand jury in order to obtain the indictment. *Id.* ¶¶ 10-11.

### d. Plaintiff admits to discussing the Pownall investigation and indictment with an attorney.

On September 27, 2018 Plaintiff spoke to an attorney to explore his options for reporting his allegations against ADA Tripp. *Id.* ¶ 12. That same day, ADA Trip threatened to prosecute the OISI Unit unless Lt. Henderson ascertained who spoke with the attorney. *Id.* ¶¶ 13-14. In response, Plaintiff informed Defendant Henderson that he had spoken with the attorney. *Id.* ¶ 16.

### e. ADA Tripp initiates criminal proceedings regarding Plaintiff's "leak" of grand jury information.

On October 16, 2018 Plaintiff learned that ADA Tripp had initiated criminal proceedings against him for "leaking" grand jury information regarding the Pownall investigation. *Id.* ¶¶ 10, 26. Lt. Hendershot testified regarding Plaintiff's conversation with the attorney. *Id.* ¶ 28. On November 9, 2018, Judge Robert Coleman informed Plaintiff that he had "5th amendment issues." *Id.* ¶ 38.

### f. ADA Tripp withdraws criminal proceedings.

Nonetheless, on May 21, 2019 ADA Tripp informed Lt. Hendershot that she would be withdrawing the case against Plaintiff because the Court transcripts were lost. *Id.* ¶ 37. On July 25, 2019 Lt. Hendershot informed Plaintiff that ADA Tripp had withdrawn prosecution. *Id.* ¶ 41.

### g. Plaintiff initiates a federal complaint against the City of Philadelphia, the DAO, District Attorney Krasner, and ADA Trip.

On October 4, 2019 Plaintiff filed a federal lawsuit alleging his constitutional rights were violated. *Id.* ¶ 43.

### h. Plaintiff writes multiple memos to Deputy Commissioner Coulter to request her assistance elevating his concerns.

That same day, Plaintiff wrote a memorandum to Deputy Commissioner Coulter ("DC Coulter") explaining that he believed he was "threatened with arrest and prosecution" in an attempt to silence his report of corruption. *Id.* ¶ 46. Plaintiff asked DC Coulter to forward his memo to United States Attorney William McSwain and Pennsylvania Attorney General Josh Shapiro and afford him "whistleblower protections." *Id.* ¶¶ 47-48. Two days later, on October 6, 2019, Plaintiff resubmitted this memo after having received no response. *See id.* ¶ 49. The following month, on November 8, 2019, Plaintiff wrote her again. *Id.* ¶ 52. Ten days later, on November 18, 2019, Plaintiff wrote her again. *Id.* ¶ 54.

### i. Plaintiff seeks media publicity.

On November 18, 2019 Plaintiff's federal lawsuit became the focus of an article published on Bigtrial.net. *Id.* ¶ 55. Plaintiff used this media outlet to "expose corruption at the DAO." *See id.* ¶ 76.

**j. Deputy Commissioner Wilson meets with Plaintiff to inform him that his request to meet with Commissioner Coulter would not be granted but suggests he contact the Attorney General regarding his concerns.**

On November 26, 2019 Plaintiff was directed to meet with Deputy Commissioner Dennis Wilson ("DC Wilson"). *Id.* ¶ 61. During the meeting DC Wilson informed Plaintiff that his request to meet with DC Coulter would not be approved. *Id.* ¶ 69. DC Wilson advised Plaintiff to speak with the AGO regarding his allegations of criminal activity in the DAO. *Id.* ¶ 70. Plaintiff informed DC Wilson that he had used the bigtrial.net article to expose the DAO and that he would continue using media outlets in this manner. *Id.* ¶¶ 76-77. DC Wilson informed Plaintiff that he did not have an issue with this media contact and requested Plaintiff keep him abreast of any developments with the AGO. *Id.* ¶¶ 78-79.

**k. Plaintiff contacts the AGO .**

On November 27, 2019 Plaintiff contacted the AGO. *Id.* ¶ 83. At that time, he was informed that there was a conflict of interest. *Id*.

**l. Plaintiff requests DC Wilson contact the US Attorney's Office regarding his concerns.**

Plaintiff informed Lt. Hendershot of the AGO's position and requested that he notify DC Wilson in hopes that Wilson could contact the United States Attorney's office to initiate a criminal investigation. *Id.* ¶¶ 84-85. Plaintiff asked Lt. Hendershot "almost daily" whether DC Wilson had responded and was repeatedly told that he had not. *Id.* ¶¶ 86-87.

**m. Plaintiff participates in a podcast regarding his litigation.**

On January 18, 2020 Plaintiff participated in a podcast to discuss his litigation against the City of Philadelphia and the DAO. *Id.* ¶¶ 89-90.

**n. Plaintiff is subject to a disciplinary investigation based on his participation in the podcast.**

On January 22, 2020 Plaintiff was told that DC Wilson requested a disciplinary investigation based on his participation in the podcase. *Id.* ¶ 91. On January 27, 2020 Plaintiff was notified that he would be subject to a disciplinary interview. *Id.* ¶ 99. In response, Plaintiff authored a memo to DC Wilson lamenting him for what he believed to be a betrayal and retaliation for reporting corruption. *Id.* ¶¶ 101-103.

### o. Plaintiff submits multiple memos to Police Administration.

On January 30, 2020 Plaintiff authors a memo to DC Coulter entitled "release of information to all media sources regarding corruption. *Id.* ¶ 107.

On February 10, 2020 Plaintiff authored a memo to new Commissioner Danielle Outlaw entitled "urgent matter regarding Detective Derrick Jacobs." *Id.* ¶¶ 108-109. In this letter, Plaintiff requested a meeting to discuss what he believed was corruption and criminal activity. *Id.* ¶ 110.

### p. Plaintiff is charged with violation of the Department's Policies.

On February 10, 2020 Lt. Pace authored disciplinary charges against Plaintiff for his participation in the podcase. *Id.* ¶ 111. Plaintiff was informed that he was being charged with Conduct Unbecoming Unspecified, a charge that could lead to termination. *Id.* ¶¶ 113-115.

On February 13, 2020 Plaintiff "receive[d] credible information" that Commissioner Outlaw would take a Direct Action against him that would result in his termination. *See id.* ¶ 122.

### q. Plaintiff uses leave time to avoid disciplinary charges.

Plaintiff began taking vacation leave to avoid discipline. *Id.* ¶ 123. On March 2, 2020 Plaintiff requested to be placed in "Injured on Duty" ("IOD") status due to job related stress. *Id.* ¶ 124, 128. Lt. Hendershot informed him that he could not use IOD status. *Id.* ¶ 127.

### r. Plaintiff's police vehicle is reclaimed.

On March 5, 2020 Lt. Hendershot reclaimed the Police Vehicle Plaintiff had been driving. *Id.* ¶ 131.

### s. Plaintiff contacts Commissioner Outlaw upwards of seven times.

On March 6, 2020 Plaintiff authored his second memo to Commissioner Outlaw. *Id.* ¶ 132. In this memo, Plaintiff asked that Commissioner Outlaw to initiate a criminal investigation into the acts "committed against [him]" which included the department's disciplinary charges and the DAO's criminal investigation of his "leak" of the Pownall investigation. *Id.* ¶¶ 134-135.

On March 12, 2020 Lt. Hendershot contacted Plaintiff and told him he needed to report to Internal Affairs based on his March 6th Memo to Commissioner Outlaw. *Id.* ¶ 138.

On May 18, 2020 Plaintiff authored a third memo to Commissioner Outlaw. *Id.* ¶ 153. Echoing his prior memos, Plaintiff inquired about the pending discipline and whether the Commissioner planned to take a direct against him. *Id.* ¶¶ 154-156. Plaintiff authored a fourth memo to Commissioner Outlaw on August 3, 2020. *Id.* ¶ 157. In that memo, Plaintiff again echoed his previous sentiments regarding the pending discipline and told her that he knows her intention to take direct action. *Id.* ¶¶ 159-160. He resubmitted a fifth memo to her on August 18, 2020. *Id.* ¶ 163. And a sixth memo on August 27, 2020 repeating the same claims previously conveyed. *Id.* ¶ 167. On September 24, 2020 Plaintiff emailed (his seventh contact) to Commissioner Outlaw again repeating his claims and requesting she conduct an immediate investigation and place him on IOD. *Id.* ¶ 180-185.  On October 6, 2020 Plaintiff submitted his eighth memo, addressing his "frustration of repeated attempts to have an investigation into the numerous acts of criminality committed by defendants." *Id.* ¶¶ 186-188.

### t. Plaintiff is informed that his contact is disruptive and insubordinate.

On October 9, 2020 Lt. Quinn emailed Plaintiff informing him that it was inappropriate and disruptive for him to continue to contact Commissioner Outlaw and informed him that he would be charged with insubordination if he contacted her again. *Id.* ¶¶ 190-191.

      **u.  Plaintiff believes all defendants are conspiring with the DAO against him.**

Plaintiff alleges that all of named defendants have been apprised of his allegations and request for a criminal investigation into the matter and are a part of the conspiracy with the DAO to silence him. *Id.* ¶ 277.

Based on these facts, Plaintiff has alleged that Defendants violated his rights pursuant to 42 USC §1983 (First Amendment Retaliation), Pennsylvania Whistleblower Law, 42 USC §1983 (Fourteenth Amendment Due Process), and 42 USC §1983 (Conspiracy).

**II.**    <u>**STANDARD OF REVIEW**</u>

A Rule 12(b) (6) Motion to Dismiss tests the sufficiency of the allegations contained in a Complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  When considering such a motion, the Court "accept[s] as true the facts alleged in the Complaint and all reasonable inferences that can be drawn from them.  Dismissal under Rule 12(b)(6) . . . is limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990).

This liberal pleading standard, however, does not excuse plaintiffs from adequately stating claims and supporting those claims with facts consistent with those allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Nor must a court credit "a complaint's 'bald assertions.'" *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citing *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).  Although a court must consider the pleadings as true when evaluating a motion to dismiss, a

court need not consider a plaintiff's bare legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (holding that all civil complaints must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

As the U.S. Court of Appeals for the Third Circuit has recognized, this plausibility standard requires the district court to conduct a two-part analysis of complaints. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). First, courts should separate "the factual and legal elements of a claim, so that while the district court must 'accept all of the complaint's well-pleaded facts as true,' it may "disregard any legal conclusions.'" *Id*. Second, courts must then determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. (citing *Iqbal*, 129 S. Ct. at 1950).

Plaintiff's Amended Complaint fails to meet the standards set forth in *Iqbal* and *Twombly*. As such, all claims should be dismissed.

## III. <u>ARGUMENT</u>

Plaintiff's Second Amended Complaint should be dismissed for the following reasons: A) All claims against District Attorney Lawrence Krasner and ADA Trip should be dismissed because the alleged constitutional violations occurred in the course of their role as advocate for the state and are entitled to absolute immunity from suit for damages; B) Plaintiff fails to state a First Amendment retaliation claim actionable under § 1983; C) Plaintiff fails to state a claim under the Pennsylvania Whistleblower Law; D) Plaintiff Fails to state a Fourteenth Amendment due process claim actionable under §1983; and E) Plaintiff' Fails to state an actionable §1983 conspiracy claim.

### A. PLAINTIFF'S CLAIMS AGAINST DISTRICT ATTORNEY DISTRICT ATTORNEY LAWRENCE KRASNER AND ASSISTANT DISTRICT ATTORNEY TRIPP SHOULD BE DISMISSED BECAUSE THEY ARE ENTITLED TO ABSOLUTE IMMUNITY.

The prosecutorial decision to initiate a grand jury investigation into Plaintiff's alleged "leak" of grand jury information to an attorney in the Pownall investigation is a prosecutorial function protected by absolute immunity.

It is well settled that acts which occur in the course of a prosecutor's role as advocate for the state are entitled to absolute immunity. *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993). Prosecutorial immunity is absolute without regard to the legal theory under which civil liability is sought based on the court's determination that "harassment by unfounded litigation" could both "cause a deflection of the prosecutor's energies from his [or her] public duties" and lead him or her to "shade his decisions instead of exercising the independence of judgment required by his public trust." *Van de Kamp v. Goldstein,* 129 S. Ct. 855 (2009) (citing, *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976)).

Prosecutorial immunity applies even when a plaintiff alleges that prosecutors have "knowing[ly] use[d] false testimony before the grand jury and at trial." *Burns v. Reed*, 500 U.S. 478, 485, 111 S. Ct. 1934, 1938, 114 L. Ed. 2d 547 (1991). For example, in *Rose v. Bartle,* the court determined that the District Attorney and Assistant District Attorney were absolutely immune in civil rights action for allegedly using perjured testimony by witnesses at grand jury proceeding. 871 F.2d 331, 344 (3d Cir. 1989). *See also Michaels v. New Jersey*, 222 F.3d 118, 121-22 (3d Cir. 2000) ("Prosecutors are entitled to absolute immunity for actions as advocates before the grand jury and at trial even if they present unreliable or wholly fictitious proofs"); *Moore v. Middlesex Cnty. Prosecutors Office*, 503 F. App'x 108, 109-10 (3d Cir. 2012) (per curiam) (dismissal of complaint with prejudice based on absolute prosecutorial

immunity was proper); *Brawer v. Horowitz,* 535 F.2d 832 (3d Cir.1976) (affirming the district court's dismissal of a complaint alleging that "a federal prosecutor and a cooperating witness had conspired to use perjured testimony . . . in order to convict appellants").

Other circuits have similarly held that prosecutorial immunity attaches to a prosecutor's decisions related to their advocacy pertaining to the grand jury. *See e.g., Heidelberg v. Hammer,* 577 F.2d 429, 432 (7th Cir.1978) ("charges that the prosecutors induced witnesses to commit perjury are barred by the immunity doctrine"); *cf. Lee v. Willins,* 617 F.2d 320, 322 (2d Cir.) (allegations that prosecutor coerced perjured testimony from witnesses barred because injuries alleged by plaintiff, which stem from his multiple trials, are same injuries for which *Imbler* granted immunity), *cert. denied,* 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980).

Here, during the execution of her duties as a prosecutor, ADA Tripp learned that someone from the OISI Unit had leaked grand jury information to Pownall's attorney.[2] *See Sec. Am. Comp.* ¶¶ 10-14. Plaintiff concedes that he was the person who had spoken with that attorney. *Id.* ¶16. Lt. Hendershot testified before the grand jury regarding this fact. *Id.* ¶ 28. Accepting these allegations as true for this motion only, it is beyond doubt that the prosecutorial decision to initiate criminal proceedings pursuant to Plaintiff's admitted conduct was entitled to absolute immunity. *Rose v. Bartle*, 871 F.2d 331, 345 (3d Cir. 1989)

Accordingly, all claims against DA Krasner, and ADA Tripp, should be dismissed because the alleged constitutional violations occurred in the course of their role as advocate for the state and are entitled to absolute immunity from suit for damages.

---

[2] Loosely interpreted, Plaintiff incorporates similar allegations against DA Krasner and the DAO. These actions are also entitled to prosecutorial immunity. In the interest of judicial economy, Defendants will conduct one analysis.

## B. PLAINTIFF FAILS TO STATE A FIRST AMENDMENT RETALIATION CLAIM ACTIONABLE UNDER § 1983.

.

Plaintiff's First Amendment Retaliation Claim pursuant to §1983 fails because 1) he has not plead facts sufficient to establish his First Amendment rights were violated; 2) he has not identified any statute, ordinance, regulation, policy, custom, or practice that caused his injury; 3) the claims against Defendants Outlaw, Coulter, Wilson, Naish, Pace, Hendershot, and Quinn in their official capacities fails because it is duplicative of the claims against the City itself; 4) the claims against Defendants Outlaw, Coulter, Naish, Pace, Hendershot, and Quinn in their individual or official capacities fail because Plaintiff has failed to allege personal liability of these defendants.

### I. Plaintiff has not plead facts sufficient to establish his First Amendment rights were violated.

Under Third Circuit precedent, a public employee's statement is protected activity when: "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public." *Falco v. Zimmer*, 767 Fed. Appx. 288, 300 (3d Cir. 2019). A public employee does not speak "as [a] citizen[ ]" when he makes a statement "pursuant to [his] official duties." *Id.* To establish a § 1983 First Amendment retaliation claim, a plaintiff must show: (1) the plaintiff participated in activity protected by the First Amendment; (2) the defendant retaliated against the plaintiff in a manner that would be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights;" and (3) a causal nexus existed between the protected activity and

the retaliation. *Alers v. City of Philadelphia*, 919 F.Supp.2d 528, 553 (E.D. Pa. 2013) (citing *Thomas v. Independence Twp.,* 463 F.3d 285, 296 (3d Cir.2006).

Loosely interpreted, Plaintiff alleges the following actions were protected speech: 1) his conversation with an attorney to discuss "his option of reporting ADA Tripp's corruption and criminality;" 2) his participation in the January 18, 2020 podcast. Construed liberally, Plaintiff believes that he was disciplined in "retaliation" for these actions. Plaintiff's First Amendment Retaliation claim should be dismissed because 1) Plaintiff's discussion with the attorney is not protected speech. 2) Plaintiff's participation in the podcast is not protected.

        i.   <u>Plaintiff's discussion with the attorney is not protected speech.</u>

Public employees do not enjoy constitutional carte blanche in all manners of speech. Public servants "by necessity must accept certain limitations on his or her freedom." *Palardy v. Twp. of Mullburn*, 906 F.3d 76, 81 (3d Cir. 2018) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006) (internal quotation marks omitted)). A public employer's ability to regulate its employees' speech stems from the "common-sense realization that government offices could not function if every employment decision became a constitutional matter." *O'Connor v. Ortega*, 480 U.S. 709, 722 (1987) (quotation omitted).

The Supreme Court has recognized that states have a compelling interest in restricting speech related to grand jury investigation. *Butterworth v. Smith*, 494 U.S. 624, 632, 110 S. Ct. 1376, 1381, 108 L. Ed. 2d 572 (1990). The Court has routinely examined the tension between First Amendment rights and government investigatory proceedings. For example, in cases where a person "lawfully obtains truthful information about a matter of public significance," the court has held that "state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." *Smith v. Daily Mail Publishing*

*Co.,* 443 U.S. 97, 103, 99 S.Ct. 2667, 2671, 61 L.Ed.2d 399 (1979); *Florida Star v. B.J.F.,* 491 U.S. 524, 533, 109 S.Ct. 2603, 2609, 105 L.Ed.2d 443 (1989).

Here, it is undisputed that the state has an interest in restricting speech by subjecting grand jury proceedings to secrecy. The Pennsylvania Supreme Court has referred to grand jury secrecy as "indispensable to the effective functioning of a grand jury's investigation." *In re Investigating Grand Jury of Philadelphia Cty. (Appeal of Philadelphia RustProof Co., Inc.)*, 496 Pa. 452, 457-58, 437 A.2d 1128, 1130 (1981). Ensuring grand jury secrecy is necessary to prevent the guilty accused from being provided with information that might enable the target of the investigation to flee from arrest, suborn false testimony, or tamper with witnesses or grand jurors. *See Castellani v. Scranton Times, L.P.*, 73 Pa. D. & C.4th 483, 509–10 (Com. Pl. 2005), *rev'd,* 2007 PA Super 2, 916 A.2d 648 (2007), aff'd, 598 Pa. 283, 956 A.2d 937 (2008); *Commonwealth v. Columbia Investment Corp.*, 457 Pa. 353, 369-70 n.17, 325 A.2d 289, 297 n. 17 (1974). The state's interest in maintaining secrecy of the grand jury continues until there is no longer a need to keep information from the targeted individual or grand jury deliberations conclude. *See Butterworth*, 494 U.S. at 632–33, 110.

Here, Plaintiff admitted to violating his oath of secrecy by sharing information with counsel for the target of the grand jury investigation. The state's interest supersedes Plaintiff's First Amendment rights at least through the closing of grand jury deliberations. Therefore, Plaintiff's speech with the attorney is not protected by the First Amendment and does not shield him from the initiation of criminal proceedings regarding the same.

Accordingly, Plaintiff's claim should be dismissed.

ii.    <u>Plaintiff's participation in the podcast is not protected.</u>

While analysis of a First Amendment claim is ordinarily "fact intensive,"[3] dismissal is appropriate in this case because the speech contained content that is per se disruptive. Ultimately, the Plaintiff cannot demonstrate any reasonable right to relief because the City's interest in regulating speech that reveals sensitive information regarding ongoing criminal investigations far outweighs any alleged First Amendment protection.

As mentioned above, the right to speak in the public employment context is "not absolute" and "[a]t times, the right of free speech conflicts with other important governmental values, posing the problem of which interest should prevail." *Pappas v. Giuliani*, 290 F.3d 143, 146 (2d Cir. 2002). In weighing interests, a plaintiff must demonstrate that his "interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees." *Brennan v. Norton*, 350 F.3d 399, 413 (3d Cir. 2003) (quoting *Baldassare v. N.J.*, 250 F.3d 188, 195 (3d Cir. 2001)). Like the first two inquiries of citizen speech and public concern, the Pickering balancing test is "purely legal and is therefore decided by the court as a question of law." *Id*. Accordingly, even if the employee spoke as a private citizen on a matter of public concern, the government employer can still limit the speech with an adequate justification. The justification must balance the employee's interest in free speech rights with the employer's operational interests to prevent workplace interference or disruption. *See Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 472 (3d Cir. 2015). Examples of

---

[3] See *Muti v. Schmidt*, 96 F. App'x 69, 73-75 (3d Cir.), vacated on other grounds, (Aug. 12, 2004), superseded on other grounds, 118 F. App'x 646 (3d Cir. 2004) (holding that although First Amendment Pickering analysis is "fact intensive," complaint and documents referenced therein "compelled" conclusion that 12(b)(6)dismissal was warranted).

"legitimate operational interests" that may justify restraint on an employee's speech include but are not limited to:

- promoting integrity;

- maintaining proper discipline;

- promoting efficiency;

- upholding public trust;

- executing government functions; and

- advancing government policy.

*Garcetti*, 547 U.S. at 418-19; *Pickering*, 391 U.S. at 568.

Further, relevant considerations as to whether the speech disrupts or interferes with the workplace and the employer's legitimate operational interests include whether the speech has or is reasonably predicted to impede the performance of the speaker's duties or interferes with the regular operation of the enterprise. *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). Moreover, the City, acting as a law enforcement agency, has substantially more power to control the speech of law enforcement officers than it does employees of other City agencies.

Here, the City had ample justification for its disciplinary decisions based on a reasonable (and actual) concern that Plaintiff violated the Department's policy be discussing facts relevant to an ongoing criminal investigation and court proceeding. The speech caused actual disruption and continues to cause disruption as long as the Pownall criminal proceedings remain open. Therefore, Plaintiff's speech with regard to the podcast is not protected by the First Amendment and does not shield him discipline regarding the same.

Accordingly, Plaintiff's claim should be dismissed.

II. Plaintiff's 42 U.S.C. 1983 claims against the City of Philadelphia fail because he has not identified a law, policy, custom, or practice that caused his injury.

Plaintiff's claim against the City of Philadelphia fails because he has failed to identify a policy, custom, or practice that caused his injury.

Municipalities are generally immune from liability under 42 U.S.C. § 1983 except where the municipality's policy or custom was the moving force behind the constitutional violation. *Watson v. Abington Twp.,* 478 F.3d 144, 155 (3d Cir.2007). For the purposes of evaluating municipal liability, a policy exists "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict[,]'" while a custom exists when a plaintiff demonstrates that "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Watson,* at 155 (*quoting Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir.1990)). In either case, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Id.*

An official is a decisionmaker where they, under state law, have "final, unreviewable discretion to make a decision or take an action." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1481 (3d Cir.1990) (holding that the Police Commissioner was the decisionmaker for the Philadelphia Police Department).

Further, the plaintiff bears the burden of providing evidence that the identified "policy or custom was the proximate cause of the injuries suffered." *Watson,* 478 F.3d at 155. Under Fed. R. Civ. P. 8(a)(2), a plaintiff must identify the specific custom or policy at issue. *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir.2009) ("Fed. R. Civ. P. 8(a) (2) requires a

showing…of entitlement to relief that rises above the speculative level.")  "Mere assertion of an

entitlement to relief, without some factual 'showing,' is insufficient[.]" *Id.*  Moreover, where the

custom or policy is not facially unconstitutional and, thus, requires proof of deliberate

indifference on the part of the decisionmaker, i.e. that the decisionmaker took the relevant action

with "deliberate indifference" as to its known or obvious consequences, a plaintiff must plead

facts supporting an inference that such deliberate indifference exists.  *Id.* at 658-59. A showing

of simple or even heightened negligence will not suffice." *Berg v. Cnty. of Allegheny,* 219 F.3d

261, 276 (3d Cir. 2000).

    Here, even if Plaintiff has pled a First Amendment violation, the §1983 claims against the

City should be dismissed because Plaintiff fails to allege any facts sufficient to show the City has

a custom or policy of retaliating against individuals who engage in First Amendment protected

activities.  In fact, the complaint is totally void of any facts to even suggest that the City has a

municipal policy of retaliation. Plaintiff has also failed to show the City was deliberately

indifferent to any alleged practices of first amendment retaliation within the Police Department.

Therefore, there is no policy, municipal practice, or custom that would have the effect of

violating Plaintiff's constitutional rights.

    Accordingly, Plaintiffs § 1983 claim against the Philadelphia Police Department should

be dismissed with prejudice.

> III.  Plaintiff's 42 U.S.C. 1983 claims against Defendants Outlaw, Coulter,
> Wilson, Naish, Pace, Hendershot, and Quinn in their official capacities
> fails because it is duplicative of the claims against the City itself.

    Plaintiff's § 1983 claims against Defendants Outlaw, Coulter, Wilson, Naish, Pace,

Hendershot, and Quinn should be dismissed, in their official capacities, fails because a plaintiff

cannot sue a municipal employee in his official capacity as well as the municipality in the same

suit. *See Hafer v. Melo,* 502 U.S. 21, 25 (1991) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.")(quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)); *see also, Graham,* 473 U.S. at 165 (holding that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell* ... local government units can be sued directly for damages and injunctive or declaratory relief.").

Accordingly, to the extent that Plaintiff bases his §1983 claims on conduct of Defendant Outlaw, Coulter, Wilson, Naish, Pace, Hendershot, and Quinn, in their official capacities, this claim fails as a matter of law and should be dismissed with prejudice.

> IV. Plaintiff's 42 U.S.C. 1983 claims against Defendants Outlaw, Coulter, Naish, Pace, Hendershot, and Quinn in their individual or official capacities fail because Plaintiff has failed to allege personal liability of these defendants.

To hold a supervisor personally liable under § 1983, Plaintiff must show that he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. *See Baker v. Monroe Township,* 50 F.3d 1186, 1190–91 (3d Cir.1995). As an initial matter, Defendants Pace and Quin were neither supervisors nor in Plaintiff's chain of command. Further, to the extent that Defendant Pace is mentioned at all, it was because he merely drafted the disciplinary charges. Similarly, Defendant Quinn had no role in the alleged retaliatory discipline Plaintiff experienced. In fact, none of the other named Defendants, including Defendants Outlaw, Coulter, Naish, or Hendershot personally participated in the alleged retaliatory discipline. So, even in the light most favorable to Plaintiff, Plaintiff has not sufficiently pled claims of retaliation against these defendants.

As such, Plaintiff's 1983 claims against these Defendants Outlaw, Coulter, Naish, Pace, Hendershot, or Quinn, in any capacity, fails.

### C. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE PENNSYLVANIA WHISTLEBLOWER LAW.

The Pennsylvania Whistleblower Law ("PWL") prohibits employers from retaliating regarding an employee's compensation, terms, conditions, location or privileges of employment for engaging in certain protected activities in the workplace. 43 P.S. § 1423(a). As a threshold matter, to establish a PWL claim, an employee must allege that he engaged in protected activity prior to the alleged retaliation—that he "ma[de] a good faith report. . . to the employer or appropriate authority [of] an instance of wrongdoing or waste." 43 P.S. § 1423. "Wrongdoing" is narrowly defined by the statute. *See Drumm v. Triangle Tech, Inc.,* No. 15-854, 2016 WL 1384886, at *8 (M.D. Pa. Apr. 7, 2016) (stating Pennsylvania WBL "narrow[ly] defin[es] . . . 'waste' and 'wrongdoing'."); *Sukenik v. Twp. of Elizabeth*, 131 A.3d 550, 555 (Pa. Commw. 2016) (similar). "Wrongdoing" is defined as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 P.S. § 1422.  To establish a PWL claim, Plaintiff must show that the employer actually violated the law.  *Kimes v. University of Scranton*, 126 F. Supp. 3d 477, 505 (M.D. Pa. 2015). Reports of conduct the employee subjectively believes is wrong is not considered a report of "wrongdoing" for the purposes of a whistleblower claim. *Riggio v. Burns*, 711 A.2d 497, 501-503 (Pa. Super. 1998).

Here, aside from Plaintiff's shear speculation,  Plaintiff has plead no facts to show that the City, particularly the DAO, DA Krasner, or ADA Tripp, engaged in wrongdoing. As an initial matter, Plaintiff admits that he "never participated in the grand jury against Pownall" and

was not involved in the investigation after his August 2018 conversation with ADA Tripp. *See* ECF 2:19-cv-04616-HB Doc. 3; Pl. 2nd Am. Compl. ¶ 25. Instead, Plaintiff conducted an ex parte review of the grand jury presentment and summarily concluded that ADA Trip knowingly presented false, misleading, or perjured testimony to the grand jury in order to obtain the indictment. *See* Pl. 2nd Am. Compl. ¶¶ 9-11. Plaintiff's unsupported speculation and conclusory allegations are far too speculative and attenuated to comply with the pleading requirement of *Iqbal.* Therefore, his claim fails as a matter of law. Moreover, for the reasons previously stated, DA Krasner and ADA Tripp's are entitled to absolute immunity regarding decisions made during the course of their advocacy on behalf of the state.

Accordingly, this claim should be dismissed because Plaintiff has not plead facts to suggest that defendants committed wrongdoing as defined in the statute.

### D. PLAINTIFF FAILS TO STATE A FOURTEENTH AMENDMENT DUE PROCESS CLAIM ACTIONABLE UNDER §1983.

Plaintiff has not pled fact sufficient to show that his rights to due process relating to his criminal and disciplinary investigation have been violated. Moreover, for the reasons previously stated, Plaintiff has not alleged an actionable claim under §1983.

> I. Plaintiff's due process rights were not violated as it relates to the criminal proceedings initiated against him.

To sustain a substantive due process claim, a plaintiff must show that the particular interest in question is protected by the Fourteenth Amendment and that the government's deprivation of that interest "shocks the conscience." *Vargas v. City of Philadelphia*, 783 F.3d 962, 973 (3d Cir. 2015) (citing *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.,* 272 F.3d 168, 172 (3d Cir.2001)). The "shocks-the-conscience" test applies regardless of the theory upon which the claim is premised. *Id.* Under third circuit precedent, a civil plaintiff may allege a due

process claim under the fourteenth amendment if he can demonstrate that he was convicted based on allegedly fabricated evidence so significant that it could have affected the outcome of the criminal case. *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014). Mere negligence is not enough to shock the conscience, as required to support a substantive due process claim under the Fourteenth Amendment. *Vargas,* 783 F.3d 962 at 973.

Here, Plaintiff's claims fail for several reasons. First, Plaintiff has not averred facts sufficient to show that he had an interest that was protected by the fourteenth amendment. As he admits, the criminal proceedings initiated against him were withdrawn. As such he suffered no loss of liberty. Moreover, to the extent that Plaintiff suggests that    the initiation of criminal proceedings against him was improper, Plaintiff has not alleged facts sufficient to show that the initiation of these proceedings "shocked the conscious." To the contrary, Plaintiff admitted that he contacted the lawyer with whom prosecutors allege received leaked grand jury information. Therefore, it is beyond doubt that the prosecutorial decision to initiate criminal proceedings was lawful and proper.

Accordingly this claim should be dismissed.

II.  Plaintiff's due process rights were not violated as it relates to the disciplinary charges initiated against him.

As an initial matter, the Third Circuit precedent has established that public employment is not a fundamental interest under the Constitution and thus does not enjoy substantive due process protection. *See Foxworth v. Pennsylvania State Police,* 402 F. Supp. 2d 523, 539 (E.D. Pa. 2005), *aff'd,* 228 F. App'x 151 (3d Cir. 2007). Rather, it is a "wholly state-created contract right," which "bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution." *Nicholas v. Pennsylvania State Univ.,* 227 F.3d 133, 142-143 (3d Cir. 2000). Because Plaintiff's interest in his employment is not a fundamental right

protected by substantive due process, any claim for substantive due process violations must necessarily fail.

On the other hand, in order to make out a procedural due process claim, a public employee must show that is entitled to notice and opportunity to be heard prior to being deprived of his or her property interest in employment. *Cipriani v. Lycoming Cty. Hous. Auth.*, 177 F. Supp. 2d 303, 317 (M.D. Pa. 2001) (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). Here, there is nothing in the complaint that shows he was refused proper notice or an opportunity to be heard before the City issued discipline. Therefore this claim must fail.

### E. PLAINTIFF FAILS TO STATE AN ACTIONABLE §1983 CONSPIRACY CLAIM.

To advance a § 1983 conspiracy claim, a plaintiff must aver facts sufficient to show: (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. *Piskanin v. Hammer*, No. CIV.A. 04-1321, 2005 WL 3071760, at *4 (E.D. Pa. Nov. 14, 2005). In short, Plaintiff must show "that two or more conspirators reached an agreement to deprive [plaintiff] of a Constitutional right under color of law." *Parkway Garage Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993). A claim for conspiracy pursuant to Section 1983 must specifically allege the "combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." *Marchese v. Umstead,* 110 F.Supp.2d 361, 371 (E.D.Pa.2000). In consideration of a motion to dismiss, only particularized allegations of conspiracy, such as those addressing the period of the conspiracy, the object of the conspiracy, and the alleged conspirators' actions are deemed sufficient to state a claim. *Id*

Here, despite his repeated use of the term "conspiracy", Plaintiff fails to set forth any specific facts to show an agreement between the Defendants regarding any actions taken. As such, Plaintiff's fails to meet the standard set forth in *Iqbal*.

Therefore, this claim should be dismissed.

## VI.     <u>CONCLUSION</u>

Defendants City of Philadelphia, Commissioner Danielle Outlaw, Deputy Commissioner Christine Coulter, District Attorney Lawrence Krasner, Assistant District Attorney Tracy Tripp, Chief Inspector Dennis Wilson, Deputy Commissioner Benjamin Naish, Inspector DF Pace, Lieutenant Jason Hendershot, and Lieutenant Patrick Quinn respectfully requests that this Honorable Court grant this Motion and dismiss Plaintiff's claims.

Respectfully Submitted,

CITY OF PHILADELPHIA
LAW DEPARTMENT

Date:  <u>February 10, 2021</u>          BY:   <u>  s/ Kia Ghee        </u>
Kia Ghee, Esq.
Deputy City Solicitor
Pa. Attorney ID No. 321462
City of Philadelphia Law Dept.
1515 Arch St., 16th Fl.
Philadelphia, PA 19102
(215) 683-5079
Kia.Ghee@phila.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DERRICK JACOBS,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 19-4616 |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| Defendants. | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date below, the foregoing Motion to Dismiss and Memorandum of Law has been filed electronically and is available for viewing and downloading. The foregoing Motion to Dismiss has also been mailed directly to Plaintiff, electronically and through US mail.

Respectfully Submitted,

CITY OF PHILADELPHIA
LAW DEPARTMENT

Date: <u>February 10, 2021</u>          BY: <u>  s/ Kia Ghee        </u>
                                         Kia Ghee, Esq.
                                         Deputy City Solicitor