233. Candidate for District Attorney, Carlos Vega also shared Jacobs' concerns.

234. Vega stated "Krasner has been conducting an experiment that is costing the lives of OUR children." Vega also stated Krasner's DAO is killing "black and brown" people.

235. Krasner's assault on the citizens of Philadelphia could have been mitigated if Jacobs' concerns would have been addressed by no less than three Philadelphia Police Commissioners.

236. Instead of addressing Jacobs' concerns as a citizen of Philadelphia, the PPD conspired with the DAO to retaliate against Jacobs.

237. Jacobs filed a Federal Civil Complaint (19-cv-4616) for the actions committed by Krasner's DAO against Jacobs for reporting the corruption at the DAO.

238. Jacobs also had reported the criminal acts to the PPD for over a year.

239. Jacobs participated in a law enforcement podcast titled Search Warrant: "Clear and Present Danger."

240. During podcast Jacobs discussed his litigation against the DAO.

241. As a result, Defendant Wilson ordered Defendant Hendershot to immediately conduct a disciplinary investigation against Jacobs for exercising his First Amendment Rights during the podcast.

242.   Defendant Hendershot conducted one interview (Jacobs) and concluded the investigation.

243.   Defendant Pace then authored disciplinary charges, witnessed by Defendant Hendershot. The charges against Jacobs were **Conduct Unbecoming Unspecified,** which carries a penalty of termination.

244.   The disciplinary documents actually state the reason for the charges were because Jacobs spoke out against the DAO and Krasner during podcast.

245.   The documents actually state it's in violation of Jacobs First Amendment Rights and retaliatory.

246.   This is not just a causal link between the protected conduct and the retaliatory act. It's a direct link (The disciplinary documents are a confession; Pace has always been known as a boot licking, glute kissing clerical worker within the department who would do anything to maintain his "duties." Including as we now know, commit criminal acts and violate the oath he took as an attorney).

247.   Wilson proved his worth when he made a fool of himself, at a press conference, falling on the sword to protect criminals. His action caused a hero (Nicolleti) to be arrested by Krasner's corrupt DAO.

248.   Jacobs spoke out on a matter of public concern and was once again retaliated against.

249.    The ENTIRE "investigation" against Jacobs by this criminal enterprise (should be charged with RICO) took 23 days, including 7 non-work days from date of podcast.

250.    Why couldn't these criminals find a policy, custom or guideline violated by Jacobs? Why is the charge **UNSPECIFIED**?

251.    It's because Jacobs hurt the egomaniac's feelings and he called his minions, who continue retaliatory acts against Jacobs including terminating his law enforcement career (bullies always bleed when they get punched in the nose).

252.    The Philadelphia Police Department's Policy (Directive) of reporting corruption is located in Directive 8.10-**Preventing corruption within the ranks.**

253.    **The Directive starts as follows: Honor, Integrity and Service are the CORE values upon which we stand as a Police Department and to SERVE the community. It is the ABSOLUTE RESPONSIBILITY of EACH and EVERY member of this Department to uphold these CORE values. Nothing can destroy the honor and integrity of the Philadelphia Police Department, along with esprit de corps and morale of its members, faster than corruption, abuse of authority, official misconduct, or even the appearance of improprieties by members of the Department.**

254.    The **POLICY** states as follows:

255. **ALL members of the Philadelphia Police Department, SWORN and CIVILIAN, are professionals and shall conduct themselves, whether on or off-duty,, in a professional manner by not committing any inappropriate acts or deeds that would otherwise compromise the honor and integrity of the Department.**

256. **ALL actions and deeds by members of the Department shall be consistent with the LAWS, REGULATIONS and MANDATES of the Constitution of the United States, and the Commonwealth of Pennsylvania, the City of Philadelphia Home Rule Charter, the Philadelphia Police Department, The Police Officer's Code of Ethics, and avoid even the appearance of impropriety.**

257. Section 3 (Employees Responsibility to Report Corruption, Misconduct and other Improper acts affecting the Department), states the following:

258. **ALL** personnel have the **RIGHT** and **DUTY** to file complaints of CORRUPTION, misconduct, and other conditions that negatively impact the Department by ANY employee of the Police Department.

259. **REPRISALS** against any member of the Department, who reports CORRUPTION, misconduct or other conditions that negatively impact the Department **ARE STRICTLY PROHIBITED. ALL** instances of suspected **REPRISALS** will be immediately investigated by the Office of Professional Responsibility and those found committing such **REPRISALS** will be subjected to disciplinary action up to and including dismissal. In cases regarding **CRIMINAL** allegations, **CRIMINAL** charges may ensue for such **REPRISALS.**

260. **Section 6 covers the Whistleblower Law (43 P.S.1421) which ALL Defendants are violating.**

261. **THE TOP THREE PHILADELPHIA POLICE DEPARTMENT OFFICIALS ARE ALL CORRUPTED AND SHOULD BE IMMEDIATELY INVESTIGATED AND PROSECUTED FOR THEIR PARTICIPATION IN THIS CONSPIRACY WITH KRASNER. JACOBS' DOCUMENTS AND DEPARTMENTAL DIRECTIVES ALONE SHOW PROBABLE CAUSE.**

262. The Defendants conspired and succeeded in ruining the career of a decorated Law Enforcement Officer with a Defendant who, if he heard a car backfire, would hide in his basement under a mattress like the criminal he presents himself to be in this community.

263. This is the person who conducts himself as judge, jury and executioner of heroes.

264. Jacobs made all notifications. Jacobs asked current Police Commissioner, Defendant Outlaw on numerous occasions if she was going to execute Commissioner's Direct Action (CDA) against Jacobs. The Defendant refused to acknowledge the illegal actions of her subordinates and referred Jacobs to the City's attorneys.

265. The Philadelphia Police Department's Policy (Directive) on Disciplinary Procedures-8.6 gives the Police Commissioner plenary power over all disciplinary decisions.

266. The Directive states a **complete** and **thorough** investigation will be conducted.

267.    Only one person was interviewed (Jacobs) in this "investigation" before Jacobs career was **constructively terminated** by the Defendants.

268.    Defendant Outlaw, with her plenary power on discipline, could have ended this activity against Jacobs immediately. Instead, she decided to join the criminal activity.

269.    Jacobs' repeated attempts to obtain **JUSTICE** for the **DESTRUCTION** of his Law Enforcement career of almost a quarter century; caused defendant Quinn to issue a **threatening** email on October 9, 2020.

270.    Defendant Quinn informed Jacobs it was in response to Jacobs' October 6, 2020 memorandum.

271.    The email informed Jacobs it was "**INAPPROPRIATE** and **DISRUPTIVE**" for Jacobs to have this matter adjudicated by continuing to attempt contact with PHILADELPHIA POLICE COMMISIONER, DEFENDANT DANIELLE OUTLAW regarding CORRUPTION in the City of Philadelphia.

272.    Jacobs has not violated ANY Law or Police Department Police policy in this matter. To the contrary Jacobs has exhausted all avenues to mediate and resolve this matter.

273.   Defendant Quinn's email informed Jacobs, his efforts are futile. The Defendants have entered into a CONSPIRACY to violate Jacobs' Constitutional Rights and Constructively Discharge Jacobs from the Philadelphia Police Department. This has inflicted untold damages to Jacobs.

274.   Defendant Outlaw is paid almost three hundred thousand dollars a year to conspire with the other racist defendants.

275.   Their mission is to sell out the African American community and have white Police Officers prosecuted.

276.   The color of your skin does not make you a racist or ignorant. The content of your character does.

277.   All of the named defendants have been apprised of Jacobs' allegations and request for a criminal investigation into the matter. The PPD Defendants that are named and a part of the conspiracy with the DAO to silence Jacobs are: Outlaw, Coulter, Naish, Wilson, Pace, Hendershot and Quinn.

278.   Defendant Naish has settled previous violations of subordinate's First Amendment Rights.

279.   **Krasner's CORRUPT CRIMINAL ENTERPRISE does not stop there (The African American and Law Enforcement communities should join together in a class action complaint).**

280. This criminal enterprise has arrested two sworn Law Enforcement Officers for performing their duties. They should be arrested for that conspiracy as well.

281. Example 1:

282. PA Statute for Riot (Section 5501):

283. A person is guilty of riot, a FELONY of the third degree, if he participates with two or more others in a course of disorderly conduct:

1. With intent to commit or facilitate the commission of a felony or misdemeanor;
2. With intent to prevent or coerce action; or
3. When the actor or any other participant to the actor uses or plans to use a firearm or other deadly weapon.

284. PA Statute for Robbery (Section 3701):

285. A person is guilty of robbery if, in the course of committing a theft, he;

286. PHYSICALLY TAKES OR REMOVES THE PROPERTY FROM THE PERSON OF ANOTHER BY FORCE, HOWEVER SLIGHT.

287. THIS IS A THIRD DEGREE FELONY.

288. PA Statute for Aggravated Assault (Section 2702):

289. A person is guilty of Aggravated Assault if he;

290. Attempts by PHYSICAL MENACE to put any POLICE OFFICER, while in performance of their duties in fear of imminent serious bodily injury.

291.   In example 1 Inspector Bologna (a white Law Enforcement Officer) was involved in the effecting of an arrest of an individual during an MASS disorderly conduct incident (RIOT). During the incident, the Inspector was interdicted (Aggravated Assault) by a subject who was part of the MASS. The Inspector engaged the FELON and struck the subject with his asp (official PPD equipment). A struggle between the subject and Inspector ensued and the subject disarmed the Inspector of the asp (Robbery) and tossed the asp into the MASS. The subject was ultimately arrested. Defendant Krasner's Office released the subject and arrested the Inspector. Defendant Outlaw's Department terminated the employment of the Inspector (The charges against Inspector Bologna were dismissed at the time of this brief being authored. Defendant Krasner has indicated he may re-arrest the Inspector).

292.   Example 2:

293.   PA statute for Riot 5501 (previously listed)

294.   Federal Hobbs Act (18 U.S.C. § 1951):

295.   Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years or both.

296.    Here you have multiple people engaged in a course or disorderly conduct wearing GAS MASK, blocking a US Interstate Highway.

297.    Police Officer Nicolletti (White SWAT Officer) was ORDERED by Command Staff of the Philadelphia Police Department to clear the Interstate and deploy gas against the RIOTERS. The Officer engaged subjects in violations of Federal, State and Local criminal statutes.

298.    The Officer deployed the use of gas in the appropriate tactical LAW ENFORCEMENT manner and removed the individuals engaged in the criminal conduct PER ORDERS.

299.    Defendants Krasner, Outlaw and Wilson engaged in a conspiracy to arrest Officer Nicolletti and terminate his career. This was done because defendant Krasner could not arrest his father for a previous OIS. The Department and Krasner's Office did not prosecute any person that was engaged in Federal, State and Local Criminal violations.

300.    These criminals are now suing the CITIZENS of Philadelphia and will be paid for their criminal activity.

301.    Example 3:

302.    Stefon Crawley attempted to kill multiple Police Officers (White and Black) with a handgun. Crawley was shot and arrested during the incident. Defendant Krasner's Office withdrew the charges against Crawley who had his DNA on one of the arresting Officer's gun (This was due to Crawley attempting to disarm the Officer). Crawley is now attempting to sue the citizens of Philadelphia.

303.    Example 4:

304.    Two Police Officers recently responded to a
Domestic Incident. During the incident they were
force to use deadly force on a male who charged at
the Officers with a knife. Krasner said he is not
going to rely on the PPD's investigation. Krasner
is going to "conduct his OWN investigation." This
incident was caught on video and was CLEARLY a
justified OIS and use of force. The Officers should
have already been cleared. The Defendants' criminal
enterprise is going to attempt to conduct a grand
jury which is the way this corrupt organization
obtains indictments against innocent Officers.

305.    Example 5:

306.    While a madman was shooting six Police Officers
with an assault rifle, Krasner was negotiating a
plea deal on the phone with the madman. All the
while he was not letting the tactical teams on the
ground know what he was doing. Last time I checked
Krasner was not a HOSTAGE NEGOTIATOR. Then he
refused to provide the information and provide an
interview to INVESTIGATORS (Best Evidence Rule).

307.    Example 6:

308.    Defendant Naish has been known to violate the
citizens of Philadelphia constitutional liberties.
After the Chief of the Homicide Unit (rumors abound
about state of mind) at Krasner's corrupt District
Attorney's Office conducted an illegal vehicle
investigation during a road rage incident.

309.    Defendant Naish ordered subordinates to conduct
an illegal seizure of the vehicle and Other
violations by these individuals according to
witnesses, were committed.

310.   Example 7:

311.   Defendant Outlaw during an interview on NBC
blamed the homicides (499) on Covid-19 (Did the
defendant notify the CDC so they could be included
in the totals). This is a conspiracy to cover up
corruption. This is not rocket science, it is
corruption. Every expert, for that matter every
laymen, will tell you crime without consequences
equals more crime, period. The CRIMINALS ravaging
this City knows this the BEST.

312.   The defendants actions and/or inactions have
caused hundreds of lives to be lost and millions of
citizens the liberty they are entitled.

313.   The only responses Jacobs has received from the
defendants as a result of reporting corruption
were:

1. Received Sir
2. We are not the proper authority to address
   your victimization.
3. Your reporting of corruption is Conduct
   Unbecoming, which is grounds for termination
4. Never received, talk to my lawyer.
5. Your constant attempts of reporting
   corruption is Inappropriate and Disruptive.

## COUNT ONE

### First Amendment Retaliation

### 42 U.S.C. 1983 ("Section 1983")

314. Was Jacobs involved in an act protected by the United States Constitution?

315. Yes.

316. Did the defendants retaliate as a result of Jacobs engaging in an act protected by the Constitution?

317. Yes.

318. Was there a causal link between the act protected by the Constitution and the retaliation?

319. Yes.

320. On September 27, 2018 Tripp ordered Lt. Hendershot to obtain and provide her with the nature of Jacobs' privilege communication with his Counsel.

321. Lt. Hendershot contacted Jacobs on September 27, 2018 at approximately 3:00PM. Lt. Hendershot informed Jacobs Tripp is going to prosecute him for speaking with counsel. Jacobs' informed Lt. Hendershot he was attempting to seek counsel with how to report the illicit actions committed by ADA Tripp.

322.    Lt. Hendershot relayed this information to ADA, Tracy Tripp on September 27, 2018. Tripp immediately initiated another act of corruption by using her position as an Assistant District Attorney, to pursue criminal charges against Jacobs in retaliation for exposing her corruption. The City of Philadelphia and the Philadelphia District Attorney's Office has condoned these actions and to date have not done anything to deter additional acts of corruption.

323.    Jacobs participated in a podcast. During the podcast Jacobs discussed the retaliatory actions committed by the Philadelphia District Attorney's Office against him for reporting corruption. Immediately following the podcast (3 working days) the defendants, acting under the color of law, retaliated against Jacobs by initiating disciplinary actions. The discipline comes with a penalty of termination, ending Jacobs' 25 year law enforcement career. The defendants actually state in the disciplinary documents, the discipline was because of Jacobs' reporting the corruption during the podcast.

324.    "To prevail on a § 1983 First Amendment Retaliation claim, the plaintiff must prove that: (1) he engaged in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link [existed] between the constitutionally protected conduct and the retaliatory action." Palardy v. Twp.of Millburn, 906 F.3d 76, 80-81 (3d Cir. 2018) (internal quotations omitted).

325.    In 2006, the Supreme Court held that when a public employee speaks as part of her job, he/she does not speak "as a citizen" and therefore cannot claim First Amendment protection for that speech. Garcetti v. Ceballos, 547 U.S. 410 (2006).

326.    Over the next eight years, the lower courts expanded the reach of Garcetti until it was routine for courts to apply that holding to bar First Amendment claims arising from speech that "related to" or "arose from" public employment. See, e.g., Lane v. Cent. Ala. Cmty. Coll., 523 Fed. Appx. 709, 712 (11th Cir. 2013), reversed sub nom. Lane v. Franks, 139 S. Ct. 2369 (2014); Flora v. Cty. of Luzerne, No. 3:13-1049, 2014 WL 931439, at *11 (M.D. Pa. Mar. 10, 2014). In 2014, the Supreme Court issued a course correction. In Lane v. Franks,139 S. Ct. 2369 (2014), the unanimous Supreme Court made two points:

327.    **First, that speech that is not part of what the employee is paid to do is also not part of the employee's "ordinary job duties" within the meaning of Garcetti, even if that speech "relates to" his job duties.** Lane, 139 S. Ct. at 2383.

328.    **Second, when an employee is fulfilling an independent obligation held in common with members of the public, they are not subject to employer's supervision and control and their speech is protected by the First Amendment,** subject to the balancing test set forth in Pickering v. Bd. of Educ., 391 U.S. 563 (1968). Lane, 139 S. Ct. at 2381.

329. Jacobs observed criminality and political corruption committed by Tripp in the Presentment. Jacobs could not sit by and watch an Officer get charged with murder based upon criminal conduct and prosecutorial misconduct. Jacobs exhausted several avenues attempting to expose this corruption.

330. Subsequently, Jacobs spoke out against the criminal actions being implemented against him and was immediately disciplined and threatened with termination.

331. These are not only causal links between the protected activity and the retaliation.

332. These are direct links between the protected activities and the retaliation.

333. Tripp and the DAO immediately retaliated against Jacobs.

334. The Philadelphia Police Department immediately retaliated against Jacobs. The disciplinary documents actually state the discipline is a result of Jacobs' engaging in the protected activity.

335. These actions would definitely deter a person of ordinary firmness from exercising a constitutionally protected right.

336.     "Speech by public employees on subject matters related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment." Consistently with this understanding, **Lane reiterated that employee speech does not lose its First Amendment protections merely because it "relates to public employment or concerns information learned in the course of public employment." Lane, 139 S. Ct. at 2379. As this Court has explained, "the 'controlling factor'" in these cases is not whether the subject matter of the speech in question was somehow related to the employee's job, but "whether the statements were 'made pursuant to [the speaking employee's] duties,' that is, whether such utterances were among the things that the employee 'was employed to do.'" Flora v. Cty. of Luzerne, 776 F.3d 169, 177 (3d Cir. 2015) (alteration in original); see also id. at 178-79 ("In . . . using the 'related to' standard, the District Court did not apply the correct test under Garcetti, as Lane has made clear.").**

337.     **"Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."** *Lane*, **573 U.S. at 241 (internal quotations and citation omitted);** *see also Connick v. Myers*, **461 U.S. 138, 146**

338. **We have held that "an internal investigation into the alleged criminal actions of public employees falls squarely within the core public speech delineated in** Connick."Baldassare v. State of N.J., **250 F.3d 188, 196-97 (3d Cir. 2001) (internal quotation marks and citations omitted).**

339. Jacobs investigates OIS **not political corruption** when Jacobs observed illegal acts being committed by the prosecutor he attempted to expose the illegal activity, which is a matter of public concern, especially since the previous District Attorney of Philadelphia went to prison for corruption. As a result, a **fabricated** criminal investigation (another crime), without predicate, was initiated immediately against Jacobs, which is another matter of public concern.

340. In Javitz v. Luzerne County (3d Cir. 2019, Precedental), the subject of Javitz's speech was also not within her ordinary job duties. Javitz reported a crime. Jacobs investigates Officer Involved Shootings not political corruption, reporting the criminal activity is protected speech and thus is covered against First Amendment retaliation...see *Javitz v. Luzerne County (3d Cir. 2019, Precedental).*

341. Following Garcetti, a public employees statement is protected when 1) in making it, the employee spoke as a citizen, 2) the statement involved a matter of public concern, and 3) the government employer did not have an adequate justification for treating employee differently.

54

342.    Although Jacobs did not participate in the grand jury or violate grand jury oath of secrecy (This is only to appease the defendants' fabricated grand jury argument). The Supreme Court has ruled in Butterworth v. Smith that states may not prohibit grand jury witnesses from disclosing their testimony after the grand jury has ended. This is a violation of the witnesses' First Amendment rights.

343.    When Jacobs inquired about Tripp's criminal activity with an attorney. The Pownall grand jury had ended and an indictment returned.

344.    In Butterworth v. Smith Justice Rehnquist wrote; reputational interest cannot justify the proscription of truthful speech.

345.    **To reiterate. There was never a grand jury leak. This is a fabrication to cover up the corruption. The defendants all know this. The defendants know that defendant Tripp is lying (will be exposed during discovery) about this grand jury leak. Why would Judge Coleman be involved in a fake admonishment? How did Court transcripts get lost? This is a fake and political cover up.**

346.    Here, they are now trying to smear Jacobs. Here are just a few. He violated, as an Officer of the Court, his oath of secrecy. He's disruptive. His actions are inappropriate.

347.    When, On November 26, 2019, Jacobs met with the second highest ranking Officer in the Philadelphia Police Department (Deputy Police Commissioner Dennis Wilson). Defendant Wilson commended Jacobs on his attempts to expose the corruption at the DAO during the meeting. Wilson, speaking for himself and defendant Coulter, stated they did not want to get "involved" with Jacobs civil litigation against the DAO.

348.    Defendant Wilson actually wrote on memorandum Jacobs submitted "The PPD is not the proper authority to investigate **victimization by the DA's Office."** Refer this complaint to the Attorney General's Office.

349.    Defendant Wilson did not say Jacobs you were violating grand jury secrecy. Defendant Wilson did not say Jacobs you are being disruptive. Defendant Wilson did not say Jacobs your litigation is inappropriate. Defendant Wilson did not say Jacobs do not report on this matter of public concern.

350.    Here's what defendant Wilson did say and write to Jacobs during their meeting.

351.    You are a victim of criminal activity by the District Attorney's Office. Contact the Pennsylvania Attorney General's Office to initiate a **criminal investigation.**

352.   Two months later defendant Wilson ordered subordinates to start a disciplinary investigation (only Jacobs interviewed). The "investigation" of a few days charged Jacobs with Conduct Unbecoming "unspecified" (the defendants could not find an actual violation). This charge comes with a penalty of termination.

353.   The First Amendment prohibits government officials from subjecting an individual to "retaliatory actions" for engaging in protected speech, Hartman v. Moore 547 US 250,256 (2006).

354.   Here, you have the defendants not disputing that 1) Jacobs speech was as a citizen (not part of official duties), 2) Jacobs speech was on a matter of public concern and 3) The defendants did not had adequate justification to treat Jacobs differently than any other member of the general public.

355.   Here, you also have the defendants not disputing 1) Jacobs participated in a activity protected by the First Amendment; 2) the defendant retaliated against Jacobs in a manner that would be sufficient to deter a person of ordinary firmness from exercising his Constitutional rights; and a causal nexus existed between the protected activity and the retaliation.

356.   Finally, defendants Outlaw, Coulter and Wilson instituted a custom of retaliation for reporting corruption and criminality within the Philadelphia Police Department. This custom comes with a penalty of termination.

357.   Defendants Motion to Dismiss First Amendment Retaliation fails and should be denied.

## PA WHISTLEBLOWER LAW

## 43 PS 1421

358.    Providing protection for employees who report a violation or suspected violation of State, local or Federal law; providing protection for employees who participate in hearings, investigations, legislative inquiries or court actions; and prescribing remedies and penalties.

359.    **"Whistleblower."** A person who witnesses or has evidence of wrongdoing or waste while employed and who makes a good faith report of the wrongdoing or waste, verbally or in writing, to one of the person's superiors, to an agent of the employer or to an appropriate authority.

360.    **Protection of employees:**

361.    Persons not to be discharged.— No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

362.   Civil service employees.— An employee covered by civil service who contests a civil service action, believing it to be motivated by his having made a good faith report, verbally or in writing, of an instance of wrongdoing or waste, may submit as admissible evidence any or all material relating to the action as whistleblower and to the resulting alleged reprisal.

363.   The defendants argue that Jacobs only has "shear speculation" of their wrongdoing.

364.   Jacobs has been a sworn Law Enforcement Officer for 25 years. Unlike the defendants, Jacobs does not allege criminal activity on "shear speculation". Jacobs base criminal activity upon facts. The defendants are tossing around immunity for intentional illegal acts.

365.   Here, Jacobs can prove the defendants' criminality beyond reasonable doubt.

366.   The defendants also stated Jacobs summarily concluded and has unsupported speculation and allegations.

367.   Jacobs has multiple witnesses to prove these allegations are not only supported. The allegations are also factual.

368.   The defendants know this.

369.   Here, Jacobs has reported on numerous occasions acts of criminality and corruption.

370.   As a result, Jacobs has been threatened with criminal prosecution and termination of a 25 year law enforcement career.

371.   This is a clear message to anyone; if you are considering standing up against corruption. This is your fate.

372.   The defendants will lie and if they get caught, claim immunity.

373.   The Supreme Court has held you cannot get immunity for initiating a criminal proceeding without probable cause.

374.   The defendants also stated that Jacobs admitted violating grand jury secrecy (First Amendment Retaliation argument)and then admitted he did not participate in the in the grand jury (Whistleblower argument). Which argument is their truth?

375.   Here, Jacobs has reported in good faith instances of wrongdoings and corruption. The defendants were not interested in an investigation of corruption just retaliation against the whistleblower, Jacobs.

376.    The Motion to Dismiss PA Whistleblower fails
and therefore should be denied.

## COUNT THREE

### Fourteenth Amendment violation of Due Process
### 42 U.S.C. 1983 ("Section 1983")

377.    The defendants violated Jacobs' rights to due
process by initiating, conspiring and enforcing
arbitrary and capricious criminal and disciplinary
investigations against Jacobs.

378.    The defendants also conspired to refuse Jacobs
the protections he is afforded from the criminality
committed by the defendants.

379.    Here, you have a prosecutor who fabricated a
crime they knew did not exist.

380.    They used the fabricated crime to retaliate
against Jacobs for exercising a right protected by
the Constitution.

381.    The defendants then initiated a criminal
proceeding against Jacobs to silence his speech and
keep him from reporting political corruption.

382.     When those actions by the defendants did not
deter Jacobs from attempting to expose the
corruption and criminality being committed by the
defendants. The defendants came after Jacobs'
employment.

383.    The defendants, headed by Deputy Police
Commissioner Wilson;(yes the same defendant Wilson
who commended Jacobs on his bravery and instructed
Jacobs to seek criminal charges for the
victimization being committed by the defendants)
initiated a retaliatory disciplinary investigation
against Jacobs for addressing the victimization.
The investigation consisted of ONE interview.

384.   That interview was Jacobs and Jacobs alone.

385.   The result of the investigation is Jacobs' reporting of criminality and corruption is Conduct Unbecoming. The punishment termination.

386.   Here, you have Jacobs reporting In good faith corruption and criminality.

387.   The defendants' response was to retaliate against Jacobs violating his Constitutional rights of due process by initiating criminal and disciplinary proceedings without probable cause or merit.

388.   As stated earlier, Jacobs has not violated ANY law or departmental policy.

389.   The Supreme Court wrote presenting false evidence for a crime violates the due process rights to fair criminal proceedings secured by the 14th Amendment.

390.   The Supreme Court also wrote, framing innocent individuals for a crime with false evidence violates the Constitution.

391.   The Court further states, one such; if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit.

392.   Here, we have a fabricated criminal proceeding and a fabricated disciplinary proceeding. The defendants' retaliatory actions, without due process has caused Jacobs harm.

393.   As such, the defendants' motion to dismiss Fourteenth Amendment Due Process violations fail and therefore denied.

## COUNT FOUR

### Conspiracy

394.   The defendants engaged in a course of conduct to deprive Jacobs of his federally protected Constitutional Rights.

395.   The defendants continue to engage in this behavior.

396.   The defendants have confessed in their own documents of this conduct.

397.   Jacobs alleges that defendants "conspired". . . to deprive him of his Constitution[al] [r]ights by retaliating against Jacobs for reporting political corruption. The defendants initiated a fabricated criminal prosecution against Jacobs for a crime they knew he did not commit. The defendants subsequently disciplined Jacobs for reporting the corruption. " To succeed on a claim for conspiracy, a claimant must prove that persons acting under the color of state law conspired to deprive him of a federally protected right. Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,172 F.3d 238, 254 (3d Cir. 1999).

398.   The defendants argument is that Jacobs just repeatedly used the term conspiracy.

399.   The defendants are actually part of a cabal against Jacobs.

400.   Here, you have multiple defendants aligned in a common cause of retaliation against Jacobs for exposing political corruption.

401.   Here, you have multiple defendants performing separate functions to make the quilt of retaliation.

402.   The defendants' motion to dismiss conspiracy should be denied.

403.   Finally, defendants' Tripp and Krasner want absolute or qualified immunity for their criminal conduct.

404.   If the defendants' argument reveals anything; it reveals Jacobs' allegations are true.

405.   None of the defendants refute the allegations.

406.   None of the defendants can refute the allegations.

407.   The defendants just want a shield from their criminality.

408.   For the sake of the argument (analogies to follow), Tripp and Krasner were acting as the investigators when they presented fabricated information to Tripp and Krasner the prosecutors to initiate criminal proceedings against Jacobs.

409.   Therefore, acting as the investigators, Tripp and Krasner are treated as law enforcement officers and not entitled to absolute immunity.

410.   Now, let us tackle qualified immunity. The defendants in effect "planted evidence" in an effort to initiate a criminal proceeding against Jacobs for attempting to expose their corruption.

411.    Even with the "planted evidence" the defendants did not possess the probable cause to initiate the criminal proceeding because no crime had occurred.

412.    You cannot plant evidence to initiate a criminal proceeding in retaliation and to prevent your criminality from exposure then claim qualified immunity.

413.    The prosecutor neither is, nor should consider himself to be an advocate before he has probable cause (Buckley, 509 U.S.).

414.    When falsified evidence is used as a basis to initiate the prosecution of a defendant, the defendant has been injured (3rd Circuit, 2016).

415.    **Let us be clear, 1) A grand jury leak NEVER happened (the defendants know this). 2) A violation of a grand jury oath of secrecy NEVER happened (the defendants know this) 3) A CRIME (other than by the defendants) NEVER occurred (the defendants know this) 4) The defendants fabricated and lied ONLY to retaliate against Jacobs (the defendants know this).**

416.    **Analogy Number 1:** You cannot initiate criminal proceedings for bank robbery if 1)there was no attempt to rob a bank 2) there was no solicitation to rob a bank 3) there was no conspiracy to rob a bank 4) heck, no bank even existed.

417.    **Analogy Number 2:** Here, you have a government official 1) fabricate a crime 2) fabricate a defendant for the fabricated crime 3) initiate criminal proceedings against the fabricated defendant for the fabricated crime.

418. **Analogy Number 3:** A citizen observes a police officer plant a gun on another citizen; the police officer subsequently arrests the citizen for firearm violations. Another citizen observes the officer planting the gun and arresting the citizen. The observing citizen attempts to learn their options of reporting the illegal actions of the police officer. The arresting officer learns the observing citizen is attempting to report their illegal actions. The arresting officer threatens the observing citizen with prosecution if the observing citizen reports their criminal activity and the planting of evidence on the citizen.

## CONCLUSION

419. In January of 2018 Krasner was sworn in as the District Attorney of Philadelphia. The previous elected District Attorney of Philadelphia (R. Seth Williams) was federally charged and convicted of corruption. Krasner, shortly thereafter, stated "This aint fair, this is biased" in regards to the lack of prosecutions of Police Officers involved in shootings. Officer Pownall became Krasner's poster child to begin rectifying Krasner's perceived biases. How can a lawyer and prosecutor make that statement without any factual data?

420. This began the new environment of corruption that Krasner has cultivated and nurtured at the Philadelphia District Attorney's Office. This virus has spread and caused irreparable damage to the citizens of Philadelphia. When Jacobs attempted to eradicate and destroy the virus by exposing the corruption, Krasner ordered his minions to shut Jacobs down.

421.    Krasner's District Attorney's Office of
corruption has instituted a "Tuskegee" type
experiment on the citizens of Philadelphia. This
abomination has to be stopped. This is certainly a
matter of public concern. This is also not within
the ordinary duties of Jacobs' employment.

422.    While authoring this brief approximately 500
citizens were killed in Philadelphia in 2020. The
increase in violence being perpetrated against this
community is predominately the direct result of the
systemic corruption and policies at the
Philadelphia District Attorney's Office, headed by
Krasner. Jacobs attempted to expose this corruption
and was retaliated against, as a result. This link
is not causal. This is a direct link between
protected activity and a retaliatory act.

423.    Krasner and ADA Tripp viewed Jacobs as a threat
in their attempt to sow racial discord. Krasner and
ADA Tripp wanted to paint the shooting death of
Jones by Pownall as being racially motivated. The
information that Jacobs possessed and attempted to
expose was detrimental. The only option the DAO had
was to threaten Jacobs with criminal prosecution if
he did not remain silent.

424.    Jacobs, as stated earlier, is an African
American, who was part of an investigation
involving another African American (Jones) being
shot to death by a white Philadelphia Police
Officer (Officer Pownall). Krasner campaigned on
rectifying the fact no Philadelphia Police Officer
had been charged in the shooting death of an
African American in twenty years.

425.    Jacobs' ethnicity and knowledge of the
investigation interfered with the illicit, criminal
and nefarious acts and plans of the DAO during the
indictment of Officer Pownall. Jacobs' attempts to
expose these plans could not go without severe
punishment and consequence. Jacobs' had to be
silenced, thus ADA Tripp conspired with other
parties to stop him from exposing the illicit
activity by retaliating against Jacobs with a
fabricated criminal investigation.

426.    ADA Tripp, according to Lt. Hendershot,
conspired with Judge Coleman to allegedly commit
judicial and prosecutorial misconduct in an effort
to silence Jacobs by targeting him with a
fabricated criminal investigation (another act of
corruption).

427.    **It is impossible to leak grand jury information
in which you have never participated.**

428.    "An employee's speech addresses a matter of
public concern when it can be 'fairly considered as
relating to any matter of political, social, or
other concern to the community.'" *Adams*, 36 F.Supp.
3d at 517 (citing *Holder v. City of Allentown*, 987
F.2d 188, 195 (3d Cir. 1993); *Connick v. Myers*, 461
U.S. 138, 146 (1983); *Johnson v. Lincoln Univ. of
Com.*, 776 F.2d Case: 18-2389 Document: 003113073495
Page: 34 Date Filed: 10/29/2018 35 443, 451 (3d
Cir. 1985)). The "content, form, and context" of
the statement are indicative as to whether it
relates to a matter of public concern.

429.   The Third Circuit recognizes that "perceived wrongdoing on the part of a public official is often a matter of public concern." *Id.* (citing *Azzaro v. County of Allegheny*, 110 F.3d 968 (3d Cir. 1997)). The Court incorrectly held that a situation in which a government employee, while on work hours and performing work functions, committed a criminal act in violation of Pennsylvania Statute, by fabricating a criminal investigation and providing false testimony to the Court in an effort to obtain an indictment and silence the whistleblower was not a matter of public concern.

430.   Certainly, it is a matter of public concern as to whether a public, taxpayer funded employee is committing a crime while on the job.

431.   **Jacobs can prove Tripp's guilt beyond reasonable doubt in both cases in five minutes. Tripp cannot provide any valid reason for her criminal conduct.**

432.   **What's worse is Tripp's employers know of her criminality (Jacobs) and condones it.**

433.   **If a Philadelphia Police Officer was accused of criminality by a civilian that Officer would be investigated.**

434.   **Here you have a citizen reporting criminality by public official (s) and there is not an investigation and Tripp and her co-conspirators remain in their positions to commit more illegal acts.**

435. **What has this Country come to where two criminals can have two Law Enforcement Officers terminated from their employment (one arrested for murder) by committing provable criminal acts?**

436. Defendant Krasner stated at a meeting with black Law Enforcement Officers (Guardian Civic League) regarding the Pownall shooting "I suggest you don't shoot unarmed people in the back, that's what I suggest."

437. Defendant Krasner further stated regarding Pownall, "It wasn't let me stand here and aim and then carefully re-aim at an unarmed person who was running away and do so for the second time after I paralyzed the first guy."

438. Krasner was telling the group his decision to arrest Pownall for the Jones incident also involved Pownall, in Krasner's opinion, "getting away" with a previous shooting.

439. Krasner's agenda is to sow racial discord and mistrust between the citizens of Philadelphia and the Philadelphia Police Department with lies.

440. Jacobs took an oath to protect the citizens of Philadelphia. Jacobs is honoring that oath.

441. The defendants also took oaths to protect the citizens of Philadelphia. Some took an oath as lawyers in Pennsylvania. The defendants (ALL) are violating their oaths.

442.    In the criminal world there is a saying "snitches get stitches". The saying speaks for itself. If you tell on the criminal, they will harm you in some way.

443.    The defendants are all engaging in criminal behavior. Jacobs is a snitch. The defendants are giving Jacobs his stitches.

444.    There is one word that rhymes with snitch and stitch that Jacobs is not. Jacobs will continue to honor his oath. Jacobs is not going away. These criminals are.

445.    Chris Palmer and Mensah Dean the so called "reporters" for the Philadelphia Inquirer also could have provided the citizens of Philadelphia with quality information.

446.    Palmer contacted Jacobs immediately after Jacobs' filed his civil complaint.

447.    Jacobs confirmed the complaint but would not provide Palmer an interview after investigation revealed he was Krasner's publicist and not an actual reporter, in Jacobs' opinion.

448.    Mensah Dean sat in the courtroom when Pownall's attorney told the courtroom of the DAO's nefarious actions.

449.    Jacobs was inches (pre covid) away standing directly over Dean's left shoulder as he took notes.

450.    This "reporter" refused to "report" on what
        happened in the courtroom that day.

451.    Jacobs has watched Dean sit in on numerous
        homicide court cases, where the victims are almost
        always African American.

452.    Dean chooses to tow Krasner's "white savior" of
        black people anthem.

453.    Jacobs will not tow that line, nor will he
        "kneel" like some have done before him. I guess
        selling the Inquirer is worth selling out.

454.    **In closing, Jacobs' Law Enforcement career has
        been exterminated with the recent decision of the
        denial of injunctive relief.**

455.    **Without any protections. The exhaustion of sick
        time. Jacobs cannot return to the Philadelphia
        Police Department to lose his pension with
        termination (you would not walk down a dark alley
        in the middle of the night knowing gun toting thugs
        were present).**

456.    **This is exactly the defendants' agenda. Jacobs
        is exposing our corruption and he must go.**

457.    **The defendants are cheering good riddance!**

# CERTIFICATE OF SERVICE

I, Derrick Jacobs, hereby certify that on February 24, 2021 a true and correct copy of the Pro Se Brief, was electronically served via ECF and/or email upon all parties of record listed below:

Jennifer MacNaughton, Esquire
Kelly S. Diffily, Esquire
Kia Ghee, Esquire
Nicole S. Morris, Esquire
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
***Attorneys for Defendants(s)***

Derrick Jacobs
P.O. Box 56091
Philadelphia, PA 19130
derrickjacobs9116@gmail.com
***Plaintiff***
***pro se***

**Date: February 24, 2021**