**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DERRICK JACOBS,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 19-4616 |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| Defendants. | : | |

## ORDER

**AND NOW**, this _____ day of _____, 2021, upon consideration of Defendants City of Philadelphia, Commissioner Danielle Outlaw, Deputy Commissioner Christine Coulter, District Attorney Lawrence Krasner, Assistant District Attorney Tracy Tripp, Chief Inspector Dennis Wilson, Deputy Commissioner Benjamin Naish, Inspector DF Pace, Lieutenant Jason Hendershot, and Lieutenant Patrick Quinn's Motion to Dismiss, and any response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**.  All claims against Defendants are dismissed.

**BY THE COURT:**

_____
**HARVEY BARTEL, III,** J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DERRICK JACOBS,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 19-4616 |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS CITY OF PHILADELPHIA, COMMISSIONER DANIELLE OUTLAW, DEPUTY COMMISSIONER CHRISTINE COULTER, DISTRICT ATTORNEY LAWRENCE KRASNER, ASSISTANT DISTRICT ATTORNEY TRACY TRIPP, CHIEF INSPECTOR DENNIS WILSON, DEPUTY COMMISSIONER BENJAMIN NAISH, INSPECTOR DF PACE, LIEUTENANT JASON HENDERSHOT, AND LIEUTENANT PATRICK QUINN'S**
**<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

Defendants City of Philadelphia, Commissioner Danielle Outlaw, Deputy Commissioner Christine Coulter, District Attorney Lawrence Krasner, Assistant District Attorney Tracy Tripp, Chief Inspector Dennis Wilson, Deputy Commissioner Benjamin Naish, Inspector DF Pace, Lieutenant Jason Hendershot, and Lieutenant Patrick Quinn file this Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. Pro. 12(b)(6), seeking that the claims against them be dismissed on the grounds more fully described in the supporting memorandum of law.

Respectfully Submitted,

CITY OF PHILADELPHIA
LAW DEPARTMENT

Date: <u>March 22, 2021</u>          BY: <u>  s/ Kia Ghee        </u>
                                        Kia Ghee, Esq.
                                        Deputy City Solicitor

1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DERRICK JACOBS,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 19-4616 |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS CITY OF PHILADELPHIA, COMMISSIONER DANIELLE OUTLAW, DEPUTY COMMISSIONER CHRISTINE COULTER, DISTRICT ATTORNEY LAWRENCE KRASNER, ASSISTANT DISTRICT ATTORNEY TRACY TRIPP, CHIEF INSPECTOR DENNIS WILSON, DEPUTY COMMISSIONER BENJAMIN NAISH, INSPECTOR DF PACE, LIEUTENANT JASON HENDERSHOT, AND LIEUTENANT PATRICK QUINN'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendants City of Philadelphia, Commissioner Danielle Outlaw, Deputy Commissioner Christine Coulter, District Attorney Lawrence Krasner, Assistant District Attorney Tracy Tripp, Chief Inspector Dennis Wilson, Deputy Commissioner Benjamin Naish, Inspector DF Pace, Lieutenant Jason Hendershot, and Lieutenant Patrick Quinn submit this Memorandum of Law in Support of their Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6), and seek dismissal of Plaintiff's Fourth Amended Complaint for the following reasons:

- All claims against District Attorney Lawrence Krasner and ADA Trip should be dismissed because they are entitled to absolute immunity from suit for damages for conduct that occurred in the course of their roles as advocates for the state;

- Plaintiff fails to state a First Amendment retaliation claim actionable under § 1983 because his speech was not protected and because the City's interest outweigh Plaintiff's First Amendment rights;

- Plaintiff fails to state a claim under the Pennsylvania Whistleblower Law because there was no wrongdoing;

- Plaintiff fails to state a Fourteenth Amendment due process claim actionable under §1983; and

- Plaintiff' Fails to state an actionable §1983 conspiracy claim.

I.    **FACTUAL SUMMARY**[1]

a.   **Plaintiff's employment history.**

On January 22, 1996, Plaintiff Derrick Jacobs ("Plaintiff"), was appointed as a Police Officer for the Philadelphia Police Department. He was promoted to Detective on December 16, 1998. *See* Plaintiff's Amended Compl. (ECF 2:19-cv-04616-HB Doc. 3)

On June 5, 2017, Plaintiff was transferred to an assignment within the District Attorney's Office ("DAO") at the Officer Involved Shooting Investigation ("OIS") Unit. *Id.*

b.   **Plaintiff was assigned to the Police Shooting involving Officer Ryan Pownall.**

On June 8, 2017, Plaintiff investigated a police shooting involving Police Officer Ryan Pownall ("Pownall"). Plaintiff became an integral part of the investigation, interviewing the majority of fact witnesses. *Id. See also* Pl. 2nd Am. Compl. ¶ 1.

In November 2017 Plaintiff alleges he was "informed" by the Pennsylvania Attorney General's Office ("AGO") that there would be no charges brought against Pownall. *Id.* ¶ 2.

---

[1] For the limited purposes of this Motion to Dismiss, Defendants accept the facts as pled by Plaintiff as true.

After the election of District Attorney Krasner, the DAO sought to prosecute Pownall. *Id.* ¶¶ 3-4. Assistant District Attorney Tracy Tripp ("ADA Tripp") initiated an indicting grand jury against Pownall. *Id.* ¶

On Thursday, August 2, 2018, ADA Tripp contacted Plaintiff to review his potential grand jury testimony. During this conversation, Plaintiff relayed his concerns regarding the prosecution of Pownall and stated that Attorney General Christopher Phillips ("AG Phillips") told him that no charges would be brought against Pownall based on AG Phillips's meeting with a key witness. ECF 2:19-cv-04616-HB Doc. 3. ADA Tripp never involved Plaintiff in investigation after their phone call. *Id.*

### c. Plaintiff believed the Pownall inditement was based on false or perjured testimony.

On or around September 2018, Plaintiff reviewed the grand jury presentment pertaining to Officer Pownall. *See* Pl. 2nd Am. Compl. ¶ 9. After reviewing the grand jury presentment, Plaintiff concluded that ADA Tripp knowingly presented false, misleading, or perjured testimony to the grand jury in order to obtain the indictment. *Id.* ¶¶ 10-11.

### d. Plaintiff admitted to discussing the Pownall investigation and indictment with an attorney.

On September 27, 2018 Plaintiff spoke to an attorney to explore his options for reporting his allegations against ADA Tripp. *Id.* ¶ 12. That same day, ADA Tripp learned that someone had a conversation with that attorney about the Pownall investigation and threatened to prosecute all of the officers in the OISI Unit unless Lt. Henderson ascertained the identity of the person. *See Id.* ¶¶ 13-14. In response, Plaintiff informed Defendant Henderson that he had spoken with the attorney. *Id.* ¶ 16.

**e. ADA Tripp initiated criminal proceedings regarding Plaintiff's "leak" of grand jury information.**

On October 16, 2018 Plaintiff learned that ADA Tripp had initiated criminal proceedings against him for "leaking" grand jury information regarding the Pownall investigation. *Id.* ¶¶ 10, 26. During the proceedings, Lt. Hendershot testified regarding Plaintiff's conversation with the attorney. *See id.* ¶ 28. On November 9, 2018, Judge Robert Coleman informed Plaintiff that he had "5th amendment issues." *Id.* ¶ 38.

**f. ADA Tripp withdrew criminal proceedings.**

On May 21, 2019 ADA Tripp informed Lt. Hendershot that she would be withdrawing the case against Plaintiff because the Court transcripts were lost. *Id.* ¶ 37. On July 25, 2019 Lt. Hendershot informed Plaintiff that ADA Tripp had withdrawn. *Id.* ¶ 41.

**g. Plaintiff initiated a federal complaint against the City of Philadelphia, the DAO, District Attorney Krasner, and ADA Trip.**

On October 4, 2019 Plaintiff filed a federal lawsuit alleging his constitutional rights were violated. *Id.* ¶ 43.

**h. Plaintiff wrote multiple memos to Deputy Commissioner Coulter to request her assistance elevating his concerns.**

That same day, Plaintiff wrote a memorandum to Deputy Commissioner Coulter ("DC Coulter") explaining that he believed he was "threatened with arrest and prosecution" in an attempt to silence his report of corruption. *Id.* ¶ 46. Plaintiff asked DC Coulter to forward his memo to United States Attorney William McSwain and Pennsylvania Attorney General Josh Shapiro and afford him "whistleblower protections." *Id.* ¶¶ 47-48. Two days later, on October 6, 2019, Plaintiff resubmitted this memo after having received no response. *See id.* ¶ 49. The following month, on November 8, 2019, Plaintiff wrote her again. *Id.* ¶ 52. Ten days later, on November 18, 2019, Plaintiff wrote her again. *Id.* ¶ 54.

### i. Plaintiff sought media publicity.

On November 18, 2019 Plaintiff's federal lawsuit became the focus of an article published on Bigtrial.net. *Id.* ¶ 55. Plaintiff admits that he used this media outlet to "expose [alleged] corruption at the DAO." *See id.* ¶ 76.

### j. Deputy Commissioner Wilson met with Plaintiff to inform him that his request to meet with Commissioner Coulter would not be granted but suggested he contact the Attorney General regarding his concerns.

On November 26, 2019 Plaintiff was directed to meet with Deputy Commissioner Dennis Wilson ("DC Wilson"). *Id.* ¶ 61. During the meeting DC Wilson informed Plaintiff that his request to meet with DC Coulter would not be approved. *Id.* ¶ 69. DC Wilson advised Plaintiff to speak with the AGO regarding his allegations of criminal activity in the DAO. *Id.* ¶ 70. Plaintiff informed DC Wilson that he had used the bigtrial.net article to expose the DAO and that he would continue using media outlets in this manner. *Id.* ¶¶ 76-77. DC Wilson informed Plaintiff that he did not have an issue with this media contact and requested Plaintiff keep him abreast of any developments with the AGO. *Id.* ¶¶ 78-79.

### k. Plaintiff contacted the AGO .

On November 27, 2019 Plaintiff contacted the AGO. *Id.* ¶ 83. At that time, he was informed that there was a conflict of interest. *Id*.

### l. Plaintiff requested DC Wilson contact the US Attorney's Office regarding his concerns.

Plaintiff informed Lt. Hendershot of the AGO's position and requested that he notify DC Wilson in hopes that Wilson could contact the United States Attorney's office to initiate a criminal investigation. *Id.* ¶¶ 84-85. Plaintiff asked Lt. Hendershot "almost daily" whether DC Wilson had responded and was repeatedly told that he had not. *Id.* ¶¶ 86-87.

**m. Plaintiff participated in a podcast.**

On January 18, 2020 Plaintiff participated in a podcast to discuss his litigation against the City of Philadelphia and the DAO. *Id.* ¶¶ 89-90.

**n. Plaintiff was subject to a disciplinary investigation based on his participation in the podcast.**

On January 27, 2020 Plaintiff was notified that he would be subject to a disciplinary interview based on his participation in the podcase. *Id.* ¶¶ 91, 99. In response, Plaintiff wrote to DC Wilson lamenting him for what he believed to be a betrayal and retaliation for reporting corruption. *Id.* ¶¶ 101-103.

**o. Plaintiff submitted multiple memos to Police Administration.**

On January 30, 2020 Plaintiff wrote a memo to DC Coulter entitled "release of information to all media sources regarding corruption. *Id.* ¶ 107.

On February 10, 2020 Plaintiff wrote a memo to new Commissioner Danielle Outlaw entitled "urgent matter regarding Detective Derrick Jacobs." *Id.* ¶¶ 108-109. In this letter, Plaintiff requested a meeting to discuss what he believed was corruption and criminal activity. *Id.* ¶ 110.

**p. Plaintiff was charged with violation of the Department's Personnel Policies.**

On February 10, 2020 Lt. Pace issued disciplinary charges against Plaintiff for his participation in the podcast. *Id.* ¶ 111. Plaintiff was charged with Conduct Unbecoming Unspecified. *Id.* ¶¶ 113-115.

On February 13, 2020 Plaintiff "receive[d] credible information" that Commissioner Outlaw would take a Direct Action against him that would result in his termination. *See id.* ¶ 122.

**q. Plaintiff began taking leave time to avoid disciplinary charges.**

Plaintiff began taking vacation leave to avoid discipline. *Id.* ¶ 123. On March 2, 2020 Plaintiff requested to be placed in "Injured on Duty" ("IOD") status due to job related stress. *Id.* ¶ 124, 128. Lt. Hendershot informed him that he could not use IOD status for that purpose. *Id.* ¶ 127.

**r. Plaintiff's police vehicle was reclaimed.**

On March 5, 2020 Lt. Hendershot reclaimed the official police vehicle that Plaintiff had been driving. *Id.* ¶ 131.

**s. Plaintiff began harassing Police Administration.**

On March 6, 2020 Plaintiff wrote a second memo to Commissioner Outlaw. *Id.* ¶ 132. In this memo, Plaintiff asked that Commissioner Outlaw demanding she initiate a criminal investigation into the acts "committed against [him]" which included the department's disciplinary charges and the DAO's criminal investigation of his "leak" of the Pownall investigation. *Id.* ¶¶ 134-135.

On March 12, 2020 Lt. Hendershot informed Plaintiff to report to Internal Affairs based on his Memo to Commissioner Outlaw. *Id.* ¶ 138.

On May 18, 2020 Plaintiff wrote a third memo to Commissioner Outlaw demanding to know about the pending discipline and whether the Commissioner planned to take a direct against him. *Id.* ¶¶ 153-156. Plaintiff wrote a fourth memo to Commissioner Outlaw on August 3, 2020 again demanding to know the status of the pending discipline, informing her that he was aware of her intention to take direct action. *Id.* ¶¶ 157-160. He wrote fifth memo to her on August 18, 2020 and a sixth memo on August 27, 2020 with the same demands and claims previously conveyed. *Id.* ¶¶ 163, 167. On September 24, 2020 Plaintiff emailed Commissioner

Outlaw for the seventh time repeating his prior claims and demanded she place him on IOD. *Id.* ¶ 180-185.  On October 6, 2020 Plaintiff wrote his eighth memo. ¶¶ 186-188.

> **t.  Plaintiff was informed that his contact was disruptive and insubordinate.**

On October 9, 2020 Lt. Quinn emailed Plaintiff informing him that it was inappropriate and disruptive for him to continue to contact Commissioner Outlaw and informed him that he would be charged with insubordination if he contacted her again. *Id.* ¶¶ 190-191.

> **u.  Plaintiff believed defendants were conspiring with the DAO against him.**

Plaintiff alleges that all defendants have been apprised of his allegations and request for a criminal investigation into the matter and are a part of the conspiracy with the DAO to silence him. *Id.* ¶ 277.

Based on these facts, Plaintiff has alleged that Defendants violated his rights pursuant to 42 USC §1983 (First Amendment Retaliation), Pennsylvania Whistleblower Law, 42 USC §1983 (Fourteenth Amendment Due Process), and 42 USC §1983 (Conspiracy).

## II.  <u>STANDARD OF REVIEW</u>

A Rule 12(b) (6) Motion to Dismiss tests the sufficiency of the allegations contained in a Complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  When considering such a motion, the Court "accept[s] as true the facts alleged in the Complaint and all reasonable inferences that can be drawn from them.  Dismissal under Rule 12(b)(6) . . . is limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved."  *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990).

This liberal pleading standard, however, does not excuse plaintiffs from adequately stating claims and supporting those claims with facts consistent with those allegations.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Nor must a court credit "a complaint's 'bald

assertions.'" *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citing *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

Although a court must consider the pleadings as true when evaluating a motion to dismiss, a court need not consider a plaintiff's bare legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (holding that all civil complaints must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

As the U.S. Court of Appeals for the Third Circuit has recognized, this plausibility standard requires the district court to conduct a two-part analysis of complaints. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). First, courts should separate "the factual and legal elements of a claim, so that while the district court must 'accept all of the complaint's well-pleaded facts as true,' it may "disregard any legal conclusions.'" *Id*. Second, courts must then determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. (citing *Iqbal*, 129 S. Ct. at 1950).

Plaintiff's Amended Complaint fails to meet the standards set forth in *Iqbal* and *Twombly*. As such, all claims should be dismissed.

### III.   <u>ARGUMENT</u>

Plaintiff's Second Amended Complaint should be dismissed for the following reasons: A) All claims against District Attorney Lawrence Krasner and ADA Trip should be dismissed because they are entitled to absolute immunity from suit for damages for conduct that occurred in the course of their roles as advocates for the state; B) Plaintiff fails to state a First Amendment retaliation claim actionable under § 1983 because his speech was not protected and because the City's interest outweigh Plaintiff's First Amendment rights; C) Plaintiff fails to state a claim under the Pennsylvania Whistleblower Law because there was no wrongdoing; D) Plaintiff Fails

to state a Fourteenth Amendment due process claim actionable under §1983; and E) Plaintiff'

Fails to state an actionable §1983 conspiracy claim.

### A. PLAINTIFF'S CLAIMS AGAINST DISTRICT ATTORNEY LAWRENCE KRASNER AND ASSISTANT DISTRICT ATTORNEY TRIPP SHOULD BE DISMISSED BECAUSE THEY ARE ENTITLED TO ABSOLUTE IMMUNITY.

Defendants decision to initiate a grand jury investigation into Plaintiff's alleged "leak" of

grand jury information to an attorney in the Pownall investigation is a prosecutorial function

protected by absolute immunity.

It is well settled that acts which occur in the course of a prosecutor's role as advocate for

the state are entitled to absolute immunity. *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993).

The scope of immunity extends to actions taken pursuant to the prosecutor's job including

judicial proceedings, including initiating and pursuing charges in a criminal prosecution, and

decisions as to whether and under what conditions a case should be disposed. *Moretti v.*

*Seilhammer*, No. 2:07CV600, 2008 WL 282469, at *1 (W.D. Pa. Jan. 31, 2008), *see also*

*Donahue v. Gavin,* 280 F.3d 371, 377 n. 15 (3d Cir.2002), *Hughes v. Long,* 242 F.3d 121, 125

(3d Cir.2001), *Helstoski v. Goldstein,* 552 F.2d 564, 566 (3d Cir.1977). Thus, under controlling

Third Circuit precedent defendants Krasner and Trip are entitled to absolute immunity with

regard to all of their conduct in connection with charging or prosecuting plaintiff with leaking

grand jury information.

Prosecutorial immunity is absolute without regard to the legal theory under which civil

liability is sought based on the court's determination that  "harassment by unfounded litigation"

could both "cause a deflection of the prosecutor's energies from his [or her] public duties" and

lead him or her to "shade his decisions instead of exercising the independence of judgment

required by his public trust." *Van de Kamp v. Goldstein,* 129 S. Ct. 855 (2009) (citing, *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976)).

Prosecutorial immunity applies even when a plaintiff alleges that prosecutors have "knowing[ly] use[d] false testimony before the grand jury and at trial." *Burns v. Reed*, 500 U.S. 478, 485, 111 S. Ct. 1934, 1938, 114 L. Ed. 2d 547 (1991). For example, in *Rose v. Bartle,* the court determined that the District Attorney and Assistant District Attorney were absolutely immune in civil rights action for allegedly using perjured testimony by witnesses at grand jury proceeding. 871 F.2d 331, 344 (3d Cir. 1989). *See also Michaels v. New Jersey*, 222 F.3d 118, 121-22 (3d Cir. 2000) ("Prosecutors are entitled to absolute immunity for actions as advocates before the grand jury and at trial even if they present unreliable or wholly fictitious proofs"); *Moore v. Middlesex Cnty. Prosecutors Office*, 503 F. App'x 108, 109-10 (3d Cir. 2012) (per curiam) (dismissal of complaint with prejudice based on absolute prosecutorial immunity was proper); *Brawer v. Horowitz,* 535 F.2d 832 (3d Cir.1976) (affirming the district court's dismissal of a complaint alleging that "a federal prosecutor and a cooperating witness had conspired to use perjured testimony . . . in order to convict appellants").

Other circuits have similarly held that prosecutorial immunity attaches to a prosecutor's decisions related to their advocacy pertaining to the grand jury. *See e.g., Heidelberg v. Hammer,* 577 F.2d 429, 432 (7th Cir.1978) ("charges that the prosecutors induced witnesses to commit perjury are barred by the immunity doctrine"); *cf. Lee v. Willins,* 617 F.2d 320, 322 (2d Cir.) (allegations that prosecutor coerced perjured testimony from witnesses barred because injuries alleged by plaintiff, which stem from his multiple trials, are same injuries for which *Imbler* granted immunity), *cert. denied,* 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980).

Here, it is clear that the actions taken by Defendants Krasner and Tripp occurred during the execution of their official duties as a prosecutor. First, ADA Tripp learned that an officer from the OISI Unit had leaked grand jury information to Pownall's attorney.[2] *See Sec. Am. Comp.* ¶¶ 10-14. In keeping with her role as prosecutor, she demanded that Lt. Hendershot ascertain who leaked that information. *Id.* ¶¶13-14. As Plaintiff admitted, **"[I] informed Hendershot that [I] was the person who had spoken with [that] attorney."** *Id.* ¶16. L**t. Hendershot then conveyed that information to ADA Tripp and testified before the grand jury regarding this fact.** *See id.* ¶¶19, 28.  Accepting these allegations as true, it is beyond doubt that the decision to initiate criminal proceedings was made pursuant to their official duties and is entitled to absolute immunity. *See Rose*, 871 F.2d at 345. Plaintiff has offered no factual support to disturb this well settled Third Circuit precedent. Plaintiff's allegation that Defendants Krasner and Tripp "planted evidence" are baseless as he has utterly failed to identify any such evidence. In fact, Plaintiff has done little more spew hundreds of conclusory allegations based on his perceived ideological disagreements with Defendants Krasner and Tripp. The court is not bound to – and should not – accept these conclusory allegations as true. *Iqbal*, 129 S. Ct. at 1949.

Accordingly, all claims against DA Krasner, and ADA Tripp, should be dismissed because they are entitled to absolute immunity.

### B.  PLAINTIFF FAILS TO STATE A FIRST AMENDMENT RETALIATION CLAIM ACTIONABLE UNDER § 1983.
.

Plaintiff's First Amendment Retaliation Claim pursuant to §1983 fails because 1) he has not plead facts sufficient to establish his First Amendment rights were violated; 2) he has not identified any statute, ordinance, regulation, policy, custom, or practice that caused his injury; 3)

---

[2] Loosely interpreted, Plaintiff incorporates similar allegations against DA Krasner and the DAO. These actions are also entitled to prosecutorial immunity. In the interest of judicial economy, Defendants will conduct one analysis.

the claims against Defendants Outlaw, Coulter, Wilson, Naish, Pace, Hendershot, and Quinn in their official capacities fails because it is duplicative of the claims against the City itself; 4) the claims against Defendants Outlaw, Coulter, Naish, Pace, Hendershot, and Quinn in their individual or official capacities fail because Plaintiff has failed to allege personal liability of these defendants.

I. Plaintiff has not plead facts sufficient to establish his First Amendment rights were violated.

Under Third Circuit precedent, a public employee's statement is protected activity when: "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public." *Falco v. Zimmer*, 767 Fed. Appx. 288, 300 (3d Cir. 2019). A public employee does not speak "as [a] citizen[ ]" when he makes a statement "pursuant to [his] official duties." *Id.* To establish a § 1983 First Amendment retaliation claim, a plaintiff must show: (1) the plaintiff participated in activity protected by the First Amendment; (2) the defendant retaliated against the plaintiff in a manner that would be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights;" and (3) a causal nexus existed between the protected activity and the retaliation. *Alers v. City of Philadelphia*, 919 F.Supp.2d 528, 553 (E.D. Pa. 2013) (citing *Thomas v. Independence Twp.,* 463 F.3d 285, 296 (3d Cir.2006).

Loosely interpreted, Plaintiff alleges the following actions were protected speech: 1) his conversation with an attorney regarding the Pownall indictment, and 2) his participation in the January 18, 2020 podcast. Plaintiff believes that he was disciplined in "retaliation" for these actions. Plaintiff's First Amendment Retaliation claim should be dismissed because 1) Plaintiff's

discussion with the attorney is not protected speech. 2) Plaintiff's participation in the podcast is not protected.

i.    <u>Plaintiff's discussion with the attorney is not protected speech.</u>

Contrary to Plaintiff's believe, public employees do not enjoy constitutional carte blanche in all manners of speech. Public servants "by necessity must accept certain limitations on his or her freedom." *Palardy v. Twp. of Mullburn*, 906 F.3d 76, 81 (3d Cir. 2018) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (internal quotation marks omitted)). To that end, public employees only receive First Amendment protection if their interest in speaking on a matter of public concern outweighs the government's interest in promoting workplace efficiency and avoiding disruption. *Id.* The ability to regulate a public employee's speech stems from the "common-sense realization that government offices could not function if every employment decision became a constitutional matter." *O'Connor v. Ortega*, 480 U.S. 709, 722 (1987) (quotation omitted).

Under Third Circuit Precedent, [a] public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public. *Garcetti*, 547 U.S. at 418. Regarding the third prong, the right to speak in the public employment context is "not absolute." *Pappas v. Giuliani*, 290 F.3d 143, 146 (2d Cir. 2002). "At times, the right of free speech conflicts with other important governmental values, posing the problem of which interest should prevail." *Id.* In weighing interests, a plaintiff must demonstrate that his "interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees." *Brennan v. Norton*, 350 F.3d 399, 413

(3d Cir. 2003) (quoting *Baldassare v. N.J.*, 250 F.3d 188, 195 (3d Cir. 2001)). Like the first two inquiries of citizen speech and public concern, the Pickering balancing test is "purely legal and is therefore decided by the court as a question of law." *Id.* Accordingly, even if the employee spoke as a private citizen on a matter of public concern, the government employer can still limit the speech with an adequate justification. The justification must balance the employee's interest in free speech rights with the employer's operational interests to prevent workplace interference or disruption. *See Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 472 (3d Cir. 2015). Examples of "legitimate operational interests" that may justify restraint on an employee's speech include but are not limited to:

- promoting integrity;

- maintaining proper discipline;

- promoting efficiency;

- upholding public trust;

- executing government functions; and

- advancing government policy.

*Garcetti*, 547 U.S. at 418-19; *Pickering*, 391 U.S. at 568.

Further, relevant considerations as to whether the speech disrupts or interferes with the workplace and the employer's legitimate operational interests include whether the speech has or is reasonably predicted to impede the performance of the speaker's duties or interferes with the regular operation of the enterprise. *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). Moreover, the City, acting as a law enforcement agency, has substantially more power to control the speech of law enforcement officers than it does employees of other City agencies.

The Supreme Court has routinely examined the tension between First Amendment rights and government investigatory proceedings. The Court has recognized that states have a compelling interest in restricting speech related to grand jury investigation. *Butterworth v. Smith*, 494 U.S. 624, 632, 110 S. Ct. 1376, 1381, 108 L. Ed. 2d 572 (1990). That is because "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 424, 103 S .Ct. 3133, 3138, 77 L.Ed.2d 743 (1983). Courts have reasoned that grand jury secrecy necessary "to prevent persons subject to indictment or their friends from importuning the grand jurors." *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S., at 219, n. 10, 99 S. Ct., at 1673, n. 10 (quoting *United States v. Rose,* 215 F.2d 617, 628–629 (CA3 1954)); *United States v. Procter & Gamble Co.,* 356 U.S. 677, 681, n. 6, 78 S. Ct. 983, 986, n. 6, 2 L.Ed.2d 1077 (1958) (same). See *Illinois v. Abbott & Associates, Inc.,* 460 U.S. 557, 566–567, n. 11, 103 S. Ct. 1356, 1360–61, n. 11, 75 L.Ed.2d 281 (1983).

The Third Circuit has similarly pointed to the importance of grand jury secrecy. *United States v. Smith*, 123 F.3d 140, 149-150 (3d Cir. 1997) (determining the function of the Grand jury is undermined if matters occurring before grand jury are disclosed.). "Not only are grand jury materials themselves to be kept secret, but so are all **materials that relate to grand jury proceedings.**" *Id.* at 150. (emphasis added). "[A] proceeding is related to or affects a grand jury investigation **if it would reveal matters** actually or **potentially occurring before the grand jury**." *Id.* (emphasis added). *See also* 234 Pa. Code Rule 556.10 ("all evidence. . . and all testimony presented to the grand jury, is subject to grand jury secrecy. . .") The Pennsylvania Supreme Court has similarly referred to grand jury secrecy as "indispensable to the effective functioning of a grand jury's investigation." *In re Investigating Grand Jury of*

*Philadelphia Cty. (Appeal of Philadelphia RustProof Co., Inc.)*, 496 Pa. 452, 457-58, 437 A.2d 1128, 1130 (1981).

Here, the government's interest in promoting workplace efficiency and avoiding disruption outweigh Plaintiff's interests. First, the City has a compelling interesting in ensuring Police officers who are involved in grand jury investigations maintain the secrecy of those investigations. It certainly has responsibility to ensure that its police do not share matters before the grand jury with the subjects of criminal proceedings. In this case, Plaintiff admitted to sharing information with counsel who, at the very least, shared with counsel for the target of the grand jury investigation. *See* Fourth Am. Compl. ¶ 16. Given the state's compelling interest in restricting speech related to grand jury proceedings, the City's interest supersedes Plaintiff's First Amendment right. *See Butterworth*, 494 U.S. at 632–33. Plaintiff's speech – communication with counsel for the target of an ongoing criminal proceeding – is disruptive and continues to interfere with the City's efficient performance of its responsibility as a law enforcement agent. Therefore, it is not protected by the First Amendment and he is not shielded from the initiation of criminal proceedings regarding the same.

Accordingly, Plaintiff's First Amendment claim should be dismissed because Plaintiff's speech is not protected. Even if it were, Defendants have provided adequate justification for restricting Plaintiff's speech.

ii.     Plaintiff's participation in the podcast is not protected.

While analysis of a First Amendment claim is ordinarily "fact intensive,"[3] dismissal is appropriate in this case because the speech contained content that is per se disruptive. Ultimately,

---

[3] See *Muti v. Schmidt*, 96 F. App'x 69, 73-75 (3d Cir.), vacated on other grounds, (Aug. 12, 2004), superseded on other grounds, 118 F. App'x 646 (3d Cir. 2004) (holding that although First Amendment Pickering analysis is "fact

the Plaintiff cannot demonstrate any reasonable right to relief because the City's interest in regulating speech that reveals sensitive information regarding ongoing criminal investigations far outweighs any alleged First Amendment protection.

Here, the City had ample justification for its disciplinary decisions based on a reasonable (and actual) concern that Plaintiff violated the Department's policy be discussing facts relevant to an ongoing criminal investigation and court proceeding. The speech caused actual disruption and continues to cause disruption as long as the Pownall criminal proceedings remain open. Therefore, Plaintiff's speech with regard to the podcast is not protected by the First Amendment and does not shield him discipline regarding the same.

Accordingly, Plaintiff's claim should be dismissed.

II. Plaintiff's 42 U.S.C. 1983 claims against the City of Philadelphia fails because he has not identified a law, policy, custom, or practice that caused his injury.

Plaintiff's claim against the City fails because he has failed to identify a policy, custom, or practice that caused his injury.

Municipalities are generally immune from liability under 42 U.S.C. § 1983 except where the municipality's policy or custom was the moving force behind the constitutional violation. *Watson v. Abington Twp.,* 478 F.3d 144, 155 (3d Cir.2007). It is well established that a plaintiff cannot recover against the Philadelphia Police Department upon a *respondeat superior* theory. For Plaintiff to prevail against the City, she must prove that a constitutionally protected right has been violated, and that the alleged

---

intensive," complaint and documents referenced therein "compelled" conclusion that 12(b)(6)dismissal was warranted).

violation resulted from a municipal "custom" or "policy" of deliberate indifference to the rights of citizens. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694-95 (1978); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990).

*Monell* held that a municipality potentially is liable under 42 U.S.C. § 1983 only if the plaintiff can prove that city employees were executing an officially adopted policy declared by city officials or that the employees were acting pursuant to an officially adopted custom or practice of the municipality. 436 U.S. at 690-91. Plaintiff must allege that the execution of a governmental policy, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicted the injury. *Watson v. Abington Twp.,* 478 F.3d 144, 155 (3d Cir. 2007). A municipal "custom" within the meaning of section 1983 consists of practices engaged in by state officials that are so permanent and well-settled as to constitute a "custom or usage" with the force and effect of law. *Id.* at 155. Proof of a single unconstitutional incident is normally insufficient to impose liability under *Monell. Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824 (1985).

Moreover, municipal liability under section 1983 attaches only where a deliberate choice to follow a course of action is made from among various alternatives. *Berg v. Cnty. of Allegheny,* 219 F.3d 261, 276 (3d Cir. 2000). "If…the policy or custom does not facially violate federal law, causation can be established only by demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Id.*

For the purposes of evaluating municipal liability, a policy exists "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict[,]'" while a custom exists when a plaintiff demonstrates that "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Watson*, at 155 (*quoting Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir.1990)). In either case, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Id*. An official is a decisionmaker where they, under state law, have "final, unreviewable discretion to make a decision or take an action." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1481 (3d Cir.1990) (holding that the Police Commissioner was the decisionmaker for the Philadelphia Police Department).Further, the plaintiff bears the burden of providing evidence that the identified "policy or custom was the proximate cause of the injuries suffered." *Watson*, 478 F.3d at 155.

Setting aside the issue of whether Plaintiff has suffered a federally protected violation, Plaintiff fails to allege any facts from which a fact-finder could conclude that the City has a custom or policy that caused Plaintiffs to suffer a constitutional tort. Specifically, Plaintiff fails to allege any facts sufficient to show the City has a custom or policy of retaliating against individuals who engage in First Amendment protected activities or that it was deliberately regarding the same. Proof of a single unconstitutional incident is insufficient to impose liability under *Monell*. *See* 471 U.S. at 823-824. Therefore, there he has not alleged a policy, municipal practice, or custom that would have the effect of violating his constitutional rights.

Accordingly, Plaintiffs § 1983 claim against the Philadelphia Police Department should be dismissed with prejudice.

> III. Plaintiff's 42 U.S.C. 1983 claims against Defendants Outlaw, Coulter, Wilson, Naish, Pace, Hendershot, and Quinn in their official capacities fails because it is duplicative of the claims against the City itself.

Plaintiff's § 1983 claims against Defendants Outlaw, Coulter, Wilson, Naish, Pace, Hendershot, and Quinn should be dismissed, in their official capacities, fails because a plaintiff cannot sue a municipal employee in his official capacity as well as the municipality in the same suit. *See Hafer v. Melo,* 502 U.S. 21, 25 (1991) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.")(quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)); *see also, Graham,* 473 U.S. at 165 (holding that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell* ... local government units can be sued directly for damages and injunctive or declaratory relief.").

Accordingly, to the extent that Plaintiff bases his §1983 claims on conduct of Defendant Outlaw, Coulter, Wilson, Naish, Pace, Hendershot, and Quinn, in their official capacities, this claim fails as a matter of law and should be dismissed with prejudice.

> IV. Plaintiff's 42 U.S.C. 1983 claims against Defendants Outlaw, Coulter, Naish, Pace, Hendershot, and Quinn in their individual or official capacities fail because Plaintiff has failed to allege personal liability of these defendants.

To hold a supervisor personally liable under § 1983, Plaintiff must show that he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. *See Baker v. Monroe Township,* 50 F.3d 1186, 1190–91 (3d Cir.1995). As an initial matter, Defendants Pace and Quin were not Plaintiff's supervisors or otherwise chain of command. Further, to the extent that

Defendant Pace is mentioned at all, it was because he merely drafted the disciplinary charges. Similarly, Defendant Quinn had absolutely no role in any alleged retaliatory discipline Plaintiff experienced. In fact, none of the other named Defendants, including Defendants Outlaw, Coulter, Naish, or Hendershot personally participated in the alleged retaliatory discipline. So, even in the light most favorable to Plaintiff, Plaintiff has not sufficiently pled claims of retaliation against these defendants.

As such, Plaintiff's 1983 claims against these Defendants Outlaw, Coulter, Naish, Pace, Hendershot, or Quinn, in any capacity, fails.

### C. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE PENNSYLVANIA WHISTLEBLOWER LAW.

The Pennsylvania Whistleblower Law ("PWL") prohibits employers from retaliating regarding an employee's compensation, terms, conditions, location or privileges of employment for engaging in certain protected activities in the workplace. 43 P.S. § 1423(a). As a threshold matter, to establish a PWL claim, an employee must allege that he engaged in protected activity prior to the alleged retaliation—that he "ma[de] a good faith report. . . to the employer or appropriate authority [of] an instance of wrongdoing or waste." 43 P.S. § 1423. "Wrongdoing" is narrowly defined by the statute. *See Drumm v. Triangle Tech, Inc.,* No. 15-854, 2016 WL 1384886, at *8 (M.D. Pa. Apr. 7, 2016) (stating Pennsylvania WBL "narrow[ly] defin[es] . . . 'waste' and 'wrongdoing'."); *Sukenik v. Twp. of Elizabeth*, 131 A.3d 550, 555 (Pa. Commw. 2016) (similar). "Wrongdoing" is defined as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 P.S. § 1422. To establish a PWL claim, Plaintiff must show that the employer actually violated the law. *Kimes v. University of Scranton*, 126 F. Supp. 3d 477, 505 (M.D. Pa.

2015). Reports of conduct the employee subjectively believes is wrong is not considered a report of "wrongdoing" for the purposes of a whistleblower claim. *Riggio v. Burns*, 711 A.2d 497, 501-503 (Pa. Super. 1998).

Here, aside from Plaintiff's shear speculation, Plaintiff has plead no facts to show that the City, particularly the District Attorney's Office, engaged in wrongdoing. As an initial matter, Plaintiff admits that he "never participated in the grand jury against Pownall" and was not involved in the investigation after his August 2018 conversation with ADA Tripp. *See* ECF 2:19-cv-04616-HB Doc. 3; Pl. 2nd Am. Compl. ¶ 25. Plaintiff's ex parte review of the grand jury presentment his speculation that ADA Tripp knowingly presented false, misleading, or perjured testimony to the grand jury in order to obtain the indictment are insufficient to prove wrongdoing. *See* Pl. 2nd Am. Compl. ¶¶ 9-11. Plaintiff's allegations are far too speculative and attenuated to comply with the pleading requirement of *Iqbal.* Therefore, his claim fails as a matter of law. Moreover, for the reasons previously stated, DA Krasner and ADA Tripp's are entitled to absolute immunity regarding decisions made during the course of their advocacy on behalf of the state.

Accordingly, this claim should be dismissed because Plaintiff has not plead facts to suggest that Defendants committed wrongdoing as defined in the statute.

### D. PLAINTIFF FAILS TO STATE A FOURTEENTH AMENDMENT DUE PROCESS CLAIM ACTIONABLE UNDER §1983.

Plaintiff has not pled fact sufficient to show that his rights to due process relating to his criminal and disciplinary investigation have been violated. Moreover, for the reasons previously stated, Plaintiff has not alleged an actionable claim under §1983.

I. Plaintiff's due process rights were not violated as it relates to the criminal proceedings initiated against him.

To sustain a substantive due process claim, a plaintiff must show that the particular interest in question is protected by the Fourteenth Amendment and that the government's deprivation of that interest "shocks the conscience." *Vargas v. City of Philadelphia*, 783 F.3d 962, 973 (3d Cir. 2015) (citing *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.,* 272 F.3d 168, 172 (3d Cir.2001)). The "shocks-the-conscience" test applies regardless of the theory upon which the claim is premised. *Id.* Under third circuit precedent, a civil plaintiff may allege a due process claim under the fourteenth amendment if he can demonstrate that he was convicted based on allegedly fabricated evidence so significant that it could have affected the outcome of the criminal case. *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014). Mere negligence is not enough to shock the conscience, as required to support a substantive due process claim under the Fourteenth Amendment. *Vargas,* 783 F.3d 962 at 973.

Here, Plaintiff's claims fail for several reasons. First, Plaintiff has not averred facts sufficient to show that he had an interest that was protected by the fourteenth amendment. As he admits, the criminal proceedings initiated against him were withdrawn. As such he suffered no loss of liberty. Moreover, to the extent that Plaintiff suggests that the initiation of criminal proceedings against him was improper, Plaintiff has not alleged facts sufficient to show that the initiation of these proceedings "shocked the conscious." To the contrary, Plaintiff admitted that he contacted the lawyer with whom prosecutors allege received leaked grand jury information. Therefore, it is beyond doubt that the prosecutorial decision to initiate criminal proceedings was lawful and proper.

Accordingly this claim should be dismissed.

II.   Plaintiff's due process rights were not violated as it relates to the disciplinary charges initiated against him.

The Third Circuit has established that public employment is not a fundamental interest under the Constitution and thus does not enjoy substantive due process protection. *See Foxworth v. Pennsylvania State Police,* 402 F. Supp. 2d 523, 539 (E.D. Pa. 2005), *aff'd,* 228 F. App'x 151 (3d Cir. 2007). Rather, it is a "wholly state-created contract right," which "bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution." *Nicholas v. Pennsylvania State Univ.,* 227 F.3d 133, 142-143 (3d Cir. 2000). Because Plaintiff's interest in his employment is not a fundamental right protected by substantive due process, any claim for substantive due process violations must necessarily fail.

On the other hand, in order to make out a procedural due process claim, a public employee must show that is entitled to notice and opportunity to be heard prior to being deprived of his or her property interest in employment. *Cipriani v. Lycoming Cty. Hous. Auth.,* 177 F. Supp. 2d 303, 317 (M.D. Pa. 2001) (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).  Here, there is nothing in the complaint that shows he was refused proper notice or an opportunity to be heard before the City issued discipline. Therefore this claim must fail.

### E.  PLAINTIFF FAILS TO STATE AN ACTIONABLE §1983 CONSPIRACY CLAIM.

To advance a § 1983 conspiracy claim, a plaintiff must aver facts sufficient to show: (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. *Piskanin v. Hammer*, No. CIV.A. 04-1321, 2005 WL 3071760, at *4 (E.D. Pa. Nov. 14, 2005). In short, Plaintiff must  show "that two or more conspirators reached an agreement to deprive [plaintiff] of a Constitutional right under color of law." *Parkway Garage Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993). A claim for conspiracy pursuant to Section 1983 must specifically allege the "combination,

agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." *Marchese v. Umstead,* 110 F.Supp.2d 361, 371 (E.D.Pa.2000). In consideration of a motion to dismiss, only particularized allegations of conspiracy, such as those addressing the period of the conspiracy, the object of the conspiracy, and the alleged conspirators' actions are deemed sufficient to state a claim. *Id*

Here, despite his repeated use of the term "conspiracy", Plaintiff fails to set forth any specific facts to show an agreement between the Defendants regarding any actions taken. As such, Plaintiff's fails to meet the standard set forth in *Iqbal.* Therefore, this claim should be dismissed.

## VI.    <u>CONCLUSION</u>

Defendants City of Philadelphia, Commissioner Danielle Outlaw, Deputy Commissioner Christine Coulter, District Attorney Lawrence Krasner, Assistant District Attorney Tracy Tripp, Chief Inspector Dennis Wilson, Deputy Commissioner Benjamin Naish, Inspector DF Pace, Lieutenant Jason Hendershot, and Lieutenant Patrick Quinn respectfully requests that this Honorable Court grant this Motion and dismiss Plaintiff's claims.

Respectfully Submitted,

CITY OF PHILADELPHIA
LAW DEPARTMENT

Date: <u>March 22, 2021</u>          BY: <u>  s/ Kia Ghee        </u>
Kia Ghee, Esq.
Deputy City Solicitor
Pa. Attorney ID No. 321462
City of Philadelphia Law Dept.
1515 Arch St., 16th Fl.
Philadelphia, PA 19102
(215) 683-5079
Kia.Ghee@phila.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DERRICK JACOBS,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 19-4616 |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| Defendants. | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date below, the foregoing Motion to Dismiss and Memorandum of Law has been filed electronically and is available for viewing and downloading. The foregoing Motion to Dismiss has also been mailed directly to Plaintiff, electronically and through US mail.

Respectfully Submitted,

CITY OF PHILADELPHIA
LAW DEPARTMENT

Date: <u>March 22, 2021</u>     BY: <u>  s/ Kia Ghee     </u>
                                                 Kia Ghee, Esq.
                                                 Deputy City Solicitor