IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DERRICK JACOBS                      :          CIVIL ACTION
                                    :
     v.                             :
                                    :
CITY OF PHILADELPHIA, et al.        :          NO. 19-4616

MEMORANDUM

Bartle, J.                                     June 16, 2021

          Philadelphia Police Detective Derrick Jacobs brings
this civil rights action pro se under 42 U.S.C. § 1983 against
the City of Philadelphia ("the City"), Philadelphia District
Attorney Lawrence Krasner, and Philadelphia Assistant District
Attorney Tracy Tripp, as well as against Philadelphia Police
Department ("PPD") Commissioner Danielle Outlaw, Deputy Police
Commissioners Christine Coulter and Benjamin Naish, Chief
Inspector Dennis Wilson, Inspector DF Pace, and Lieutenants
Jason Hendershot and Patrick Quinn (collectively, the "PPD
defendants").[1]  He sues the individual defendants in both their
individual and official capacities.  Plaintiff also has a
supplemental claim under the Pennsylvania Whistleblower Law.
This lawsuit stems from a public disagreement Jacobs had over
the Philadelphia District Attorney's prosecution of former

_____

1.   In his earlier complaints, Jacobs named the Philadelphia
District Attorney's Office as a defendant.  He does not do so in
his fourth amended complaint.

Philadelphia Police Officer Ryan Pownall for criminal homicide in connection with the fatal shooting of suspect David Jones in June 2017.

Before the court is the motion of the defendants to dismiss the federal claims in the fourth amended complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I

When Jacobs commenced this action, he brought only state claims for employment discrimination in violation of the Pennsylvania Whistleblower Law and for official oppression.  He named as defendants the City, the Philadelphia District Attorney's Office, District Attorney Krasner, and Assistant District Attorney Tripp.  These defendants moved to dismiss the complaint under Rule 12(b)(1) for lack of subject matter jurisdiction.  In response Jacobs filed an amended complaint. He asserted additional claims for "Deprivation of Rights under the color of law," "Malicious Prosecution," "Conspiracy," "Defamation," and "Discrimination" under 42 U.S.C. § 1983.

The defendants moved to dismiss the amended complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The court dismissed Jacobs' § 1983 claims and his state claim for official oppression.  See Jacobs v. City of Phila., et al., Civil Action No. 19-4616, 2020 WL

-2-

1822230 (E.D. Pa. Apr. 9, 2020).  Though not specifically stated in the amended complaint, Jacobs also pleaded facts relevant to a claim for retaliation in violation of his right to free speech under the First Amendment.  The court discussed whether Jacobs stated a claim for First Amendment retaliation under Rule 12(b)(6) in light of the less stringent pleading standard applied to pro se litigants.  See Haines v. Kerner, 404 U.S. 519 (1972).  It ultimately dismissed the First Amendment retaliation claim because the speech Jacobs alleged in the amended complaint occurred during the course of his official duties as a public employee and was not protected by the First Amendment.  See Palardy v. Twp. of Millburn, 906 F.3d 76, 81 (3d Cir. 2018).  In coming to that decision, the court refused to consider additional facts Jacobs asserted in his response to defendants' motion to dismiss because they were not pleaded in the amended complaint.  The court declined to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Jacobs' remaining claim of employment discrimination under the Pennsylvania Whistleblower Law.

Our Court of Appeals reversed dismissal of the First Amendment retaliation claim.  Jacobs v. City of Phila., 836 F. App'x 120 (3d Cir. 2020).  It held that this court did not provide Jacobs an adequate opportunity to amend the complaint to

plead facts in support of the retaliation claim.[2]  Jacobs stated in response to defendants' motion to dismiss that he "spoke to an Attorney in the Attorney General department about Tripp." The Court of Appeals determined that Jacobs should have been given an opportunity to amend the complaint to plead this and other facts in support of the claim for First Amendment retaliation.[3]  It vacated this court's dismissal of Jacobs' § 1983 claim for First Amendment retaliation and the related conspiracy claim, as well as the claim for employment discrimination in violation of the Pennsylvania Whistleblower Law over which we declined to exercise jurisdiction.  The Court of Appeals affirmed this court's dismissal of all other claims. It remanded the action and instructed this court to determine whether granting Jacobs leave further to amend the complaint would be inequitable or futile.

On January 25, 2021, Jacobs filed another amended complaint in this court.  He pleaded new facts to support the claim for First Amendment retaliation against District Attorney

_____

2.   Before dismissing a civil rights complaint for failure to state a claim, the district court must offer the plaintiff an opportunity to amend, even where he has not requested to do so. Mullin v. Balicki, 875 F.3d 140, 151 (3d Cir. 2017).

3.   The Court of Appeals appears to have exercised its equitable power to expand on appeal the factual record as it existed before this court.  See Falco v. Zimmer, 767 F. App'x 288, 297 (3d Cir. 2019); Jacobs, 836 F. App'x at 122 (3d Cir. 2020).

-4-

Krasner and Assistant District Attorney Tripp.  He also pleaded a new § 1983 claim against these two defendants for violating his right to due process under the Fourteenth Amendment.  Jacobs added seven new defendants — the PPD defendants — and pleaded a First Amendment retaliation and a Fourteenth Amendment due process claim against them.[4]  Finally, Jacobs pleaded his claim under the Pennsylvania Whistleblower Law against all the defendants.  Without leave and in violation of Rule 15(a) of the Federal Rules of Civil Procedure, Jacobs attempted to amend the allegations in the complaint again the following day.[5]

On February 10, 2021, all the defendants, including the PPD defendants, moved to dismiss the third amended complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[6]  On February 25, 2021, again in violation of Rule 15(a), Jacobs filed a document which restated each allegation set out in the third amended complaint and added new

---

4.   While Jacobs also names the City of Philadelphia as a defendant, he makes no specific allegations against it for First Amendment retaliation or for violation of due process under the Fourteenth Amendment.

5.   The complaint, entitled "SECOND AMENDMENT," was the third time Jacobs amended the complaint.  It is referred to hereafter as the third amended complaint.

6.   Jacobs did not serve the third amended complaint or any of the amended complaints he filed thereafter.  The PPD defendants did not raise personal jurisdiction or insufficient process as a defense in their motion to dismiss the third amended complaint.  Consequently, these grounds for dismissal are waived.  See Fed. R. Civ. P. 12(h).

factual allegations which appear to be in response to defendants' motion to dismiss.[7]  The court, however, granted Jacobs leave to amend after the fact as a result of his pro se status and denied defendants' motion to dismiss as moot.  It ordered Jacobs not to file another amended pleading and to respond to any motion of the defendants to dismiss the fourth amended complaint.  Nonetheless, after the defendants moved to dismiss the fourth amended complaint, Jacobs, in violation of the court's order, filed another document in which he added new factual allegations and set out a new claim for "First Amendment Malicious Prosecution."[8]

The court will not grant leave for Jacobs to amend the complaint for a fifth time as further leave to amend would be prejudicial to defendants' continued effort to defend against this action.  See Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006).  Therefore, the new factual allegations and claim for "First Amendment Malicious Prosecution" will be disregarded.  The court will treat the fourth amended complaint as the operative pleading.

---

7.  This document, entitled "SECOND AMENDMENT MTD RESPONS [sic]," was the fourth time Jacobs amended the factual allegations in the complaint.  It is referred to hereafter as the fourth amended complaint.

8.  This document, entitled "AMENDMENT MTD RESPONS [sic]," was the fifth and final time Jacobs attempted to amend the factual allegations in the complaint.

In summary, Jacobs claims in the fourth amended complaint that District Attorney Krasner and Assistant District Attorney Tripp initiated a retaliatory criminal prosecution against him in violation of his right to freedom of speech under the First Amendment and his right to due process under the Fourteenth Amendment.  He claims the PPD defendants brought police disciplinary charges against him also in violation of his right to freedom of speech under the First Amendment and his right to due process under the Fourteenth Amendment.  Jacobs further avers that all the defendants conspired to violate these rights.  Finally, Jacobs alleges the PPD defendants violated the Pennsylvania Whistleblower Law, which prohibits public employers from discriminating against employees for reporting government wrongdoing.  See 43 P.S. § 1423.

Jacobs also names the City of Philadelphia as a defendant, although nowhere in the fourth amended complaint does he make any specific allegations with respect to any of these claims against it.

II

When reviewing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [the court] construes them in a light most favorable to the non-movant."  Tatis v. Allied

-7-

Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting

Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n. 27

(3d Cir. 2010)).  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A mere formulaic

recitation of the elements of a cause of action will not do.

Twombly, 550 U.S. at 555. The factual allegations in the

complaint must be sufficient to raise a right to relief beyond

mere speculation such that the court may "draw the reasonable

inference that the defendant is liable for the misconduct

alleged."  Ashcroft, 556 U.S. at 678 (citing Twombly, 550 U.S.

at 556).

III

        The following facts alleged in the fourth amended

complaint are taken as true for present purposes.

        Jacobs has been employed by the PPD since 1996.  As a

veteran detective with the PPD, he was assigned to the

Officer-Involved Shooting Investigation ("OISI") Unit where he

interviewed most of the fact witnesses surrounding officer

Pownall's shooting in June 2017 of David Jones.  Jacobs

concluded Pownall should not be prosecuted for shooting Jones.

In November 2017, Jacobs was told by someone at the Pennsylvania

-8-

Attorney General's Office that no prosecution would be pursued against Pownall.

Krasner was elected Philadelphia District Attorney in November 2017 and assumed office in January 2018.  Sometime thereafter, he took over the investigation into the Jones shooting from the Pennsylvania Attorney General's Office.  He assigned Assistant District Attorney Tripp to seek a grand jury indictment against Pownall for shooting Jones.  In September 2018, District Attorney Krasner and Assistant District Attorney Tripp announced at a press conference that a grand jury had indicted Pownall for criminal homicide.

Jacobs, who was not asked to participate in the grand jury proceeding against Pownall, read the grand jury presentment after the indictment was announced.  Based on his investigation of the Pownall shooting, as compared to the contents of the grand jury presentment, Jacobs determined that Assistant District Attorney Tripp must have "knowingly and intentionally presented false and misleading perjured testimony to the grand jury."

Jacobs alleges that the following series of events occurred thereafter:

> 12. On September 27, 2018 Jacobs spoke with an attorney to explore his option of reporting Tripp's corruption and criminality.

13. On September 27, 2018 Tripp learned of Jacobs' consultation with the attorney.

14. On September 27, 2018 Tripp contacted Jacobs' Commanding Officer, Lieutenant Jason Hendershot . . . and threatened to prosecute the entire OISI Unit unless Hendershot ascertained who spoke with the attorney and what was said.

15. On September 27, 2018 Hendershot contacted Jacobs and informed Jacobs of what Tripp had said.

16. Jacobs informed Hendershot he was the person who spoke with the attorney.

17. Jacobs informed Hendershot the discussion was regarding Tripp's criminality . . . and how to expose it.

18. Jacobs informed Hendershot Tripp should be prosecuted and is a 'criminal.' Tripp has indicted an innocent person on murder charges with lies.

19. Hendershot relayed his conversation with Jacobs to Tripp.

20. On October 16, 2018 Jacobs first learned of a fabricated criminal investigation being initiated by Tripp against him for 'leaking' grand jury information regarding the Officer Pownall investigation.

21. This fabricated criminal investigation had nothing to do with 'leaking' grand jury information.

22. This fabricated criminal investigation was ONLY implemented because Tripp learned that Jacobs was exposing her corruption.

*          *          *

25. Tripp knew Jacobs NEVER participated in the grand jury against Officer Pownall. Tripp also knew Jacobs never 'leaked' grand jury information.

26. Tripp considered Jacobs speaking with an
attorney, attempting to expose her criminal
acts as leaking grand jury information.

27. Tripp used the illegally obtained
conversation Jacobs had with the attorney in
the prosecution of Jacobs.[9]

28. Tripp had Jacobs' Commanding Officer,
Hendershot provide testimony to the grand
jury regarding Jacobs' conversation with the
attorney in the retaliatory prosecution of
Jacobs.

On May 21, 2019, after Lt. Hendershot testified before

the grand jury, Assistant District Attorney Tripp told him that

the charges against Jacobs would be dropped because transcripts

were lost.  She also informed Lt. Hendershot that the judge

presiding over the grand jury investigation into Jacobs was

going to "admonish [him] in open court . . . for 'optics.'"  On

August 1, 2019, she told Jacobs that the investigation against

him was going to be dropped.

On October 4, 2019, Jacobs filed this lawsuit.  As

discussed above, he initially brought only state claims against

the City, the Philadelphia District Attorney's Office, District

Attorney Krasner, and Assistant District Attorney Tripp for

violating the Pennsylvania Whistleblower law and for official

oppression.  That same day he wrote a memorandum to PPD Deputy

---

9.   The fourth amended complaint does not identify this
attorney or specify whether he or she was Jacobs' attorney.  Nor
can it be inferred from the factual allegations contained
therein that Jacobs maintained an attorney-client relationship
with the attorney.

Commissioner Christine Coulter in which he requested protection
for reporting Assistant District Attorney Tripp under the
Pennsylvania Whistleblower Law.  After Deputy Commissioner
Coulter did not respond, Jacobs contacted her a second and third
time on October 6 and November 8, 2019.  He filed his first
amended complaint on November 8, 2019.

On November 18, 2019, a political news website,
Bigtrial.net, published an article entitled Detective: D.A.
Tampered with Witness in Officer Involved Shooting.  Jacobs
contacted Deputy Commissioner Coulter a fourth time the day the
article was published.  On November 26, 2019, Chief Inspector
Dennis Wilson ordered Jacobs to meet with him.  Wilson told
Jacobs that Deputy Commissioner Coulter would not meet because
she did not want to be a witness in this litigation.  He
suggested instead that Jacobs speak with the Pennsylvania
Attorney General's Office about his allegations against the
District Attorney's Office.

Jacobs told Chief Inspector Wilson about the article
on Bigtrial.net.  While Jacobs provides no detail in the fourth
amended complaint of what is in the article, he forewarned
Wilson at the meeting on November 26, 2019 that "Bigtrial.net
would not be the only media outlet [he] would use to expose the
corruption of the DAO."  Other media outlets, including the

-12-

Philadelphia Inquirer, had contacted Jacobs.  Wilson responded
to Jacobs he had no issue with Jacobs speaking to the press.

On November 27, 2019, someone at the Pennsylvania
Attorney General's Office informed Jacobs that it could not
investigate the Philadelphia District Attorney's Office for
presenting false testimony to the Pownall grand jury.  The
Pennsylvania Attorney General's Office participated in the
Pownall investigation, which was a conflict of interest.  Jacobs
asked Lt. Hendershot to relay the conflict of interest to Chief
Inspector Wilson.  He requested that Wilson contact the United
States Attorney's Office about the District Attorney's Office
and the Pownall grand jury investigation.  Thereafter, Jacobs
asked Lt. Hendershot daily about whether Wilson contacted the
United States Attorney's Office.  Jacobs asserts that defendant
Deputy Commissioner Benjamin Naish was in the chain of command
as an Inspector directly above Lt. Hendershot at the time.[10]

On January 18, 2020, Jacobs participated in the law
enforcement podcast Search Warrant, Clear and Present Danger.
He discussed the Pownall prosecution, the corruption of District
Attorney Krasner and his office related to the prosecution, and
the alleged retaliatory criminal prosecution against him for
leaking grand jury information.  On January 27, 2020,

---

10.  This is the only relevant allegation Jacobs pleads against
Deputy Commissioner Naish in the fourth amended complaint.

-13-

Lt. Hendershot provided Jacobs "with a memorandum notifying him of a disciplinary interview" for his "participation in the podcast."  Lt. Hendershot, on the order of Chief Inspector Wilson, conducted the interview of Jacobs on January 30, 2020 in the presence of Jacobs' representative from the Fraternal Order of Police ("FOP").

On February 10, 2020, Jacobs sent a memorandum to Danielle Outlaw who had been recently appointed police commissioner.  He asked to speak with her about corruption and criminal activity in the PPD.  She did not respond.  On February 11, 20202, Lt. Hendershot presented Jacobs with disciplinary charges for "Conduct Unbecoming Unspecified" and "Neglect of Duty."  Inspector DF Pace "approved the disciplinary action."  According to Jacobs, the charges "were authored by Defendant [Inspector DF] Pace per Defendant Hendershot" and "actually state the reason for the charges were [sic] because Jacobs spoke out against the DAO and Krasner during podcast."[11] Jacobs states a disciplinary charge of conduct unbecoming a police officer unspecified "carries a penalty of termination."

Jacobs took vacation days on February 13, 2020 and February 14, 2020.  On February 13, 2020, he received "credible information [Commissioner] Outlaw, will take Commissioner's

---

11.  The full charges are not in the record.

Direct Action ("CDA") against [him]" which would "result in arbitrary discipline" upon his return to work.[12]  Jacobs continued to take vacation "to avoid discipline until February 25, 2020, when he start[ed] using his sick time while waiting for [sic] response from Commissioner Outlaw."  On March 2, 2020, Jacobs asked Lt. Hendershot if he could be placed on leave for "Injury on Duty" in connection with the stress caused by "the department [] trying to fire him."  Lt. Hendershot denied Jacobs' request on March 3, 2020.  Jacobs continued to take sick leave.

On March 6, 2020, Jacobs attempted to contact Commissioner Outlaw again to ask "for a for a criminal investigation for the acts committed against [him] for being a Whistleblower."  Lt. Hendershot contacted Jacobs on March 12, 2020 and asked him "to report to Internal Affairs ("IA") because of the memorandum."  Jacobs refused to report to IA because he was advised by an FOP lawyer that the interview "was a setup" to allow him to be terminated immediately.

Jacobs attempted to contact Commissioner Outlaw again on May 18, 2020, August 3, 2020, August 18, 2020, and August 25,

---

12.  The Philadelphia Police Commissioner has the authority to take "Commissioner's Direct Action" against a police department employee for disciplinary violations.  When this authority is exercised, the employee "is not guaranteed a hearing in front of the Police Board of Inquiry," even when pleading "not guilty" to the violation charged.  Phila. Police Dep't Directive 8.6.4.A.

2020.  He repeatedly requested to speak with her about the criminal activity of the other PPD defendants.  He asked whether she intended to take Commissioner's Direct Action against him and whether he could be placed on leave for being injured on duty so as not to continue using his sick leave.

Commissioner Outlaw responded via e-mail on August 26, 2020.  She informed Jacobs that because this litigation was pending she could not comment on his allegations against the other defendants.  She directed Jacobs to speak with the Philadelphia City Solicitor's Office.  Commissioner Outlaw did not reply as to Jacobs' request to be placed on leave because of an injury on duty.  The City Solicitor's Office, which represents the defendants in this action, told Jacobs it was involved in this litigation only.  The office was not investigating the criminal allegations Jacobs made against other members of the PPD.

On September 24, 2020, Jacobs sent an e-mail in which he informed Commissioner Outlaw and other PPD command staff that he was exhausting his sick leave while waiting for the criminal actions of certain members of the PPD to be investigated.  He claims in the fourth amended complaint that the exhaustion of his sick leave amounts to constructive discharge.

Jacobs sent a final communication to Commissioner Outlaw on October 6, 2020.  He again requested an investigation

-16-

into the criminal activity of the other defendants.  He received
an e-mail from Lt. Patrick Quinn in the Commissioner's office
stating that his repeated attempts to contact Commissioner
Outlaw were inappropriate and disruptive.  Lt. Quinn "suggested"
that Jacobs would be charged with insubordination if he
continued to contact Commissioner Outlaw.

        The current status of Jacobs' employment with the PPD
is not in the record.

                                IV

        We first address Jacobs' claims that District Attorney
Krasner and Assistant District Attorney Tripp violated his
First Amendment right to free speech and his Fourteenth
Amendment right to due process by initiating a retaliatory
criminal prosecution against him for leaking information from
the Pownall grand jury investigation.

        Prosecutors are absolutely immune from suits for
damages arising from conduct "intimately associated with the
judicial phase of the criminal process."  Imbler v. Pachtman,
424 U.S. 409, 430 (1976).  This absolute immunity extends to
constitutional suits which arise from the initiation of a
criminal prosecution as well as the presentation of the
government's case during a judicial proceeding.  Id. at 431.

        Jacobs states he spoke with an attorney about the
Pownall grand jury investigation to determine his options to

                              -17-

report ADA Tripp for presenting perjured testimony to the
Pownall grand jury.[13]   Jacobs also states that Assistant District
Attorney Tripp learned of the conversation and that he was its
source.   Thereafter, she initiated a grand jury proceeding to
determine whether Jacobs leaked information from the Pownall
grand jury investigation.   Lt. Hendershot testified before the
grand jury about Jacobs' conversation with the attorney as it
was relayed to him by Jacobs.   Jacobs appears to claim that
Assistant District Attorney Tripp acted at the behest of
District Attorney Krasner.   All these activities are conduct for
which District Attorney Krasner and Assistant District Attorney
Tripp are protected by the doctrine of absolutely immunity.
See Andros v. Gross, 294 F. App'x 731, 734 (3d Cir. 2008);
see also Kulwicki v. Dawson, 969 F.2d 1454, 1465 (3d Cir. 1992).

Accordingly, the court will grant the motion of
District Attorney Lawrence Krasner and Assistant District
Attorney Tracy Tripp to dismiss Jacobs' First Amendment and
Fourteenth Amendment claims for failure to state a claim upon
which relief can be granted under Rule 12(b)(6).

V

Jacobs claims First Amendment retaliation against the
PPD defendants under § 1983.   He alleges the PPD defendants

---

13.  No inference can be drawn from the complaint that Jacobs
had any special relationship with the attorney.

initiated a police disciplinary action in retaliation for his

participation in the podcast on January 18, 2020 in which, among

other things, he accused District Attorney Krasner and his office

of corruption in the prosecution of officer Pownall.

Section 1983 provides a remedy for the violation of

underlying constitutional rights.  Kneipp v. Tedder, 95 F.3d

1199, 1204 (3d Cir. 1996).  It provides:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State . . . subjects, or causes to be
> subjected, any citizen of the United States
> . . . to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for
> redress, . . .

Generally, to prevail on a § 1983 claim for First Amendment

retaliation, a plaintiff must prove:  (1) that he engaged in a

protected activity, (2) that the defendant's retaliatory action is

sufficient to deter a person of ordinary firmness from exercising

his or her constitutional rights, and (3) that there is a causal

link between the constitutionally protected activity and the

retaliatory action.  Garcetti v. Ceballos, 547 U.S. 410 (2006).

Jacobs is a detective employed by the PPD.  "When a

citizen enters government service, the citizen by necessity must

accept certain limitations on his or her freedom."  Garcetti,

547 U.S. at 418.  "A government entity has broader discretion to

restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." Id. "At the same time, a citizen who works for the government is nonetheless a citizen." Id. at 419. "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." Id. (emphasis added). As the Supreme Court stated in Pickering, "[t]he problem in any case is to arrive at a balance between the interests of [the public employee], as a citizen, in commenting upon matters of public concern and the interest of the [government employer] in promoting the efficiency of the public services it performs through its employees." Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968) (emphasis added).

Two main questions must be answered to determine whether the statement of a public employee is protected by the First Amendment. Garcetti, 547 U.S. at 418. It must first be determined whether the employee "spoke as a citizen on a matter of public concern." Id. If the public employee did not speak as a citizen on a matter of public concern, no First Amendment cause of action arises from an employer's reaction. Id. Significantly, the Supreme Court declared that public employees do not speak "as

citizens" when making statements "pursuant to their official
duties." Id. at 421.

If an employee can establish he or she spoke as a
citizen on a matter of public concern, then the "possibility of a
First Amendment claim arises" and it must then be determined
"whether the relevant government entity had an adequate
justification for treating the employee differently from any other
member of the general public." Garcetti, 547 U.S. at 418.
Employer restrictions on statements made as a citizen about a
matter of public concern "must be directed at speech that has some
potential to affect the entity's operations." Id. (emphasis
added). It is the burden of the employee to establish that his or
her speech outweighs the employer's countervailing interest in
promoting the efficiency of the public services it provides through
its employees. Brennan v. Norton, 350 F.3d 399, 413 (3d Cir.
2003). This is a purely legal inquiry. Id.

The court first turns to whether Jacobs' statements
during the podcast were made "as a citizen on a matter of public
concern." Garcetti, 547 U.S. at 418. Jacobs states in the
fourth amended complaint that during the podcast he "spoke out
against the DAO and Krasner" and discussed "the retaliatory
actions committed by the Philadelphia District Attorney's Office
against him for reporting corruption." He asserts further that
the disciplinary charges he received for his participation in

-21-

the podcast "actually state the reason for the charges were [sic]
because [he] spoke out against the DAO and Krasner during
podcast."

The circumstances in <u>Garcetti</u>, which the trial court
resolved on summary judgment, are materially similar to those
Jacobs alleges in the fourth amended complaint. <u>See</u> <u>Garcetti</u>, 547
U.S. at 413-15. Plaintiff Richard Ceballos was a deputy district
attorney for the Los Angeles County District Attorney's Office
where he served as a calendar deputy. A defense attorney in a
pending criminal case told him that there were inaccuracies in an
affidavit used to obtain a search warrant. Ceballos determined
after investigating that the affidavit did contain misstatements.
He shared the results of his investigation in a disposition
memorandum to his supervisor. His supervisor decided to proceed
with a prosecution for which the warrant was critical. Ceballos
was called by the defense attorney as a witness during a hearing on
a motion challenging the warrant. The trial judge denied the
motion. Ceballos claimed that afterward the Los Angeles County
District Attorney's Office took a series of retaliatory employment
actions which violated his rights under the First and Fourteenth
Amendments.

The Supreme Court explained that "the fact that Ceballos
spoke as a prosecutor fulfilling a responsibility to advise his
supervisor about how best to proceed with a pending case

-22-

distinguishes Ceballos' case from those in which the First

Amendment provides protection against discipline." <u>Garcetti</u>, 547

U.S. at 421.  The Court reasoned:

> Ceballos wrote his disposition memo because
> that is part of what he, as a calendar deputy,
> was employed to do. . . . The significant
> point is that the memo was written pursuant to
> Ceballos' official duties.  Restricting speech
> that owes its existence to a public employee's
> professional responsibilities does not
> infringe any liberties the employee might have
> enjoyed as a private citizen.

<u>Id.</u>  The Supreme Court, as noted above, ruled that "when public

employees make statements pursuant to their official duties, <u>the</u>

<u>employees are not speaking as citizens</u> for First Amendment

purposes, and the Constitution does not insulate their

communications from employer discipline." <u>Id.</u>  (emphasis added).

It held Ceballos' disposition memorandum to his supervisor was not

protected by the First Amendment.

　　　　Jacobs, as a PPD detective assigned to the OISI Unit,

was tasked with investigating the Jones shooting.  He was

responsible for, among other things, gathering evidence and guiding

the District Attorney's Office in determining whether and against

whom a criminal prosecution should be pursued.  After interviewing

witnesses, Jacobs concluded Pownall should not be prosecuted.

Jacobs' input about whether Pownall should be prosecuted and about

evidence to be presented to the grand jury were part of his job as

a detective in the PPD's OISI Unit.  Jacobs' expressions during the

podcast, like those of Ceballos, arise out of his job responsibilities — in this case as a detective in the OISI Unit.

Jacobs' statements during the podcast were made pursuant to his official duties, not spoken as a citizen on a matter of public concern.  See Garcetti, 547 U.S. at 419.  Allowing a detective to speak out publicly about his disagreement with the District Attorney's Office about a criminal prosecution and to assert that the District Attorney is corrupt undermines discipline and has the potential for causing chaos in law enforcement.  Jacobs has not engaged in protected speech under the First Amendment.

Even if Jacobs' statements during the podcast were made as a citizen on a matter of public concern, the PPD's interest in promoting the work of the OISI Unit is significant.  Members of the unit perform the very sensitive task of investigating fellow policemen for the shooting of private citizens.  The PPD must be able to promote the effective and efficient performance of this responsibility, which requires the utmost discretion and professionalism.  The investigation and criminal prosecution of officer Pownall illuminates this interest.  The Pownall case, which has yet to conclude, continues to be a topic of public controversy.

Under these circumstances as outlined in the fourth amended complaint the PPD has a compelling interest in promoting the efficient operation of the OISI Unit and preventing insubordination.  That interest outweighs Jacobs' interest in

-24-

discussing in a podcast his opinion about the mishandling of the Pownall prosecution by and the corruption of Krasner and the District Attorney's Office.  See Pickering, 391 U.S. at 568. Again, Jacobs speech is not protected, and the PPD has a right to take action against him.  See Garcetti, 547 U.S. at 418.

For these reasons, the court will grant the motion of the PPD defendants to dismiss Jacobs' First Amendment retaliation claim.

VI

Jacobs claims the PPD defendants violated his right to due process by initiating police disciplinary charges against him in retaliation for his participation in the podcast.  Jacobs appears to assert that because a charge of conduct unbecoming a police officer unspecified carries a penalty of termination and Commissioner Outlaw intends to take Commissioner's Direct Action to bypass a Police Board of Inquiry hearing, he has been forced to exhaust his sick leave in order to avoid immediate termination and the loss of his pension without due process.

When a plaintiff claims a state actor has deprived him of a property interest in violation of the due process clause of the Fourteenth Amendment, the court must first determine whether the interest is "fundamental" under the United States Constitution. Nicholas v. Pa. State Univ., 227 F.3d 133, 139-43 (3d Cir. 2000). If the property interest is fundamental, it falls within the

-25-

substantive protection of the due process clause of Fourteenth

Amendment.  <u>See</u> <u>id.</u>  A fundamental property interest protected by

substantive due process may not be taken away by a state actor "for

reasons that are arbitrary, irrational, or tainted by improper

motive."  <u>Id.</u> at 139.  This is the case irrespective of the

adequacy of the procedures used to do so.  <u>Id.</u> at 142.

If the property "interest is not fundamental, however,

the governmental action is entirely outside the ambit of

substantive due process and will be upheld so long as the state

satisfies the requirements of <u>procedural</u> due process."  <u>Nicholas</u>,

227 F.3d at 142 (emphasis added).  Procedural due process generally

requires that a public employee be provided notice and an

opportunity to be heard before adverse employment action is taken.

<u>Alvin v. Suzuki</u>, 227 F.3d 107, 121 (3d Cir. 2000).

Our Court of Appeals held in <u>Nicholas</u> that public

employment "is a wholly state-created contract right" which "bears

little resemblance to other rights and property interests" afforded

substantive due process protection.  227 F.3d at 143.  Therefore,

we turn to whether the PPD defendants' conduct, as alleged in the

fourth amended complaint, violates the procedural due process

requirements of the Fourteenth Amendment.

Jacobs received notice of the disciplinary action

against him on January 27, 2020 when Lt. Henderson provided him

"with a memorandum notifying him of a disciplinary interview" for

-26-

his "participation in the podcast."  Lt. Hendershot provided Jacobs

notice of the resulting police disciplinary charges after

conducting the interview of Jacobs in the presence of Jacobs' FOP

representative.  Thereafter, Jacobs began taking leave "to avoid

discipline."  There is no reference in the fourth amended complaint

as to when or whether a hearing will take place.  Nor is there an

allegation that Jacobs has in fact been discharged.

Jacobs' receipt of "credible information" that

Commissioner Outlaw intends to take Commissioner's Direct Action

and deprive him of a hearing is not dispositive.  Nor is it

controlling whether Jacobs might later be terminated in connection

with the disciplinary action.[14]  The PPD defendants cannot be held

liable simply because Jacobs refuses by not returning to work to

avail himself of procedural protections.  See Alvin, 227 F.3d

at 116.  A due process violation is "not complete unless and until

the State fails to provide due process."  Id.; see also Bailey v.

City of Phila., 374 F. App'x 305, 307 (3d Cir. 2010).

Moreover, procedural due process does not raise an

"impenetrable barrier to the taking of a person's possessions, or

---

14.  As noted above, Jacobs asserts that the charge of conduct
unbecoming unspecified "carries" a penalty of termination.  The
recommended penalty for this charge ranges broadly from
"Reprimand to Dismissal."  See Art. I ("Conduct Unbecoming"),
Phila. Police Dep't Disciplinary Code.

liberty, or life." <u>Carey v. Piphus</u>, 435 U.S. 247, 259 (1978)

(internal quotations omitted).  As explained by the Supreme Court:

> Procedural due process rules are meant to
> protect persons not from the deprivation, but
> from the mistaken or unjustified deprivation
> of life, liberty, or property. Thus, in
> deciding what process constitutionally is due
> in various contexts, the Court repeatedly has
> emphasized that procedural due process rules
> are shaped by the risk of error inherent in
> the truth-finding process. . . . Such rules
> minimize substantively unfair or mistaken
> deprivations of life, liberty, or property by
> enabling persons to contest the basis upon
> which a State proposes to deprive them of
> protected interests.

<u>Id.</u>  (internal quotations and citations omitted).  Jacobs admits

the conduct for which the PPD defendants brought disciplinary

charges against him.

For these reasons, the court will grant the motion of

the PPD defendants to dismiss Jacobs' due process claim under the

Fourteenth Amendment for failure to state a claim under Rule

12(b)(6).

VII

Jacobs also sues the City of Philadelphia and all

individual defendants in their official and individual capacities

under 42 U.S.C. § 1983.  Because "official-capacity suits generally

represent only another way of pleading an action against an entity

of which an officer is an agent," Jacobs' claims against the

individual defendants in their official capacity are treated as

claims against the City.  See Hafer v. Melo, 502 U.S. 21, 25 (1991) (internal quotations omitted).

As the Supreme Court explained in Monell, a government entity may only be held liable for unconstitutional conduct when the injury alleged results from the execution of a government policy or custom.  Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 694-95 (1978).  More precisely, a government entity may be liable for constitutional injuries when they result from the implementation or execution of an official policy, regulation, or decision adopted by it or informally adopted by custom.  McTernan v. City of York, 564 F.3d 636, 657-58 (3d Cir. 2009).  A plaintiff can establish an official policy by showing that a decisionmaker, who possessed final policymaking authority, issued an official municipal proclamation, policy, or edict.  McTernan, 564 F.3d at 658.  Alternatively, a plaintiff can establish a custom by showing that a course of conduct is so permanent and well-settled as to virtually constitute law.  See id.

Jacobs does not allege the existence of a municipal proclamation, policy, or edict which caused the constitutional injuries he claims.  Further, he pleaded no facts in the fourth amended complaint which establish the existence of a permanent, well-settled custom which caused his injuries.  Dismissal for failure to state a claim for municipal liability is appropriate where a complaint fails to either connect a policy or custom to a

municipal decisionmaker or to show prior notice through a pattern
of similar unconstitutional conduct.  Wood v. Williams, 568 F.App'x
100, 105-06 (3d Cir. 2014).  Jacobs has failed to allege a
plausible claim for municipal liability.

Accordingly, the motion of the City of Philadelphia and
the individual defendants in their official capacities to dismiss
all claims against them under § 1983 for failure to state a claim
under Rule 12(b)(6) will be granted.

VIII

Jacobs brings claims for conspiracy against all the
defendants.  To succeed on a claim for conspiracy, a claimant
must prove that persons acting under the color of state law
conspired to deprive him of a federally protected right.
Ridgewood Bd. of Educ. v. N.E., et al., 172 F.3d 238, 254
(3d Cir. 1999).  A claimant cannot succeed on a claim for
conspiracy if the underlying civil rights claims are dismissed.
See Ashton v. City of Uniontown, 459 F. App'x 185, 191
(3d Cir. 2012).

The court will be dismissing Jacobs' First Amendment
and Fourteenth Amendment claims against all the defendants.  No
underlying civil rights claim against these defendants remains.
Therefore, the court will also grant the motion of all the
defendants to dismiss Jacobs' conspiracy claim.

IX

Now that all federal claims will be dismissed, the court declines under 28 U.S.C. § 1367(c)(3) to exercise supplemental jurisdiction over Jacobs' remaining state claim against the PPD defendants for violating the Pennsylvania Whistleblower Law, 43 P.S. § 1423.  This claim will be dismissed without prejudice.