# THE UNITED STATES DISTRICT COURT IN THE EASTERN DISTRICT OF PENNSYLVANIA

CIVIL ACTION FILE NUMBER    19-CV-4616

**COURT ORDERED AMENDED COMPLAINT
DATED JUNE 30, 2022
PA WHISTLEBLOWER ONLY (43 P.S. 1421-1428)**

Derrick Jacobs

**Plaintiff**
Pro se
v.
City of Philadelphia, et al.

Philadelphia Police Commissioner Danielle Outlaw in her official and individual capacity, Deputy Police Commissioner Christine Coulter in her official and individual capacity, District Attorney Lawrence Krasner in his official and individual capacity, Assistant District Attorney Tracy Tripp in her official and individual capacity, Patricia Cummings in her official and individual capacity, Kia Ghee in her official and individual capacity, Deputy Police Commissioner (now Chief Inspector) Dennis Wilson in his official and individual capacity, Inspector Benjamin Naish (now Deputy Police Commissioner) in his official and individual capacity, Chief Inspector Frank Vanore in his official and individual capacity, Inspector Francis Healy in his official and individual capacity, Inspector DF Pace in his Official and individual capacity, Lieutenant Jason Hendershot in his official and individual capacity and Lieutenant Patrick Quinn in his official and individual capacity.

**Defendants**

---

## NATURE OF ACTION

COMES NOW, Plaintiff (pro se) Derrick Jacobs ("Jacobs") to file his Complaint from violations of Section 1983 of the Civil Rights Act of 1871 42 U.S.C. § 1983 ("Section 1983").

## INTRODUCTION

Jacobs is a citizen of the United States of America, residing in the State of Pennsylvania. Jacobs deserves the right to Life, Liberty, and the Pursuit of Happiness, which is his unalienable Right (Declaration of Independence, paragraph two). All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. NO STATE shall make or enforce ANY law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person

1

of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the EQUAL protection of the laws (Amendment 14).

Jacobs observed corruption committed by Assistant District Attorney, Tracy Tripp of the Philadelphia District Attorney's Office, headed by Lawrence Krasner.

Jacobs followed Philadelphia Police Department policy and reported the corruption to then Philadelphia Police Commissioner, Christine Coulter and his immediate supervisor Lieutenant Jason Hendershot.

Jacobs also attempted to expose the corruption but was retaliated against and threatened with criminal prosecution and arrest by the Philadelphia District Attorney's Office.

Jacobs filed a Federal Civil Action seeking damages.

As a result the Philadelphia Police Department, headed by Christine Coulter and Danielle Outlaw conspired with the Philadelphia District Attorney's Office to remove Jacobs from his current assignment and initiated a disciplinary action against him which includes suspension and termination.

Defendants' proceeded in an arbitrary and capricious manner against Jacobs; violating the United States Constitution, federal, and state laws, The Mission Statement and Directives of the Philadelphia Police Department.

## JURISDICTION AND VENUE

This action arises under 42 U.S.C. 1983 of the United States Constitution.

This Court has supplementary jurisdiction under 28 U.S.C. § 1367 of the United States Constitution.

This Court has jurisdiction because this action arises under the United States Constitution and laws of the United States.

## PARTIES

Plaintiff, Derrick Jacobs is an adult male individual. Jacobs **WAS** employed as a Philadelphia Police Detective. He began his career as a Philadelphia Police Officer in January 1996 and was promoted to Police Detective in December 1998. Jacobs is a decorated Officer and Detective. Jacobs has received many honors, certifications, and assignments. Jacobs was vetted and received the highest security clearances for the Papal visit and Democratic National Convention. Jacobs also received certification and performed duties as a hostage negotiator. While still a rookie, Jacobs was nominated for Officer of the Year (did not win). Over the years, Jacobs' assignments included Divisional Detective, Homicide Detective, and an original member

of the Officer Involved Shooting Investigation ("OISI") Unit, where Jacobs was the only African American Detective. Jacobs brings this complaint as a private citizen.

Defendant City of Philadelphia ("City") is a municipality in the Commonwealth of Pennsylvania.

The City owns, operates, manages, directs, and controls the Philadelphia Police Department ("PPD") and Philadelphia District Attorney's Office ("DAO") which employs the individual defendants named herein who ALL at relevant times were employed by the City, PPD and the DAO, acting under color of state law, and operating pursuant to official policies, customs or practices of the City, PPD, and DAO.

At all relevant times, the City acted or failed to act through its agents, servants and employees, including the individual Defendants named herein, each of whom were acting within the course and scope of their employment.

Defendant, Lawrence Krasner ("Krasner") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant, Tracy Tripp ("Tripp") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant, Patricia Cummings ("Cummings") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant, Kia Ghee ("Ghee") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant, Danielle Outlaw ("Outlaw") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant, Christine Coulter ("Coulter") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant, Dennis Wilson ("Wilson") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant, Francis Healy ("Healy") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant, Benjamin Naish ("Naish") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant Frank Vanore ("Vanore") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant, DF Pace ("Pace") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant, Jason Hendershot ("Hendershot") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant, Patrick Quinn ("Quinn") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendants, City, Krasner, Tripp, Cummings, Outlaw, Coulter, Wilson, Naish, Pace, Ghee, Hendershot, Vanore, Healy and Quinn are hereafter individually and collectively referred to as "Defendant(s)."

Defendants were "employers" and Plaintiff was "employee" within the meaning of applicable law.

Defendants are being sued in the individual and official capacities.

## FACTS

Jacobs is a United States citizen.

The Declaration of Independence allows Jacobs to Life, Liberty, and the Pursuit of Happiness.

Jacobs was denied ALL by the Defendants. Defendants also engaged and conspired in a course of retaliation against Jacobs for exercising his Constitutional Rights.

The Defendants' conduct halted Jacobs' pursuit of happiness, trampled on his liberty, and caused irreparable damage to his life.

Jacobs as a United States citizen is entitled to EQUAL JUSTICE UNDER THE LAW (Civil and Criminal).

**JUSTICE is the GUARDIAN of LIBERTY.**

1.      On June 8, 2017, Jacobs was involved in an Officer Involved Shooting ("OIS") investigation, involving white Police Officer Ryan Pownall ("Officer Pownall") and a black male, named David Jones.

2.      The investigation was initially conducted by the Philadelphia Police Department's Officer Involved Shooting Investigation ("OISI") Unit an later in conjunction with the Pennsylvania Attorney General's Office ("AGO").

3.      After interviewing a civilian witness with Officer Pownall, the Plaintiff was contacted by self proclaimed Black Lives Matter member, Christopher Norris. Mr. Norris contacted the Plaintiff, claiming former Police Commissioner Richard Ross directed him to the Plaintiff. When the Plaintiff informed Mr. Norris that was false, Mr. Norris came clean and informed the Plaintiff he received the Plaintiff's information from the civilian witness. Mr. Norris claimed he worked for "WURD" radio. The Plaintiff informed Mr. Norris he could not provide any information regarding the investigation and the conversation ended amicably.

4.      In November 2017 after a meeting with civilian and police witnesses, Jacobs was informed by the Pennsylvania Attorney General's Office ("AGO") the matter would be adjudicated and no charges would be brought against Officer Pownall.

5.      After the meeting Earl Pittman aka Asa Khalif, self proclaimed member of Black Lives Matter was arrested inside of the location where the meeting with the witness, AGO, and Plaintiff occurred. Khalif was in the company of Isaac Gardner aka Ikey Raw, protesting the results of the previous meeting, known only to the civilian witness, AG and Law Enforcement personnel.

6.      After the election of Lawrence Krasner ("Krasner") as Philadelphia District Attorney, he commandeered the Officer Pownall investigation from the AGO prior to their adjudication being made official and public.

7.      Upon information and/or belief District Attorney Lawrence Krasner conspired with members (Asa Khalif, Christopher Norris, and Isaac Gardner) of Black Lives Matter ("BLM") who are known associates of Krasner to manipulate the testimony of civilian witnesses in an effort to indict Officer Pownall.

8.      Krasner assigned Tripp to the fabricated prosecution of Officer Pownall.

9.      Tripp initiated an indicting grand jury against Pownall.

10. In August of 2018 the Plaintiff was contacted by Tripp to go over his potential grand jury testimony (Plaintiff never spoke to Tripp after this conversation and NEVER participated in the grand jury against Pownall, other than being sworn in).

11. After the phone conversation and before the grand jury presentment, Tripp and Cummings held a conference with the Plaintiff's Philadelphia Police Department ("PPD") superiors at the District Attorney's Office ("DAO"). During the conference Tripp and Cummings wanted the Plaintiff and his partner (Detective William Sierra) removed from the OISI unit. The Plaintiff's superiors disagreed with the removal, indicating they were the best two detectives in the unit and were personally recruited for their investigative acumen. The Plaintiff's superiors inquired as to why Tripp and Cummings wanted the Plaintiff and his partner removed and did not receive a response. After not receiving a response, the Plaintiff's superiors informed Tripp and Cummings the Plaintiff and his partner were the only two minorities in the OISI unit, to which they replied "we know, that's why we want them removed". The Plaintiff superiors disagreed to which Tripp replied, "we want them gone anyway," Cummings concurred, stating "yes, we don't care." The statements made by Tripp and Cummings were communicated to then Deputy Commissioner Dennis Wilson who seemed stunned and informed the Plaintiff's superiors he would inform then Police Commissioner, Richard Ross.

12. On September 1, 2018 Asa Khalif tweeted, according to several of his "sources" former Officer Pownall will turn himself in on Tuesday (September 4, 2018). It's about time he was arrested.

13. On September 4, 2018 (TUESDAY) Krasner and Tripp held a press conference to announce the findings of the grand jury ("Presentment").

14. The findings indicted Officer Pownall on a charge of murder.

15. Between September 4th and 27th of 2018, the Plaintiff reviewed the grand jury presentment pertaining to Officer Pownall.

16. After review of the presentment, Jacobs learned Tripp had committed illegal acts.

17. Jacobs learned that Tripp knowingly and intentionally presented false, misleading, and perjured testimony to the grand jury, which resulted in the indictment of Officer Pownall.

18. The Plaintiff informed his Commanding Officer, Lieutenant Jason Hendershot (who illegally swore out the arrest affidavit, knowing the information contained in the presentment was false) who acknowledged the Plaintiff's statements but did nothing.

19. On September 27, 2018 Jacobs spoke with an attorney to explore his options of reporting Tripp's corruption and criminality.

20. On September 27, 2018 Tripp learned of Jacobs' consultation with the attorney.

21. On September 27, 2018 Tripp contacted Jacobs' Commanding Officer of OISI, Lieutenant Jason Hendershot ("Hendershot") and threatened to prosecute the entire OISI Unit unless Hendershot ascertained who spoke with the attorney and what was said.

22. On September 27, 2018 Hendershot contacted Jacobs and informed Jacobs of what Tripp had said.

23. Jacobs informed Hendershot he was the person who spoke with the attorney.

24. Jacobs informed Hendershot the discussion was regarding Tripp's criminality (a conversation that Jacobs has had with Hendershot on multiple occasions) and how to expose it.

25. Jacobs informed Hendershot Tripp should be prosecuted and is a "criminal." Tripp has indicted an innocent person on murder charges with lies.

26. Hendershot relayed his conversation with Jacobs to Tripp.

27. Based upon the information received from Hendershot, Tripp initiated a criminal investigation into the Plaintiff and Detective Sierra.

28. On October 16, 2018 Jacobs first learned of a fabricated criminal investigation being initiated by Tripp against him for "leaking" grand jury information regarding the Officer Pownall investigation.

29. This fabricated criminal investigation had nothing to do with "leaking" grand jury information. **If Jacobs' informed Hendershot he was the person obtaining advice to explore the avenue to expose Tripp's criminality and corruption, then why did Tripp include Detective Sierra in the investigation (was it Krasner, Tripp, and Cummings zest and zeal to also remove Sierra)?**

30. This fabricated criminal investigation was ONLY implemented because Tripp learned that Jacobs' was exposing her corruption.

31. Tripp, once again, knew she was lying to the Court.

32. Tripp knew Jacobs and Sierra NEVER participated in the grand jury against Officer Pownall. Tripp also knew Jacobs and Sierra never "leaked" any grand jury information.

33. The Plaintiff's Commanding Officer, Hendershot provided testimony to the grand jury regarding Jacobs'

34. On October 16, 2018, ADA Tripp initiated a fabricated criminal investigation against Jacobs and Sierra (because of their race) by presenting false information to the Court, stating Jacobs and Sierra leaked information from the Officer Pownall grand jury. ADA Tripp controlled the grand jury and knew that Jacobs and Sierra did not participate in the grand jury in any manner.

35. These diabolical criminal acts were done intentionally; violating the Plaintiff's rights and was **ONLY** done to secure his silence from exposing political corruption under the threat of criminal prosecution and the termination of his law enforcement career.

36. These illicit actions against Jacobs clearly violated his Constitutional Rights and were in retaliation for attempting to expose corruption.

37. On November 9, 2018 Common Pleas Court Judge Robert Coleman, ("Judge Coleman") informed Jacobs that he had 5th Amendment issues, based upon whatever fabricated information Tripp provided.

38. The Plaintiff, fearing an illegal arrest and the lost of everything he had worked for, remained silent for almost a year (August 1, 2019) when Tripp informed the Plaintiff she was withdrawing the charges against him.

39. The Plaintiff's superiors who refused to remove the Plaintiff were transferred and replaced with Chief Inspector Frank Vanore and Inspector Benjamin Naish (one was subsequently illegally arrested).

40. On May 21, 2019 ADA Tripp informed Lt. Hendershot, that she would be withdrawing the case against Jacobs and Sierra in front of Judge Coleman because the Court transcripts were lost. **Does anyone believe this?**

41. There are no transcripts. There were never any transcripts relating to Jacobs "leaking" grand jury information.

42. On July 3, 2019 Lt. Hendershot informed Jacobs that he had a conversation with Tripp. Tripp informed Lt. Hendershot that she had a "conversation" (ex parte violation) with Judge Coleman and a meeting was scheduled for July 8, 2019, where the charges would be withdrawn because of the "lost transcripts."

43. Tripp informed Lt. Hendershot that Jacobs would not have to attend. ADA Tripp told Lt. Hendershot not to inform Jacobs' counsel of the meeting. ADA Tripp informed Lt. Hendershot that Judge Coleman would allegedly admonish Jacobs in open court at a later date in the presence of his attorney, for "optics."

44. On July 25, 2019 Lt. Hendershot informed Jacobs that ADA Tripp has withdrawn prosecution of Jacobs and would provide the court transcripts and declination memorandum at a later date. Jacobs' counsel does not know of withdrawal, according to ADA Tripp.

45. On August 1, 2019 Tripp informed Jacobs that she has withdrawn prosecution against him. Tripp also tells Jacobs that she does not believe that "Greg" (Jacobs' attorney Greg Pagano) would mind her speaking with Jacobs without him being present.

46. On October 4, 2019 Jacobs filed this pro se Federal Civil Rights lawsuit (19-cv-4616) against the City of Philadelphia, District Attorney Lawrence Krasner and Assistant District Attorney, Tracy Tripp.

47. On October 4, 2019 Jacobs directly alerted then Philadelphia Police Commissioner Christine Coulter, since the Plaintiff's Commanding Officer (Hendershot) failed to follow Departmental policy.

48. Jacobs authored a memorandum titled **"Retaliation for being a Whistleblower."**

49. Jacobs informed Defendant Coulter that after attempting to report criminal activity by the DAO, Jacobs was threatened with arrest and prosecution unless he remained silent to the corruption.

50. Jacobs asked Defendant Coulter for **"Whistleblower"** protections.

51. The memorandum asked Defendant Coulter to forward the memorandum to US Attorney William McSwain and Pennsylvania Attorney General Josh Shapiro for Federal and State criminal violations.

52. On October 6, 2019 Jacobs resubmitted the memorandum to Defendant Coulter after not receiving a response.

53. Jacobs informed Defendant Coulter it was an **"Urgent Matter."**

54. On October 7, 2019 Defendant Coulter replied to Jacobs' email stating ONLY "Received Sir."

55. On October 17, 2019, the Plaintiff served the lawsuit on Defendants Krasner and Tripp.

56. On October 18, 2019, Krasner's Philadelphia Inquirer publicist, Chris Palmer contacted the Plaintiff to obtain information for Krasner regarding the lawsuit.

57. On November 8, 2019 Jacobs authored another memorandum to Defendant Coulter titled "Retaliation for being a **Whistleblower** and Deprivation of Rights under the Color of Law."

58. Jacobs closed the memorandum asking for her prompt attention to this urgent matter.

59. On or before November 15, 2019 Inspector Francis Healy initiated an investigation into Jacobs on behalf of Krasner and Tripp, with his assistant Pamela Bacon and Hendershot.

60. On November 18, 2019 Jacobs authored another memorandum to Defendant Coulter titled "Urgent Matter Regarding Detective Derrick Jacobs #9116."

61. Krasner's "handpicked" Chief Inspector Frank Vanore "disapproved" the memorandum.

62. Deputy Police Commissioner Dennis Wilson also disapproved the memorandum, noting the "PPD is not the proper authority to investigate the "victimization" by the DA's office."

63. On November 18, 2019 an article was published on Bigtrial.net referencing Jacobs' civil complaint. The title of the article was "Detective: D.A. Tampered With Witness In Officer Involved Shooting."

64. **On November 18, 2019** Defendant Hendershot informed Jacobs, he was taking Jacobs' police vehicle because Jacobs is not available when he visits his family who lives three hours away from Philadelphia.

65. Jacobs informed Hendershot that is not true.

66. Jacobs informed Hendershot he had always been available and returned for ALL assignments.

67. Jacobs informed Hendershot if he wanted to take the vehicle he could, knowing it was in retaliation for the filed Federal Civil Complaint.

68. On November 26, 2019 Jacobs Commanding Officer, Defendant Hendershot, contacted Jacobs and informed him that then Deputy Police Commissioner Dennis Wilson wanted to speak with Jacobs in the Deputy's Office immediately.

69. Jacobs informed Hendershot that he was in the area and would be there shortly.

70. Jacobs immediately reported to the Deputy's Office.

71. Jacobs arrived at DC Wilson's Office in less than fifteen minutes. Jacobs was instructed to the waiting area for Deputy Wilson.

72. While waiting for DC Wilson, Jacobs observed Inspector Francis Healy ("Healy"), who is the legal counsel for the Philadelphia Police Department.

73. Healy looked in Jacobs' direction. He immediately and abruptly (almost like a cartoon character), reversed direction, avoiding Jacobs.

74. Moments later, Jacobs was escorted into DC Wilson's Office.

75. DC Wilson commended Jacobs on his fight against the corruption at the DAO. DC Wilson also acknowledged the corruption at the DAO.

76. Wilson then informed Jacobs he was not approving Jacobs request to speak with Police Commissioner Coulter because they did not want to be witnesses in Jacobs' civil litigation.

77. Wilson asked Jacobs to speak with the PA Attorney General's Office ("AGO") regarding the criminal activity and proceeding with the prosecution of the DAO.

78. Jacobs informed Wilson he believes there's a conflict of interest with the AGO because of Attorney General Christopher Phillips' involvement in the Pownall (Officer Involved Shooting) investigation.

79. Jacobs and Deputy Wilson continued the conversation.

80. Jacobs told Deputy Wilson anytime an allegation is made against a Philadelphia Police Officer; action is taken immediately against the Officer by Krasner and the DAO. Jacobs stated, in this case there is obvious corruption on the part of the DAO and the Department is doing nothing about it.

81. Jacobs' informed Deputy Wilson of the bigtrial.net article.

82. Deputy Wilson acknowledged he knew of the article.

83. Jacobs also informed Deputy Wilson bigtrial.net would not be the only media outlet that Jacobs would use to expose the corruption at the DAO.

84. Jacobs informed Deputy Wilson that Chris Palmer of the Philadelphia Inquirer and other media outlets have contacted Jacobs regarding his litigation.

85. Deputy Wilson replied he did not have any issue with Jacobs speaking with the media.

86. Deputy Wilson, once again informed Jacobs he would be returning Jacobs' memorandum to the Commissioner back "down the chain" with the disapproval.

87. Deputy Wilson's only request was that Jacobs contact the AGO regarding the investigation and let him know the results.

88. Deputy Wilson also acknowledged that Jacobs was being **"victimized"** by the DAO.

89. The conversation was a cordial, law enforcement concentrated conversation. The conversation discussed the issues at hand and ended pleasantly, in Jacobs' opinion.

90. On November 27, 2019 Jacobs contacted the AGO. The AGO informed Jacobs due to Christopher Phillips involvement in the Pownall investigation, there would be a conflict of interest in this matter.

91. Jacobs immediately informed Hendershot and asked Hendershot to contact Deputy Wilson with this information.

92. Jacobs wanted Deputy Wilson to contact the US Attorney so a criminal investigation could be started; honoring the conversation of the previous day.

93. Jacobs asked Hendershot on numerous occasions, almost daily, if Deputy Wilson had responded. Hendershot's responses were always that Deputy Wilson had not responded. Defendants Naish and Vanore who are in the chain of command as Chief Inspector and Inspector directly above Hendershot also did not follow Departmental policies and protections afforded Jacobs.

94. On January 14, 2020 Jacobs, once again, asked Hendershot if he has received any information from Deputy Wilson about referring the complaint to US Attorney, William McSwain. Hendershot replied he has tried on multiple occasions and has not received a response from Deputy Wilson.

95. Jacobs informed Hendershot he is trying to respect the conversation in Deputy Wilson's Office.

96. On January 18, 2020 Jacobs participated in law enforcement podcast Search Warrant, Clear and Present Danger.

97. During the podcast Jacobs discussed his litigation against the City of Philadelphia and the District Attorney's Office.

98. Upon information and belief this incensed the egomaniacal Krasner, who immediately ordered Wilson to take disciplinary action against the Plaintiff.

99. On January 22, 2020 Hendershot informed Jacobs; Defendant Wilson wants a disciplinary investigation started immediately against Jacobs for his participation in the Search Warrant podcast.

100. Jacobs informed Hendershot; they are coming after his job and will charge him with Conduct Unbecoming.

101. Hendershot replied, you didn't do anything wrong. The most they could give you is a counseling memo.

102. Jacobs informed Hendershot the Deputy Commissioner does not start a disciplinary investigation against you for a counseling memo.

103. Jacobs tells Hendershot they are letting criminals at the DAO run free while they retaliate against me for exposing it.

104. This was the first information received from Defendant Wilson after Jacobs' multiple attempts to confirm if Defendant Wilson had referred Jacobs' complaint of corruption to the US Attorney for a criminal investigation per the discussion and agreement in Wilson's office on November 26, 2019.

105. Defendant Wilson was informed by multiple parties the disciplinary actions he initiated against Jacobs would be deemed and viewed as retaliatory and possibly illegal.

106. Defendant Wilson was advised by the parties not to pursue this disciplinary action against Jacobs.

107. On January 27, 2020 Defendant Hendershot provided Jacobs with a memorandum notifying him of a disciplinary interview.

108. The disciplinary interview was for **Jacobs' participation in the podcast**.

109. On January 27, 2020 Jacobs responded to Defendant Wilson's betrayal and retaliatory actions.

110. Jacobs authored a memorandum to Defendant Wilson titled "Search Warrant Podcast regarding criminal activity by the Philadelphia District Attorney's Office."

111. Jacobs informed Defendant Wilson he was retaliating against Jacobs for reporting corruption.

112. Jacobs informed Defendant Wilson this action is in violation of Jacobs' Constitutional Rights.

113. Jacobs informed Defendant Wilson he does not know if he is acting alone in this retaliatory act or in concert with his conspirators.

114. On January 30, 2020 Hendershot conducts disciplinary interview with Jacobs. FOP representative, Scott Bradley was present.

115. Prior to the interview, Hendershot contacted (in Jacobs' presence) Chief Inspector Frank Vanore. Hendershot asked Vanore if he could get Wilson not to proceed with the disciplinary action against Jacobs.

116. Hendershot informed Jacobs Vanore told Wilson the actions are retaliatory but Wilson insisted on the disciplinary action.

117. On January 30, 2020 Jacobs' authors a memorandum to Defendant Coulter titled "RELEASE OF INFORMATION TO ALL MEDIA SOURCES REGARDING CORRUPTION."

118. On February 10, 2020 Jacobs authored a memorandum to NEW Philadelphia Police Commissioner Danielle Outlaw. **This was Commissioner Outlaw's FIRST official day as Philadelphia Police Commissioner.**

119. The subject line of the memorandum is "Urgent Matter Regarding Detective Derrick Jacobs #9116."

120. Jacobs requested an opportunity to discuss corruption and criminal activity with Defendant Outlaw.

121. On February 10, 2020 retaliatory disciplinary charges (75-18s) were authored by Defendant Pace per Defendant Hendershot against Jacobs for his participation in the podcast.

122. On February 11, 2020 Hendershot calls Jacobs into his office.

123. Hendershot tells Jacobs "you were right and I was wrong. It's a worst-case scenario. They are charging you with **Conduct Unbecoming Unspecified**."

124. Defendant Hendershot presented the disciplinary charges to Jacobs.

125. The action resulted in Jacobs being charged with **CONDUCT UNBECOMING AN OFFICER** and Neglect of Duty. These charges come with a penalty of **TERMINATION**.

126. Defendant Wilson ordered the disciplinary action. Defendant Hendershot witnessed the disciplinary action against Jacobs. Defendant Pace approved the disciplinary action against Jacobs.

127. Jacobs charged with **"CONDUCT UNBECOMING."**

128. Jacobs reporting of corruption is grounds for termination.

129. No one besides Jacobs was interviewed prior to the charges.

130. This was done to **constructively discharge** Jacobs from the Philadelphia Police Department.

131. The initiator(s), author(s) and/or presenter(s) should be investigated for Title 18 violations, which Jacobs intends to pursue.

132. On February 13, 2020 Jacobs receives credible information new Philadelphia Police Commissioner, Danielle Outlaw, will take Commissioner's Direct Action ("CDA") against Jacobs. The action will result in arbitrary discipline against Jacobs when he returns to work (Jacobs was on vacation February 13 and 14).