133. Jacobs takes vacation time to avoid discipline until February 25, 2020, then started using his sick time while waiting for response from Commissioner Outlaw.

134. On March 2, 2020 Jacobs asked Hendershot to be carried in Injured On Duty ("IOD") status because of the actions of the Philadelphia Police Department ("PPD").

135. Jacobs informs Hendershot he should not be using his own sick time because of the corruption that has now infiltrated the PPD against him.

136. On March 3, 2020 Hendershot asks Jacobs to contact headquarters.

137. Hendershot informs Jacobs he cannot be carried IOD and would have to continue to use HIS SICK TIME.

138. Hendershot informed Jacobs he had spoke with the Commanding Officer (did not provide name) of the Safety Office, who stated you cannot be carried IOD for job related stress.

139. Jacobs disagreed and informed Hendershot the STRESS is because the Department is trying to fire him, not because of something that happened off-duty.

140. On March 4, 2020 Hendershot contacts Jacobs and informed him he will be taking his police vehicle (Jacobs can no longer respond to Officer Involved Shootings).

141. On March 5, 2020 Hendershot takes Jacobs' unmarked police vehicle.

142. On March 6, 2020 Jacobs authored a memorandum to Defendant Outlaw.

143. The subject line of the memorandum is "Departmental and Criminal actions by Deputy Police Commissioner Christine Coulter, Deputy Police Commissioner Dennis Wilson and Inspector DF Pace."

144. Jacobs referenced previous memorandum sent to Defendant Outlaw on February 10, 2020. Jacobs asked Defendant Outlaw for a criminal investigation for the acts committed against Jacobs for being a Whistleblower.

145. Jacobs listed the departmental and criminal acts committed against him by the defendants.

146. Jacobs also informed Defendant Outlaw it was in her power to stop these actions from continuing.

147. On March 12, 2020 Hendershot contacts Jacobs by text and asks Jacobs to call him.

148.   **Hendershot informs Jacobs he has to report to Internal Affairs ("IA") because of the memorandum he sent to PC Outlaw on March 6, 2020.**

149.   Hendershot never tells Jacobs who gave the order.

150.   Jacobs asked Hendershot who is the person at IA.

151.   Hendershot tells Jacobs SOMEONE will interview him regarding Jacobs' allegations.

152.   Jacobs informed Hendershot he wished to speak with Commissioner Outlaw and he had already provided a written interview.

153.   Jacobs stated the people at IA report to Deputy Wilson.

154.   Hendershot asked Jacobs to speak with an FOP attorney for counsel to address his concerns.

155.   Jacobs contacted the attorney who informed Jacobs it was a set up to get Jacobs not to fully co-operate and charge Jacobs with "Conduct Unbecoming" and immediately dismiss Jacobs.

156.   Jacobs called Hendershot and informed him of the attorney's advice. Jacobs firmly re-iterated his position of speaking with PC Outlaw.

157.   On **March 24, 2020** Hendershot contacts Jacobs via text message and states "Hi Jake, do you have a sick note for this pay period?"

158.   Jacobs responds "Yes. Have you received the response back from my memo up the chain?"

159.   Hendershot replied "I have not. Can you please forward your sick note?"

160.   Jacobs replied "I will. Can you let them know I need the response. Thos (actual text) is not acceptable. I also will be getting you the sick note for the next pay period. This (corrected text). They took 10 days to threaten my career and conspire with criminals.

161.   Hendershot replied "Received."

162.   On May 18, 2020 Jacobs authored a memorandum to Defendant Outlaw.

163.   The subject line on the memorandum is "Departmental and Criminal actions by Deputy Police Commissioner Christine Coulter, Deputy Police Commissioner Dennis Wilson and Inspector DF Pace."

17

164. Jacobs referenced previous memos sent to Defendant Outlaw on February 10, 2020 and March 6, 2020.

165. Jacobs also inquired to Defendant Outlaw the origins of the arbitrary and capricious adverse employment actions against Jacobs.

166. Jacobs also inquired of Defendant Outlaw if the rumor of her violating Jacobs' departmental due process and initiating Commissioner's Direct Action ("CDA") was true.

167. On August 3, 2020 Jacobs authored another memorandum to Defendant Outlaw.

168. The subject line of the memorandum is "Failure to respond to Departmental and Criminal actions by Deputy Police Commissioner Christine Coulter, Deputy Police Commissioner Dennis Wilson, Inspector DF Pace, District Attorney Lawrence Krasner and Assistant District Attorney Tracy Tripp."

169. Jacobs referenced the previous memorandums sent to Defendant Outlaw.

170. Jacobs informed Defendant Outlaw that he has waited patiently for over 120 days for a response and action.

171. Jacobs also stated that he has been informed that Defendant Outlaw knows of the situation and intends to take CDA against Jacobs.

172. Jacobs also informed Defendant Outlaw of the civil and criminal statutes being violated by members of her Command staff.

173. On August 18, 2020 Jacobs resubmitted the August 3, 2020 memorandum to Defendant Outlaw.

174. On August 25, 2020 Jacobs resubmitted the August 3, 2020 memorandum to Defendant Hendershot for additional dissemination.

175. August 26, 2020 PC Outlaw sends Jacobs an email in response to Jacobs August 3, 2020 memorandum.

176. **PC Outlaw informed Jacobs she never received previous correspondence sent to her by Jacobs (THIS IS A CLEAR VIOLATION OF DEPARTMENTAL POLICY!). PC Outlaw informed Jacobs, due to his pending litigation, she cannot comment and directed Jacobs to City Solicitor, Jennifer MacNaughton (Never responded to whether or not she would be taking CDA against Jacobs).**

177. On August 27, 2020 Jacobs submitted a memorandum to PC Outlaw by email.

178. Jacobs attached all members that would have had knowledge of previously submitted memorandums that PC Outlaw informed Jacobs were never received.

179. The subject line of the memorandum is "Departmental and Criminal actions by members of the Philadelphia Police Department's Command Staff."

180. Jacobs addresses multiple concerns.

181. One particular concern was that Jacobs was told to go to Internal Affairs based upon memorandum authored on March 6, 2020.

182. If Defendant Outlaw did not receive the memorandum, who made the decision for Jacobs to report to IA (the setup)? SOMEONE OR ALL are LYING (CORRUPTION). **Barzini(s)** will be **exposed.**

183. Another concern was Defendant Outlaw not responding to the CDA question posed in the previous memorandums.

184. Besides the civil violations being committed by Defendant Outlaw's command staff, Jacobs also informed Defendant Outlaw of the Federal Criminal Statutes, in Jacobs' opinion, the defendants were violating (Title 18 U.S.C sections 241 and 242).

185. On August 28, 2020 Jacobs sent an email to Jennifer MacNaughton, per PC Outlaw's request. PC Outlaw is attached to the email.

186. The subject line of the email is "Departmental and Criminal violations by the Philadelphia Police Department Command Staff."

187. September 1, 2020 Jennifer MacNaughton replies to Jacobs' email. PC Outlaw is attached to response.

188. Ms. MacNaughton informed Jacobs and Defendant Outlaw she is only involved in the civil matter involving the City, DAO, the DA, and Tracy Tripp.

189. Ms. MacNaughton informed Jacobs and Defendant Outlaw she is not involved in the departmental and criminal actions of the PPD.

190. On September 24, 2020 Jacobs emails Defendant Outlaw previous correspondence sent to her that she informed Jacobs she had not received. Jacobs attached parties (Command Staff) who should have had previous contact with the correspondence.

191. On September 24, 2020 Jacobs submitted a memorandum through email to Defendant Outlaw and members of her Command Staff.

192. The subject line of the memorandum is "Departmental and Criminal actions by members of the Philadelphia Police Department's Command Staff."

193. Jacobs informed Defendant Outlaw he is exhausting HIS SICK TIME **(Constructive Discharge)** while waiting for a response from her regarding the criminal actions by members of her staff.

194. Jacobs asked Defendant Outlaw for an immediate investigation and to be placed in IOD status and his sick time (over 1700 hours) restored while the investigation takes place.

195. Once again, Jacobs inquired about the CDA.

196. On October 6, 2020 Jacobs submitted a memorandum to PC Outlaw.

197. The subject line of the memorandum is "Departmental and Criminal actions by members of the Philadelphia Police Department's Command Staff."

198. Jacobs addresses his frustration of repeated attempts to have an investigation into the numerous acts of criminality committed by the defendants.

199. Jacobs informs Defendant Outlaw there were only two scenarios for her actions and/or failure to act. One is the illegality was committed without her knowledge (documents submitted by Jacobs to defendant). Two the defendant is complicit in the criminality.

200. **On October 9, 2020** Lieutenant Patrick Quinn of the Philadelphia Police Department Commissioner's Office sends Jacobs a threatening email in response to Jacobs October 6, 2020 memorandum to PC Outlaw. Lieutenant Quinn, representing PC Outlaw, informed Jacobs that it is **"INAPPROPRIATE AND DISRUPTIVE"** for Jacobs to continue contacting PC Outlaw regarding corruption.

201. Defendant Quinn speaking on behalf of Defendant Outlaw also provided Jacobs with information that contradicts information contained in the Philadelphia Police Department directives addressing corruption, while threatening Jacobs. The email suggests Jacobs would be charged with insubordination if Jacobs contacted PC Outlaw again.

202. Jacobs was afforded two options when he learned of the defendants' criminal actions.

203. Option number one: Jacobs could ignore the defendant's criminal acts. This option would save Jacobs' career and reputation amongst the defendants. This option would also place Officer Pownall in jeopardy of spending 20 years to life in prison for a crime the defendants knew he did not commit.

204. Option number two: Jacobs could expose the criminality and corruption of the defendants. The defendants would retaliate and ruin Jacobs' reputation and career if he chose this option.

205. Jacobs chose option two.

206. The defendants retaliated and initiated a fabricated criminal investigation against Jacobs.

207. The defendants wanted Jacobs to rescind his choice of option two and choose option one.

208. When Tripp informed Jacobs' the criminal investigation was withdrawn Jacobs immediately began contacting any/all agencies to report on Tripp's multiple counts of criminality.

209. Unfortunately for Jacobs, the political corrosiveness of the District Attorney's Office has caused all of the agencies to cower and watch this spectator sport from afar.

210. Tripp never had probable cause to initiate, recommend, or even think of criminal charges regarding Jacobs.

211. No probable cause existed. This was **only** done as a scare tactic to ensure Jacobs' silence during the Pownall prosecution.

212. Jacobs (in his opinion) is a highly trained investigator who will not stop until ALL parties involved in the abomination of OUR Courts and Constitution are brought to JUSTICE.

213. The City of Philadelphia, District Attorney Lawrence Krasner or Assistant District Attorney Tracy Tripp cannot provide one iota of evidence of probable cause to support the initiation of this fabricated criminal investigation that Jacobs "leaked" grand jury information.

214. This was clearly Retaliation for being a **Whistleblower**.

215. Jacobs and his former partner, Detective William Sierra were selected for the OISI Unit because of their investigative acumen, including homicides as well as their solid character. Krasner knew this to be a threat to his political agenda. Immediately after his inauguration, Krasner pursued their removal, starting by attempting to remove Detective Sierra from the OISI Unit.

216. Instead of addressing Jacobs' concerns as a citizen of Philadelphia, the PPD conspired with the DAO to retaliate against Jacobs.

217. Jacobs filed a Federal Civil Complaint (19-cv-4616) for the actions committed by Krasner's DAO against Jacobs for reporting the corruption at the DAO.

218. Jacobs also had reported the criminal acts to the PPD for over a year.

219. Jacobs participated in a law enforcement podcast titled Search Warrant: "Clear and Present Danger."

220. During podcast Jacobs discussed his litigation against the DAO.

221. As a result, Defendant Wilson ordered Defendant Hendershot to immediately conduct a disciplinary investigation against Jacobs.

222. Defendant Hendershot conducted one interview (Jacobs) and concluded the investigation.

223. Defendant Pace then authored disciplinary charges, witnessed by Defendant Hendershot. The charges against Jacobs were **Conduct Unbecoming Unspecified**, which carries a penalty of termination.

224. The disciplinary documents actually state the reason for the charges were because Jacobs spoke out against the DAO and Krasner during podcast.

225. Jacobs spoke out on a matter of public concern and was once again retaliated against.

226. The ENTIRE "investigation" against Jacobs by this criminal enterprise (should be charged with RICO) took 23 days, including 7 non-working days from date of podcast.

227. These criminals could not find a policy, custom, or guideline violated by Jacobs.

228. The Philadelphia Police Department's Policy (Directive) of reporting corruption is located in Directive 8.10-**Preventing corruption within the ranks.**

229. **The Directive starts as follows: Honor, Integrity, and Service are the CORE values upon which we stand as a Police Department and to SERVE the community. It is the ABSOLUTE RESPONSIBILITY of EACH and EVERY member of this Department to uphold these CORE values. Nothing can destroy the honor and**

**integrity of the Philadelphia Police Department, along with esprit de corps and morale of its members, faster than corruption, abuse of authority, official misconduct, or even the appearance of improprieties by members of the Department.**

230. The **POLICY** states as follows:

231. **ALL members of the Philadelphia Police Department, SWORN and CIVILIAN, are professionals and shall conduct themselves, whether on or off-duty,, in a professional manner by not committing any inappropriate acts or deeds that would otherwise compromise the honor and integrity of the Department.**

232. **ALL actions and deeds by members of the Department shall be consistent with the LAWS, REGULATIONS and MANDATES of the Constitution of the United States, and the Commonwealth of Pennsylvania, the City of Philadelphia Home Rule Charter, the Philadelphia Police Department, The Police Officer's Code of Ethics, and avoid even the appearance of impropriety.**

233. Section 3 (Employees Responsibility to Report Corruption, Misconduct and other Improper acts affecting the Department), states the following:

234. **ALL** personnel have the **RIGHT** and **DUTY** to file complaints of CORRUPTION, misconduct, and other conditions that negatively impact the Department by ANY employee of the Police Department.

235. **REPRISALS** against any member of the Department, who reports CORRUPTION, misconduct or other conditions that negatively impact the Department **ARE STRICTLY PROHIBITED. ALL** instances of suspected **REPRISALS** will be immediately investigated by the Office of Professional Responsibility and those found committing such **REPRISALS** will be subjected to disciplinary action up to and including dismissal. In cases regarding **CRIMINAL** allegations, **CRIMINAL** charges may ensue for such **REPRISALS**.

236. **Section 6 covers the Whistleblower Law (43 P.S.1421) which ALL Defendants are violating.**

237. **THE TOP THREE PHILADELPHIA POLICE DEPARTMENT OFFICIALS ARE ALL CORRUPTED AND SHOULD BE IMMEDIATEDLY INVESTIGATED AND PROSECUTED FOR THEIR PARTICIPATION IN THIS CONSPIRACY WITH KRASNER. JACOBS' DOCUMENTS AND DEPARTMENTAL DIRECTIVES ALONE SHOW PROBABLE CAUSE.**

238. The Defendants conspired and succeeded in ruining the career of a decorated Law Enforcement Officer with a Defendant who, if he heard a car backfire, would hide in his basement under a mattress like the criminal he presents himself to be in this community.

239. This is the person who conducts himself as judge, jury, and executioner of heroes.

240. Jacobs made all notifications. Jacobs asked current Police Commissioner, Defendant Outlaw on numerous occasions if she was going to execute Commissioner's Direct Action (CDA) against Jacobs. The Defendant refused to acknowledge the illegal actions of her subordinates and referred Jacobs to the City's attorneys.

241. The Philadelphia Police Department's Policy (Directive) on Disciplinary Procedures-8.6 gives the Police Commissioner plenary power over all disciplinary decisions.

242. The Directive states a **complete** and **thorough** investigation will be conducted.

243. Only one person was interviewed (Jacobs) in this "investigation" before Jacobs career was **constructively terminated** by the Defendants.

244. Defendant Outlaw, with her plenary power on discipline, could have ended this activity against Jacobs immediately. Instead, she decided to join the criminal activity.

245. Jacobs' repeated attempts to obtain **JUSTICE** for the **DESTRUCTION** of his Law Enforcement career of almost a quarter century; caused defendant Quinn to issue a **threatening** email on October 9, 2020.

246. The email violated at least two Philadelphia Police Directives (policies) in Quinn's ordered edict from Outlaw in their retaliatory efforts against Jacobs.

247. Defendant Quinn informed Jacobs it was in response to Jacobs' October 6, 2020 memorandum.

248. The email informed Jacobs it was "**INAPPROPRIATE** and **DISRUPTIVE**" for Jacobs to have this matter adjudicated by continuing to attempt contact with PHILADELPHIA POLICE COMMISIONER, DEFENDANT DANIELLE OUTLAW regarding CORRUPTION in the City of Philadelphia.

249.    **Jacobs has not violated ANY Laws or Police Department Police policies in this matter! To the contrary Jacobs has exhausted all avenues to mediate and resolve this matter!**

250.    Defendant Quinn's email informed Jacobs, his efforts are futile. The Defendants have entered into a CONSPIRACY to violate Jacobs' Constitutional Rights and Constructively Discharge Jacobs from the Philadelphia Police Department. This has inflicted untold damages to Jacobs.

251.    The only responses Jacobs has received from the defendants as a result of reporting corruption were:

1. Received Sir
2. We are not the proper authority to address your victimization.
3. Your reporting of corruption is Conduct Unbecoming, which is grounds for termination
4. Never received, talk to my lawyer.
5. Your constant attempts of reporting corruption is Inappropriate and Disruptive.

## COUNT ONE

### VIOLATIONS PA WHISTLEBLOWER LAW

### 43 PS 1421-1428

252.    The Plaintiff hereby incorporates all the preceding paragraphs of this complaint as though fully set herein.

253.    At all relevant times, the City acted or failed to act through its agents, servants and employees, including the individual Defendants named herein, each of whom were acting within the course and scope of their employment.

254.    **"Employer."** A public body or any of the following which receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body.

255.    **"Employee."** A person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied, for an employer.

256.    Providing protection for employees who report a violation or suspected violation of State, local, or Federal law; providing protection for employees who participate in

hearings, investigations, legislative inquiries, or court actions; and prescribing remedies and penalties.

257. **"Whistleblower."** A person who witnesses or has evidence of wrongdoing or waste while employed and who makes a good faith report of the wrongdoing or waste, verbally or in writing, to one of the person's superiors, to an agent of the employer or to an appropriate authority.

258. **"Appropriate authority."** A Federal, State, or local government body, agency or organization having jurisdiction over criminal law enforcement, regulatory violations, professional conduct, or ethics, or waste; or a member, officer, agent, representative or supervisory employee of the body, agency or organization. The term includes, but is not limited to, the Office of Inspector General, the Office of Attorney General, the Department of the Auditor General, the Treasury Department, the General Assembly, and committees of the General Assembly having the power and duty to investigate criminal law enforcement, regulatory violations, professional conduct or ethics, or waste.

259. **"Good faith report."** A report of conduct defined in this act as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true.

260. **Protection of employees:**

261. Persons not to be discharged.— **NO** employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

262. Civil service employees.— An employee covered by civil service who contests a civil service action, believing it to be motivated by his having made a good faith report, verbally or in writing, of an instance of wrongdoing or waste, may submit as admissible evidence any or all material relating to the action as whistleblower and to the resulting alleged reprisal.

263. The remedies available to a prevailing plaintiff under the Whistleblower Law are: "reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies. A court may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the court determines that the award is appropriate." Pa.Stat.Ann. tit. 43, § 1425 (West 1991). Finally, a "person who, under color of an employer's authority, violates this act" may be liable for civil fines and, under certain

circumstances, **suspended from public service**. *See* Pa.Stat.Ann. tit. 43, § 1426 (West 1991).

264. Krasner and ADA Tripp viewed Jacobs as a threat in their attempt to sow racial discord. Krasner and ADA Tripp wanted to paint the shooting death of Jones by Pownall as being racially motivated. The information that Jacobs possessed and attempted to expose was detrimental. The only option the DAO had was to threaten Jacobs with criminal prosecution if he did not remain silent.

265. Jacobs, as stated earlier, is an African American, who was part of an investigation involving another African American (Jones) being shot to death by a white Philadelphia Police Officer (Officer Pownall). Krasner campaigned on rectifying the fact no Philadelphia Police Officer had been charged in the shooting death of an African American in twenty years.

266. Jacobs' ethnicity and knowledge of the investigation interfered with the illicit, criminal, and nefarious acts and plans of the DAO during the indictment of Officer Pownall. Jacobs' attempts to expose these plans could not go without severe punishment and consequence. Jacobs' had to be silenced, thus ADA Tripp conspired with other parties to stop him from exposing the illicit activity by retaliating against Jacobs with a fabricated criminal investigation. When that did not work, the defendants ordered the Philadelphia Police Department to violate the law.

267. **Defendant City** *can be held liable for decisions of officials with policymaking authority.* See Pembaur v. City of Cincinnati, *475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). In order to find the City liable under that theory, the Plaintiff must show that there was an action by a relevant policymaker and that it was taken with "deliberate indifference" to its known or obvious consequences.* See Bryan County, Oklahoma v. Brown, *520 U.S. 397, 418, 117 S. Ct. 1382, 1394, 137 L. Ed. 2d 626 (1997)*

268. **Defendant Christine Coulter**: Upon information and belief, this defendant was an "appropriate authority" and refused to adhere to the PA Whistleblower statute and provide Jacobs with protections after being notified. This Defendant also violated Philadelphia Police Department policy during the retaliatory actions against Jacobs.

269. **Defendant Lawrence Krasner**: Upon information and belief, this defendant violated the PA Whistleblower statute ordered and approved the criminal investigation against Jacobs after Jacobs attempted to expose the corruption and criminal actions of the District Attorney's Office. Also after Jacobs' participation in the podcast, this defendant ordered the PPD discipline Jacobs.

270. **Defendant Danielle Outlaw**: Upon information and belief, this defendant was an "appropriate authority" and refused to adhere to the PA Whistleblower statute and provide Jacobs with protections after being notified. This defendant actually directed Jacobs to the defendants' counsel. After being informed by the defendants' counsel of her error, this "appropriate authority" continued to refuse protections. This defendant also violated Philadelphia Police Department policy by retaliating and ordering her subordinate to author correspondence to Jacobs stating it was inappropriate and disruptive for Jacobs to continuing being a "Whistleblower."

271. **Defendant Tracy Tripp**: Upon information and belief, this defendant violated the PA Whistleblower Law by conspiring with Krasner to initiate a fabricated criminal investigation and charges against Jacobs after learning of Jacobs' attempts to expose the criminality and corruption at the Philadelphia District Attorney's Office.

272. **Defendant Patricia Cummings**: Upon information and belief, this defendant violated the PA Whistleblower Law by conspiring with Tripp to have Jacobs and Sierra removed removed from the Officer Involved Shooting Investigation unit because of their race and revealing corruption.

273. **Defendant Kia Ghee (Krasner and Tripp's counsel)**: Upon information and belief, this defendant violated the PA Whistleblower Law by conspiring with Hendershot to form the retaliatory Philadelphia Police Department's disciplinary questions in an effort to charge Jacobs with Conduct Unbecoming an Officer. Prior to Jacobs' January 30, 2020 disciplinary interview Hendershot and Ghee communicated on multiple occasions to formulate questions showing Jacobs violated Departmental policy. Ghee was ONLY representing Krasner and Tripp against Jacobs' allegations during this period and was only involved in Philadelphia Police Department's disciplinary matters in retaliation against Jacobs. (*note: this defendant is now in charge of the Philadelphia Commission on Human Relations and described as a "social justice advocate."*).

274. **Defendant Dennis Wilson**: Upon information and belief, this defendant violated the PA Whistleblower statute and Departmental policy and accepted an illegal order from Krasner. This defendant accepted and order from Krasner, who was an original defendant in Jacobs' Whistleblower complaint, to initiate a disciplinary investigation against Jacobs. This defendant conspired with Vanore, Ghee, Pace and Hendershot to charge Jacobs with Conduct Unbecoming an Officer without Jacobs' violating any Departmental policy or committing any crime.

275. **Defendant Francis Healy**: Upon information and belief, this defendant violated Departmental policy by conspiring and initiating an illegal investigation against Jacobs

with Pamela Bacon (assistant) on or about November 15, 2019 upon learning of the Jacobs' filed federal civil lawsuit against Krasner and Tripp in violation of the PA Whistleblower statute.

276. **Defendant Frank Vanore**: Upon information and belief, this defendant and "appropriate authority" violated Departmental policy by conspiring and initiating an illegal departmental disciplinary investigation against Jacobs. This defendant also conspired with Hendershot to have Jacobs removed from the Officer Involved Shooting Investigation unit in March 2020.

277. **Defendant Ben Naish**: Upon information and belief, this defendant and "appropriate authority" conspired to intercept memorandums reporting corruption in violation of the PA Whistleblower Law.

278. **Defendant DF Pace**: Upon information and belief, this defendant conspired to falsify and approve the charging documents in the fabricated disciplinary investigation of Jacobs. After being named as a litigant in this matter, the lawyer Pace, became concerned about his law license and became upset with Wilson and Naish because his name was on the fabricated disciplinary documents against Jacobs and not their names. This defendant subsequently abruptly requested to be reassigned from the Charging Unit, as a result Defendant Naish punished Pace and transferred him to night command (CIB).

279. **Defendant Patrick Quinn**: Upon information and belief, this defendant violated PA Whistleblower Law and Departmental policy and conspired and threatened Jacobs with disciplinary action if Jacobs continued to exercise his rights as a WHISTLEBLOWER.

280. **Defendant Jason Hendershot**: Upon information and belief, this defendant violated the PA Whistleblower Law on numerous occasions in his effort to be a double agent. In September 2018 Hendershot became the FIRST AND INITIAL "appropriate authority" when Jacobs informed him of Tripp's corruption and criminality (*note: this was prior to Jacobs learning of Hendershot's criminal activity by falsifying an affidavit to arrest Officer Pownall*).

281. Jacobs' notified Hendershot on October 18, 2019 of his civil litigation against Krasner and Tripp. Immediately this "appropriate authority" began to retaliate against Jacobs by threatening to take Jacobs' City issued unmarked police vehicle on November 18, 2019 and stopping Jacobs' overtime.

282. Jacobs repeatedly asked the "appropriate authority" Hendershot if he informed another "appropriate authority" (Wilson) of forwarding the corruption investigation to the US Attorney.

283. In January 2020 the defendants conspired to terminate the career of the Whistleblower by fabricating a disciplinary process claiming Jacobs "exposed" staffing levels (would be funny if the defendants' actions against the Whistleblower wasn't so serious) and hurt Krasner's feelings. After the interview, Hendershot immediately contacted Vanore and informed him the "mission" was accomplished.

284. In March 2020 Hendershot seized Jacobs' city issued vehicle and authored multiple fabricated memorandums and emails with defendant Vanore against Jacobs.

285. Wilson, Hendershot, and Vanore set up a fabricated Internal Affairs interview against Jacobs to terminate Jacobs' Law Enforcement career.

286. The defendants conspired to participate in an arbitrary and capricious disciplinary "investigation" which resulted in charges in order to retaliate against Jacobs for exercising his rights under PA Whistleblower Law.

287. *Allen v. Admin. Review Bd., 514 F.3d 468, 475-76 (5th Cir. 2008). Once the plaintiff makes a showing that the protected activity was a "contributing factor" to the adverse employment action, the burden shifts to the employer to demonstrate "by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of that behavior." Id. § 42121(b)(2)(B)(ii). ANTHONY ARAUJO v. NEW JERSEY TRANSIT RAIL OPERATIONS, INC. (3rd Circuit, 2012, Precedential).*

288. *"a contributing factor is any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." Ameristar Airways, Inc. v. Admin. Rev. Bd., 650 F.3d 563, 567 (5th Cir. 2011) (quoting Allen, 514 F.3d at 476 n.3 (internal quotation omitted).*

289. **The term "contributing factor" is a term of art that has been elaborated upon in the context of other whistleblower statutes. The Federal Circuit noted the following in a Whistleblower Protection Act case: The words "a contributing factor" ... mean any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision. This test is specifically intended to overrule existing case law, which requires a whistleblower to prove that his protected conduct was a "significant", "motivating", "substantial", or "predominant" factor in a**

personnel action in order to overturn that action. Marano v. Dep't of Justice, 2 F.3d 1137, 1140 (Fed. Cir. 1993) (quoting 135 Cong. Rec. 5033 (1989) (Explanatory Statement on S. 20)) (emphasis added by Federal Circuit). Furthermore, an employee "need not demonstrate the existence of a retaliatory motive on the part of the employee taking the alleged prohibited personnel action in order to establish that his disclosure was a contributing factor to the personnel action." Marano, 2 F.3d at 1141 (emphasis in original); see also Coppinger-Martin v. Solis, 627 F.3d 745, 750 (9th Cir. 2010) ("A prima facie case does not require that the employee conclusively demonstrate the employer's retaliatory motive."). Once the employee asserts a prima facie case, the burden shifts to the employer to demonstrate, "by clear and convincing evidence, that the employer would have taken the Case: 12-2148 Document: 003111169135 Page: 15 Date Filed: 02/19/2013 16 same unfavorable personnel action in the absence of that behavior." 49 U.S.C. § 42121(b)(2)(B)(ii). The "clear and convincing evidence" standard is the intermediate burden of proof, in between "a preponderance of the evidence" and "proof beyond a reasonable doubt." See Addington v. Texas, 441 U.S. 418, 425 (1979). To meet the burden, the employer must show that "the truth of its factual contentions are highly probable." Colorado v. New Mexico, 467 U.S. 310, 316 (1984) (internal quotation omitted).

290. *Temporal proximity between the employee's engagement in a protected activity and the unfavorable personnel action can be circumstantial evidence that the protected activity was a contributing factor to the adverse employment action. See Kewley v. Dep't of Health and Human Servs., 153 F.3d 1357, 1362 (Fed. Cir. 1998) (noting that, under the Whistleblower Protection Act, "the circumstantial evidence of knowledge of the protected disclosure and a reasonable relationship between the time of the protected disclosure and the time of the personnel action will establish, prima facie, that the disclosure was a contributing factor to the personnel action") (internal quotation omitted).*

291. Upon information and belief, Defendants Wilson, Vanore, Naish, Hendershot and Ghee violated the PA Whistleblower statute and Philadelphia Police Department policy by intercepting Jacobs' memorandums reporting corruption. The memorandums we intercepted and redirected to Ghee (Krasner and Tripp's counsel), never reaching the intended recipients (Coulter and Outlaw). These interceptions occurred between November 2019 and August 2020.

292. Jacobs, prior to becoming a "whistleblower", was one of the highest decorated Detectives in the Philadelphia Police Department. Jacobs also participated, investigated and solved some of the most high profile cases in the Department.

293. The Defendants will never be able to credibly articulate their retaliatory treatment inflicted upon Jacobs.

294. BASED UPON THE ABOVE LISTED FACTS, THE PLAINTIFF HAS CLEARLY ESTABLISHED ENOUGH FACTS TO STATE A CLAIM AGAINST LISTED DEFENDANTS FOR VIOLATIONS OF THE PENNSYLVANIA WHISTLEBLOWER LAW.

_____
**Derrick Jacobs**

**Pro Se Plaintiff**

**Date: July 13, 2022**

# CERTIFICATE OF SERVICE

I, Derrick Jacobs, hereby certify that on July 13, 2022 a true and correct copy of the Pro Se Brief, was electronically served via ECF and/or email upon all parties of record listed below:

Kia Ghee, Esquire
Nicole S. Morris, Esquire
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
***Attorneys for Defendants(s)***

Derrick Jacobs
PO Box 1454
Berlin, MD 21811
derrickjacobs9116@gmail.com
***Plaintiff***
*Pro se*
**Date: July 13, 2022**