To: Police Commissioner Danielle Outlaw

From: Detective Derrick Jacobs #9116

Subject: Departmental and Criminal actions by members of the Philadelphia Police Department's Command Staff.

Date: August 27, 2020

     Commissioner, I appreciate your response to my email dated August 3, 2020. I will also honor your request and direct correspondence to Jennifer MacNaughton for clarity. Unfortunately, your response raised more concerns. I believe my requests are outside Ms. MacNaughton's purview. I do not want to conflate the civil litigation which she is in charge of currently with the criminal investigation I am requesting from the Philadelphia Police Department and United States Attorney's Office.

     Commissioner, in an effort to display full transparency, I authored the August 3, 2020 memorandum after not receiving a response to the March 6, 2020 memorandum. I also became perturbed after observing you on Fox 29 referencing a nasty Theft from Auto email and not receiving a response to my emails (I also sent a memorandum on February 10, 2020). So on August 25, 2020, I sent another memorandum up the chain to you through my Commanding Officer, Lieutenant Jason Hendershot (I have not received a response to that memorandum, I noticed your response was to the memorandum I sent you directly on August 18, 2020).

     Concern Number 1: I sent a memorandum on March 6, 2020 to disseminate up the Chain of Command to you through my Commanding Officer, Jason Hendershot. On March 12, 2020 Lieutenant Hendershot ("Lieutenant") contacted me and stated an investigation would be conducted and I would have to provide an interview at Internal Affairs. I totally disagreed with this and informed the Lieutenant this is so the people who are committing these criminal acts to further persecute me. I asked who was I to report to at Internal Affairs and he said he did not know, just go there and tell them who I am. When I disagreed, he suggested I contact FOP attorney, Timothy Strange for guidance. I contacted the attorney, who shared my sentiments. I later learned this was an attempt to charge me with Failure to Co-operate in a Departmental Investigation. I don't know who told the Lieutenant to lie or if he did it on his own. What I do know is his immediate supervisor was Inspector Benjamin Naish, did he order the Lieutenant to lie, was it someone else, did he act alone? An investigation should provide answers. What I do know is he was just promoted to Deputy Commissioner (the same position once occupied by Dennis Wilson). What I do know is through your correspondence, you never received the memorandum and the Lieutenant said decisions were made based upon the memorandum. I will forward you the memorandum sent to the Lieutenant on March 6, 2020 to disseminate up the chain and will attached ALL parties that should have reviewed the document prior to it arriving on your desk (including Jennifer MacNaughton). I have asked my Lieutenant on multiple occasions for a response to the memorandum and received responses it was not returned. Why was this information kept from you?

Concern Number 2: The reason I authored the March 6, 2020 memorandum was because I received information that you were going to exercise Commissioner's Direct Action (CDA) and issue immediate discipline upon my return in reference to the Disciplinary Charges initiated, authored and instituted by the cabal. This has caused irreparable damage to my reputation. Stress has been maliciously heaped upon me and my family. Based upon these criminal acts, I was forced to make an immediate decision to protect my family from future acts of this mental violence. The cabal forced me to use MY sick time in an effort to force me off the Department and not informing you of their actions while they "smoked" me away. I have been forced to use hundreds of hours of MY sick time while waiting for a response from you that the cabal knew would never come. These acts are criminal and inflicted intentionally.

Concern Number 3: I will be as brief as possible discussing the original concerns of corruption at the Philadelphia District Attorney's Office. First, clearly the arrest of Officer Pownall was illegal. Mr. Krasner and the District Attorney's Office would not be seeking to change the criminal statute if it already existed and favored their view. Furthermore, false information was intentionally provided to the grand jury that any member of the OISI unit involved in the investigation would attest to. Second, the District Attorney's Office INTENTIONALLY did not clear Officers in an OIS that occurred on Kensington Avenue involving Officer, now Sergeant Timothy Stephan. The suspect attempted to kill multiple Officers and the District Attorney's Office, who controlled the entire prosecution, did not clear the Officers and withdrew the charges against the suspect. The Officers are still the subject of a criminal investigation, while the suspect, who's DNA is on the Officer's firearm walks the streets until another Officer is harmed. Third, Mr. Krasner interjected himself in a tactical law enforcement event that resulted in catastrophic consequences. While Maurice Hill was firing an assault rifle at Officers (injuring six), Mr. Krasner engaged in a "ruse" with Maurice Hill's alleged attorney, Shaka Johnson. Krasner was allegedly authoring a "phony" proffer letter in an effort to extract Maurice Hill from the location. This was done without informing the tactical command on location that he was engaging Maurice Hill and his attorney in a conversation. Mr. Krasner is not a trained hostage negotiator or Law Enforcement Officer. Mr. Krasner has not provided an interview to the Philadelphia Police Department regarding his contact with Maurice Hill (I would happily conduct the interview). Maurice Hill believed attorney Johnson was operating in his best interest and negotiating a proffer deal (Krasner had a press conference and stated that was not the case). Attorney Johnson also has not provided an interview to the Philadelphia Police Department. The Philadelphia District Attorney's Office also exercise control over the prosecution of this matter, which they are clearly conflicted. These are just three examples of the ongoing corruption at the District Attorney's Office, not including my own.

Concern Number 4: These are criminal acts being committed by the Philadelphia Police Department and Philadelphia District Attorney's Office. These acts require a federal criminal investigation by the Federal Bureau of Investigations and the US Attorney's Office. Although I will honor your request and include Jennifer MacNaughton, as stated earlier, I do not believe this is within the scope of her current responsibilities. I will update you on the response.

**The following federal criminal statutes were violated by members of your Command Staff:**

### Title 18, U.S.C. Section 241

If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same;... They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

### Title 18, U.S.C. Section 242

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, ... shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnaping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

Thank you,

Detective Derrick Jacobs #9116, 223879

# EXHIBIT 9