**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DERRICK JACOBS,** | **Civil Action No. 19-4616** |
| **Plaintiff,** | |
| **v.** | |
| **CITY OF PHILADELPHIA, et al.,** | |
| **Defendants.** | |

## <u>ORDER</u>

      **AND NOW**, this _____ day of _____, 20___, upon consideration of Defendants City of Philadelphia, et al.'s Motion to Dismiss Whistleblower Law Claim, it is ORDERED that Plaintiff's Pennsylvania Whistleblower Law claims against all defendants are dismissed with prejudice.

BY THE COURT:

_____
                                         **J.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DERRICK JACOBS,** | **Civil Action No. 19-4616** |
| **Plaintiff,** | |
| **v.** | |
| **CITY OF PHILADELPHIA, et al.,** | |
| **Defendants.** | |

**DEFENDANTS CITY OF PHILADELPHIA ET AL.'S MOTION TO DISMISS**
**WHISTLEBLOWER LAW CLAIM**

NOW COMES defendants, City of Philadelphia, Police Commissioner Danielle Outlaw Deputy Police Commissioner Christine Coulter, District Attorney Lawrence Krasner, Assistant District Attorney Tracy Tripp, Kia Ghee, Chief Inspector Dennis Wilson, Deputy Commissioner Benjamin Naish, Chief lnspector Frank Vanore, Inspector Francis Healy, Inspector D.F. Pace, Lieutenant Jason Hendershot, and Lieutenant Patrick Quinn, by their undersigned attorney, moving for an order dismissing Plaintiff's Fifth Amended Complaint with prejudice.

Defendants respectfully submit that such relief is warranted for the reasons set forth in the accompanying memorandum of law.

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
Dated: September 15, 2022                    DIANA P. CORTES, City Solicitor

*/s/ Nicole S. Morris*
Nicole S. Morris
Chief Deputy City Solicitor
Pa. Atty. I.D. No. 88265
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA 19102

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DERRICK JACOBS,** | **Civil Action No. 19-4616** |
| **Plaintiff,** | |
| **v.** | |
| **CITY OF PHILADELPHIA, et al.,** | |
| **Defendants.** | |

**DEFENDANT CITY OF PHILADELPHIA ET AL.'S MEMORANDUM OF LAW
<u>IN SUPPORT OF THEIR MOTION TO DISMISS WHISTLEBLOWER LAW CLAIM</u>**

Defendants file this Motion to Dismiss Plaintiff Derrick Jacobs' Fifth Amended

Complaint ("5AC", ECF No. 42), which pertains to the Pennsylvania Whistleblower Law only.[1]

## I.     BACKGROUND

### A.  Facts

The following facts are taken from the Fifth Amended Complaint  ("5AC", ECF 42),

which for purposes of this Motion, Defendants must treat as true.

Jacobs is or was a detective in the Philadelphia Police Department assigned to the

Department's Officer Involved Shooting investigation ("OISI") Unit. 5AC ¶ 2. The events in

question arise out of his work on the investigation of a highly publicized police shooting

involving Officer Ryan Pownall. *Id.* ¶ 1. On or around September 4, 2018, a grand jury indicted

Pownall for murder. *Id.* ¶ 14.

Based on his participation in the investigation, Jacobs formed the belief that Assistant

---

[1] Per this Court's September 8, 2022 Order (ECF No. 46), both the Fourth and Fifth Amended
Complaints (ECF Nos. 29 & 42) are operative in this matter.

District Attorney Tracey Tripp had secured the indictment by presenting false or perjured testimony to the grand jury. *Id*. ¶¶ 15-17. On September 27, 2018, Jacobs spoke with an attorney "to explore his options of reporting Tripp's corruption and criminality." ¶ 19. The Complaints do not identify this attorney nor allege that any attorney-client relationship existed between the attorney and Jacobs. Jacobs also spoke with his commanding officer, Lieutenant Hendershot, about his belief that Tripp had committed misconduct. ¶ 18.

In response to Jacobs' contacting the attorney, Tripp contacted Hendershot and allegedly threatened to prosecute the entire OISI Unit unless he determined which officer had spoken with the attorney. ¶ 21. Jacobs informed Hendershot that he was the person who spoke with the attorney, and Hendershot informed Tripp. ¶¶ 23, 26.

Tripp then initiated what Jacobs alleges was a fabricated criminal investigation against him for leaking grand jury information. *Id*. ¶¶ 28-37. The charges were withdrawn in or around July 2019 because certain transcripts were lost, although Jacobs disputes whether this explanation was accurate. *Id*. ¶¶ 38, 40-41.

Jacobs filed this pro se lawsuit on October 4, 2019. ECF 1. Initially he named only the City, District Attorney Krasner, and Assistant District Attorney Tripp, alleging that they instituted the criminal proceeding against him in order to deter him from reporting prosecutorial misconduct in the Pownall case. ECF 1 at 5.

Jacobs alleges that Inspector Healy began an investigation of him on or before November 15, 2019, due to his lawsuit. ¶¶ 59, 275.On November 18, Hendershot informed Jacobs that he was taking away Jacobs' police vehicle because Jacobs was unavailable while visiting family out of town, but Jacobs alleges that the true reason was retaliation for filing his federal lawsuit. ¶¶ 64-67.

2

Jacobs pursued other attempts to expose the District Attorney's Office's alleged misconduct and retaliation against him. On November 18, 2019 an article was published on Bigtrial.net entitled "Detective: D.A. Tampered With Witness in Officer Involved Shooting", which referred to the allegations in Jacobs' lawsuit. 5AC ¶ 63. On November 27, 2019, Jacobs contacted the Pennsylvania Attorney General's office, but was informed that due to the office's earlier involvement in the Pownall investigation, it would have a conflict of interest in this matter. *Id*. ¶ 90. On January 18, 2020, Jacobs spoke on a podcast entitled "Search Warrant, Clear and Present Danger" regarding his allegations against the District Attorney's Office. *Id*. ¶¶ 96-97.

Jacobs alleges that the podcast "incensed" Krasner, who then ordered Chief Inspector Wilson to take disciplinary action against him. ¶ 99. Wilson began this disciplinary investigation around January of 2020. ¶ 99. In February 2020 Jacobs was charged with "Conduct Unbecoming – Unspecified" and Neglect of Duty. ¶¶ 99-130.

In addition, Jacobs alleges that around February 13, 2020, he heard from an unnamed source that Police Commissioner Outlaw would take Commissioner's Direct Action (CDA) to impose further discipline against him. ¶ 132. Jacobs was on vacation February 13 and 14, and used his sick and vacation time to avoid returning to work in order to avoid what he believed was an impending disciplinary action. ¶¶ 132-133. On March 2, Jacobs asked Hendershot if he could use Injured On Duty status to avoid returning to work, but Hendershot informed him that he could not use IOD status for job related stress. ¶¶ 134-139. On March 5, 2020, Hendershot informed Jacobs he would be taking away his police vehicle. ¶ 141.

From October 2019 through October 2020, Jacobs authored numerous memoranda to acting Police Commissioner (now Deputy Commissioner) Christine Coulter and, later, incoming

3

Police Commissioner Danielle Outlaw, some of which he re-sent multiple times *Id*. ¶¶ 47-54, 57-58, 60-62, 117, 118-120, 142-147, 162-184, 190-200, & Exs. 1-3, 5-10. The first memorandum informed the Acting Commissioner of his accusations against the District Attorney's Office and asked the Commissioner to investigate those charges, contact the U.S. Attorney and state Attorney General, and provide unspecified "protections" to Jacobs as a whistleblower. Ex 1. Others were sent to follow up and ask that the Commissioner meet with him. Ex. 2, 3, 5. The memoranda grew increasingly strident in tone, accusing the Commissioner, Deputy Commissioner Coulter, Wilson, and other members of the Police Department of departmental and criminal violations and of conspiring with the District Attorney, demanding that the Commissioner respond to his accusations, and calling for the Commissioner to launch a criminal investigation and/or refer the matter to the Attorney General or other authorities. Ex. 6-11.[2] Jacobs also sent a memorandum to Wilson accusing him of instituting the disciplinary action in retaliation for the podcast and the lawsuit, and accusing him of being "complicit in the alleged criminal activity". *Id*. ¶¶ 110-111 & Ex. 4.

In response to the March 6, 2020 memorandum, Jacobs was told to report to Internal Affairs for an interview regarding his allegations; however, Jacobs refused and insisted on speaking with the Commissioner only. ¶¶ 147-152.

At various times, in response to his correspondence, Jacobs was informed that the Police Department was not the appropriate entity to investigate his accusations against the District

---

[2] *See, e.g.* Ex. 8 ("you have turned a blind eye and totally ignored the 'facts' I presented to YOU.. Your failure to respond and/or act can only be construed as complicity and/or utter complete negligence."); Ex. 10 ("You acknowledged in your email that corruption exist[s] among your Command Staff…"); Ex. 11 (suggesting that either the Commissioner had no knowledge of the command staff's actions, or "You are complicit with your Command Staff and the Philadelphia District Attorney's Office in the execution of these illegal attacks against me…").

Attorney, and that he should contact the Attorney General or the U.S. Attorney regarding those accusations and contact his police union regarding the disciplinary action. ¶¶ 62, 77, 154, & Ex. 16. Finally, in response to the October 6, 2020 memorandum to the Commissioner, Lt. Quinn responded by email. Ex. 12. The email stated: "You have previously been informed of the proper channels for your complaints," and listed those channels. *Id*. The email also stated: "It is inappropriate and disruptive for you to continue sending emails and memoranda to the Commissioner on these matters." Ex. 12.

The Fifth Amended Complaint does not indicate whether Jacobs is still employed by the Police Department.

**B.  Procedural History**

Jacobs' initial Complaint alleged violations of the Pennsylvania Whistleblower Law and another state statue against Tripp, District Attorney Lawrence Krasner, and the City of Philadelphia due to the District Attorney's Office's alleged retaliation against him. ECF 1. The Amended Complaint, filed November 8, 2018, added federal civil rights claims. ECF  3.

After an appeal and remand, Jacobs filed the Second Amended Complaint on January 8, 2021, adding several members of the Philadelphia Police Department as defendants and asserting that the Department retaliated against him for attempting to expose "corruption" in the District Attorney's Office. ECF 24.[3] The claims were pared down to: First Amendment retaliation, the Pennsylvania Whistleblower Law, Due Process, and Conspiracy. *Id*. at 36-38. In response to Defendants' motions to dismiss, Jacobs then filed several more amendments, including one filed in violation of the Court's order not to file any more complaints. *See* ECF 27, 29, 32, 34; *see also*

---

[3] That complaint was mistakenly docketed as a new case. It was re-filed on the existing docket per this Court's order. *See* ECF 23, 24.

ECF 36 at 6. The Court dismissed Jacobs' federal civil rights claims with prejudice and declined to exercise pendent jurisdiction over his Whistleblower Law claim. *See* ECF 36.

Jacobs appealed again. The Third Circuit vacated dismissal of the First Amendment retaliation claims against Tripp, Hendershot, Wilson, and Pace, but found he had failed to plausibly plead that any other defendants were involved in the alleged retaliation against him. *Jacobs v. City of Philadelphia*, No. 21-2314, 2022 WL 1772989, at *2-5 (3d Cir. Jun. 1, 2022). The court affirmed dismissal of the Due Process and municipal liability claims. *Id*. at *2 fn.4. The court also vacated and remanded as to the conspiracy claim against those four defendants. *Id*. at *5. Lastly, the court remanded the Whistleblower Law claim, which had been dismissed solely on the basis of this Court's declining to exercise pendent jurisdiction, noting that this Court could revisit that claim on remand. *Id*. at *6.

On remand for a second time, this Court ordered Jacobs to file an amended complaint specifying which defendants were implicated in his Whistleblower Law claim. ECF 41. Jacobs filed the Fifth Amended Complaint, which pleads only the Whistleblower Law claim. ECF 42. The Court ordered that both the Fourth and Fifth Amended Complaints (ECF 29 & 42) would be treated as operative. ECF 46.

## II.   LEGAL STANDARD

A complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a motion to dismiss, the Court examines whether the complaint "'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face'", while disregarding mere recitations of the elements of the cause of action or legal conclusions devoid of factual content. *Vehicle Carrier*, 846 F.3d at 79 n.4 (quoting *Iqbal*, 556 U.S. at 678, in turn quoting *Twombly*, 550 U.S. at 570).

The Third Circuit has described a three-step analysis to determine whether a complaint survives Rule 12(b)(6) motion to dismiss. *Santiago v. Warminster Twp*., 629 F.3d 121, 130 (3d Cir. 2010). "First the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id*. (quoting  *Iqbal,* 556 U.S. at 675). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id*. The court need not credit "'bald assertions'" or bare legal conclusions. *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). "Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Santiago*, 629 F.3d at 130.

## III.    ARGUMENT

### A.  Prosecutorial Immunity Shields Defendants Krasner and Tripp for the Decision to Investigate Jacobs for Leaking Grand Jury Information

Even assuming Tripp's investigation of Jacobs for the grand jury leak was actionable under the Whistleblower Law (which is not the case), Krasner and Tripp would have prosecutorial immunity. The Third Circuit has already held that Tripp is immune for bringing the allegedly false charges against Jacobs. *Jacobs*, 2022 WL 1772989 at *2.[4] The Third Circuit did

---

[4] Although the Court of Appeals found that the record was not developed enough to find immunity for her alleged threat to Hendershot to prosecute the entire OISI Unit, 2022 WL 1772989 at *3 & fn.6, the claim against Tripp fails for multiple other reasons, as shown below.

not reach Krasner's immunity because it found that Jacobs had not alleged any personal involvement by Krasner, and so affirmed dismissal on that ground. *Id*. n.7. While the Fifth Amended Complaint similarly does not plead sufficient facts to show Krasner's involvement in in the decision to investigate Jacobs, even if it had, Krasner would also be immune.

### B.  Defendants Are Immune From Jacobs' State Law Claim As High Public Officials

Under Pennsylvania law, high-ranking officials are absolutely immune from liability for their acts or statements in the course of their official duties and within the scope of their authority. *Lindner v. Mollan*, 677 A.2d 1194, 1195 (Pa. 1996); *Feldman v. Hoffman*, 107 A.3d 821, 826 (Pa. Cmwlth. 2014).[5] High official immunity does not exist simply to protect the official's own interests, but instead, it protects "society's interest in the unfettered discharge of public business" by "removing any inhibition which might deprive the public of the best service of its officers and agencies". *Lindner*, 677 A.2d at 1195-96 (citations omitted); *McCormick v. Specter*, 275 A.2d 688, 689 (Pa. Super. 1971). To that end, high official immunity is absolute and "unlimited", and applies even where an official acts deliberately or with malice. *Lindner*, 677 A.2d at 490.

Whether a defendant is a high public official should be determined by a judge examining the public officer's duties, the importance of the office, and whether or not the official has policy-making functions. *Montgomery v. City of Philadelphia*, 140 A.2d 100, 105 (Pa. 1958). However, it is not always necessary that the official have policy-making authority; instead, "it is the public interest in seeing that the official not be impeded in the performance of important duties that is pivotal." *Durham*, 772 A.2d at 70. In evaluating whether public policy favors

---

[5] Although this doctrine emerged in the context of defamation actions, it is not limited to defamation cases. *See U. S. ex rel. Fear v. Rundle*, 506 F.2d 331, 334 (3d Cir. 1974).

granting high official immunity, courts look to whether the official's duties are discretionary (that is, whether they involve planning or policy decisions, which would favor immunity) and whether the official's actions would be measured against a predictable standard of care (which weighs against immunity). *See DuBree v. Com.*, 393 A.2d 293, 295 (Pa. 1978).

While there is no bright-line test, Pennsylvania courts have found people with the following job titles to be protected through high public official immunity: township supervisor, deputy commissioner of public property and city architect, state Attorney General, mayor, borough council president, county attorney, city revenue commissioner, city comptroller, coroner, district attorney and assistant district attorney, intermediate school unit executive director and assistant director, and Superintendent of the Parole Division of the Board of Probation and Parole. *See Durham v. McElynn*, 772 A.2d 68 (Pa. 2001) (assistant district attorney); *Lindner v. Mollan,* 677 A.2d 1194, 1198–99 (Pa. 1996) (listing cases); *Feldman v. Hoffman*, 107 A.3d 821, 828 (Pa. Cmwlth.2014) (coroner); *Azar v. Ferrari*, 898 A.2d 55, 61 (Pa. Cmwlth. 2006) (intermediate school unit director and assistant director).

Here, District Attorney Krasner and Assistant District Attorney Tripp are considered high public officials under Pennsylvania law. The Pennsylvania Supreme Court has held that both district attorneys and assistant district attorneys are immune from suit under this doctrine. *Durham*, 772 A.2d at 70. The court noted that Assistant District Attorneys are essential to carrying out prosecutorial functions and would be deterred from zealously performing their duties if they did not enjoy immunity. *Id*. at 70. The same logic applies to Defendant Tripp: her decisions regarding how to respond to Jacobs' alleged leaking of grand jury information were part of her duties both as a prosecutor and an officer of the court, and entailed a broad degree of professional discretion. The policy justification for immunity in this circumstance is strong, as

9

Tripp or other prosecutors could be deterred from zealously enforcing the law if they were under threat of retaliatory lawsuits.

Likewise, Commissioner Outlaw and Deputy Commissioner Coulter (who was acting as Police Commissioner during the time in question[6]) also readily meet the test for immunity, as they are top officials vested with policy-making authority for the entire Department. *See Otto v. Williams*, No. 15-3217, 2016 WL 3136923, at *4 (E.D. Pa. June 6, 2016) (finding that the Philadelphia District Attorney, Mayor, and Police Commissioner were all high public officials entitled to immunity), aff'd 704 F. App'x 50 (3d Cir. 2017); *Thomas-Warner v. City of Phila.*, No. 11-5854, 2011 WL 6371898, at *10 (E.D. Pa. Dec. 20, 2011) (holding Philadelphia police commissioner was "high public official" entitled to immunity).

In addition, police command staff can be eligible for immunity based on their role within the police force. A Pennsylvania appellate court has found that a state police captain in command of a local troop held a position of sufficient importance and with policymaking functions to qualify as a  high public official. *Schroeck v. Pennsylvania State Police*, 362 A.2d 486, 490 (Pa. Cmwlth. 1976). By contrast, the court found that a lieutenant with purely ministerial duties did not qualify. *Id.* Here, several defendants exceed the rank of captain: namely, Deputy Commissioner Naish, Chief Inspector Vanore, Chief Inspector Wilson, Inspector Healy, and Inspector Pace.[7]

---

[6] All of the allegations against Coulter relate to memoranda that Jacobs sent her while she was Acting Commissioner. See 5AC ¶¶ 47-54, 57-58, 60-62, 117-118, 268, 291.

[7] For information on Police Department ranks, *see* Philadelphia Police Department website, ttps://www.phillypolice.com/about/ . We respectfully request that the Court take judicial notice of this website under Fed.R.Evid. 201, as it reflects adjudicative facts and is a source whose accuracy cannot reasonably be questioned.

The only two defendants below that rank were Lieutenants Hendershot and Quinn, but the public policy justification for official immunity should apply to them as well. Jacobs' allegations against these Defendants arise from their involvement in the police discipline process.[8] Police discipline is discretionary and not suited to merely mechanical standards of application, unlike the ministerial duties of the lieutenant in *Schroeck*. *See DuBree*, 393 A.2d at 295. And police discipline is a matter of critical public importance: the need is clear for police supervisors to be able to assist with internal investigations and bring disciplinary charges without being chilled by the threat of a lawsuit by the disgruntled officer. *Cf. Durham*, 772 A.2d at 70. Further, Jacobs does not, and cannot, plausibly allege that it was outside of these officers' duties to assist with an internal disciplinary matter. Accordingly, the policy justifications behind official immunity apply to all Police Department defendants, and the Whistleblower Law claim against them should be dismissed.

### C. Jacobs' Whistleblower Law Claim Against the Police Department Defendants and Newly-Named Defendants Cummings, Ghee, Healy, and Vanore is Time-Barred

The Whistleblower Law claim should be dismissed against the Police Department defendants and the four new defendants because nearly all of these defendants' alleged conduct

---

[8] With regard to Lt. Quinn, Jacobs faces a double-edged sword. The sole allegation against him was that he wrote an email to Jacobs informing him that his repeated messages to the Police Commissioner were inappropriate. *See* 5AC ¶¶ 200-201. Jacobs claims that this email was a veiled threat of disciplinary action. *Id.* However, the Complaint does not specify what if any role or authority Quinn would have within the disciplinary process, or whether he was simply engaging in a ministerial task when he sent the email in question. If Quinn did have some authority to initiate disciplinary action against Jacobs, then he is entitled to high official immunity along with Hendershot and the other Police Department defendants. But if his sending the email was a purely ministerial act, then as we show below, this fact would be fatal to the Whistleblower Law claim because Jacobs has not plausibly pled Quinn's personal involvement in any disciplinary action.

occurred past the limitations period, and the few actions that took place within the limitations period are not actionable.

The Whistleblower Law requires that plaintiff "bring a civil action…within 180 days after the occurrence of the alleged violation."  43 P.S. § 1424(a). "[T]his 180–day time limit is mandatory, and courts have no discretion to extend it." *O'Rourke v. Pennsylvania Dep't of Corr.*, 730 A.2d 1039, 1042 (Pa. Cmwlth. 1999).

Jacobs first brought the Police Department defendants into this lawsuit with the Second Amended Complaint, filed January 8, 2021 (ECF 24). The Fifth Amended Complaint, filed July 14, 2022, adds four new defendants: Patricia Cummings, Kia Ghee, Francis Healy, and Frank Vanore. *Compare* 4AC (ECF29 at 5-6) *with* 5AC (ECF 42 at 3-4).

However, the bulk of the allegations in the Second and Fifth Amended Complaints involve events that occurred in 2019 and early 2020, which is well past the 180-day limitations period for either complaint. The Second Amended Complaint does not specify which Police defendants or what conduct was at issue for the Whistleblower Law claim, but based on the Fifth Amended Complaint, Jacobs' allegations against the Department essentially pertain to: (1) the disciplinary action against him, which was initiated in late 2019 to early 2020 and resulted in the Conduct Unbecoming charge in February 2020; and (2) the Commissioner and other Defendants' alleged failure to act or respond to Jacobs' numerous memoranda or oral reports of wrongdoing, which occurred up through October 2020. *See* 5AC ¶¶ 268-286, 291. The only conduct occurring within the limitations period for the Second Amended Complaint was the non-responses occurring after July 12, 2020. This would leave only the allegations in Paragraphs 167-200 of the Fifth Amended Complaint as not time-barred. However, as we show below, a mere failure to

respond to Jacobs' communications is not actionable retaliation under the Whistleblower Law. The entirety of this claim against the Police Department defendants should be dismissed.

Similarly, Jacobs added four new defendants to the the Fifth Amended Complaint on July 14, 2022, but the allegations against those defendants pertain to events two or more years earlier:

- <u>Patricia Cummings</u>: Jacobs alleges that Ms. Cummings participated in a 2018 meeting and that she allegedly conspired to have him removed from the OISI Unit. 5AC ¶¶ 11, 272. He alleges he was removed from the OISI Unit in March of 2020. *Id.* ¶¶ 140, 276.

- <u>Kia Ghee</u>: Jacobs alleges Ms. Ghee "intercepted" his memoranda to the Police Commissioner in November 2019 and August 2020, and provided advice to Hendershot before Jacobs' January 30, 2020 disciplinary interview. *Id.* ¶¶ 273, 291.

- <u>Francis Healy</u>: Jacobs alleges Inspector Healy investigated him in November 2019. *Id.* ¶ 275.

- <u>Frank Vanore</u>: Jacobs alleges Chief Inspector Vanore was involved in the disciplinary action against him (which occurred in 2020) and conspired to have Jacobs removed from the OISI Unit in March 2020. *Id.* ¶¶ 276; *see* ¶¶ 99, 114, 122, 226.

The addition of these new defendants does not qualify for relation back under Rule 15. Under the Rule, claims against a new defendant can relate back only where the plaintiff failed to name the correct defendant due to a mistake; the correct defendant was on notice of the action; and the defendant knew the action would be brought against them, but for the plaintiff's mistake about the proper party's identity. Fed.R.Civ.P. 15(c)(1)(C). A showing of mistake is mandatory. *Nelson v. Cnty. of Allegheny*, 60 F.3d 1010, 1014 (3d Cir. 1995).

Jacobs cannot claim mistaken identity as to any of these defendants. All were individuals whom Jacobs knew personally, and the allegations against them all involve actions taken by each

defendant in their particular roles within their organizations. None of these allegations appear in any earlier complaints as mistakenly attributed to a different defendant. Instead, Jacobs plainly used this latest amendment to add on entirely new, untimely claims against new defendants. The claims against these defendants should be dismissed with prejudice.

### D. Only Employers Able to Carry Out Adverse Employment Actions Can Be Liable Under the Whistleblower Law, so the Claim Against Defendants Krasner, Tripp, Cummings, and Ghee Must Be Dismissed

Jacobs' claim against District Attorney Krasner, Assistant District Attorney Tripp, Patricia Cummings, and Ms. Ghee fails because they are not, and have never been, his employer.

On the face of the statute, the Whistleblower Law provides a cause of action against only the plaintiff's employer, not a third party. 43 P.S. § 1423(a) & (b) ("No employer may discharge, threaten or otherwise discriminate or retaliate…) (emphasis added); *see Bradley v. W. Chester Univ.*, 278 A.3d 402 (Pa. Cmwlth. 2022) (non-precedential). The type of conduct that is actionable under the Law is limited to adverse employment actions of the type that only the public body or its employees with some supervisory authority would have any ability to carry out: namely, discharge or other retaliation "regarding the employee's compensation, terms, conditions, location or privileges of employment[.]" 43 P.S. § 1423(a) & (b). Further, the Act's enumerated remedies pertain to the terms and conditions of employment, such as reinstatement or back pay, which a third party such as the District Attorney or Ms. Ghee would be powerless to provide.  43 P.S. § 1425. Thus, it is plain from the statute's terms and purpose that "employer" does not include each of the tens of thousands of individuals who work for the City, but only those with the ability to influence the terms and conditions of Jacobs' employment – here, the

Philadelphia Police Department, and any public body with supervisory authority over the Department.[9]

Defendants Krasner, Tripp, and Cummings are or were part of the District Attorney's Office. This Office does not exercise supervisory authority over the Police Department and cannot dictate the terms and conditions of Jacobs' employment; instead, the Police Department answers to the Managing Director and the Mayor. *See* Phila. Charter §§ 3-206, 5-100.[10] Likewise, Ghee was an attorney with the Philadelphia Law Department, which provides legal advice to the Police Department but does not have supervisory authority over the Department. *See* Phila. Charter § 4-400. Accordingly, the claims against these defendants should be dismissed with prejudice.

---

[9]  By comparison, in *Rankin v. City of Philadelphia*, 963 F.Supp. 463, 466, 468-69 (E.D. Pa. 1997), the fact of some supervisory control over the terms and conditions of employment was central. There, the Court found that the City and two of its employees were "employers" even though the plaintiff – a building maintenance director – was employed by a private entity (Episcopal Long Term Care) under contract with the City to operate a nursing home in a building leased by the City. The two individual defendants were the City's maintenance director in charge of the building, and the City's liaison or coordinator with Episcopal, so both played a role in the City's supervision of the contract with its agent, Episcopal. The Court also found that the City itself was an "employer" because it had the ability to provide back wages. By contrast, here the Police Department is not a contractor hired by the District Attorney's Office or the Law Department, and neither of those entities have the ability to provide back pay to a police officer. Although the Law's definition of "employer" has since been amended, the *Rankin* Court relied on the language "agent of a public body", whereas the current statute similarly includes individuals who perform work or provide services to a public body. *Rankin*, 963 F.Supp. at 468; *cf.* 43 P.S. § 1422.

[10] The Philadelphia Charter and Philadelphia Code are available at https://codelibrary.amlegal.com/codes/philadelphia/latest/overview.

**E.  Jacobs Fails to Plausibly Plead a Prima Facie Whistleblower Law Claim Against Any Defendant**

Jacobs' "kitchen sink" allegations against the various defendants, despite stretching to 294 numbered paragraphs plus introductory material, fail to identify conduct that is actionable under the Whistleblower Law.

Below, we first set out the legal standards for a claim under the Law, and then discuss the specific allegations against each defendant.  As we will ultimately show, the only report of wrongdoing that would qualify for protection under the Act was Jacobs' call to the Attorney General's office, but none of the alleged retaliation was causally linked to that report. As a result, Jacobs' multitude of grievances against each defendant do not allege a plausible claim under the Law.

**1.  Whistleblower Law Elements**

The Whistleblower Law protects public employees from retaliation by their employers for reporting violations of the law or waste of public funds. *Bensinger v. Univ. of Pittsburgh Med. Ctr.*, 98 A.3d 672, 677 (Pa. Super. 2014); 43 P.S. § 1421, historical notes. To establish a prima facie case under the Law, a plaintiff must show that he made a report of wrongdoing or waste to the appropriate authorities; the plaintiff's employer took some adverse personnel action against him; and that adverse action was causally link to the protected report. *O'Rourke v. Commonwealth*, 778 A.2d 1194, 1200 (Pa. 2001); 43 P.S. § 1423. If the employee makes that showing, then the burden shifts to the employer to establish a legitimate, non-pretextual reason for the adverse employment action. *Id.* (citing 43 P.S. § 1424(c)).

Although Jacobs alleges a long list of alleged misdeeds, his allegations fail on one or several of the necessary elements of this claim: either the conduct reported was not

16

"wrongdoing"; it was not reported to an appropriate authority; and/or there was no causal link between the report and the alleged adverse employment action.

### a.   Much of the Misconduct Jacobs Reported Is Not "Wrongdoing"

First, although Jacobs complained to his superiors about a wide variety of conduct (e.g. the Commissioner's not responding to his memoranda, or being transferred out of the OISI Unit), only a report of "wrongdoing" is actionable under the Law. "Wrongdoing" is narrowly defined by the statute, and is limited to: "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 P.S. § 1422. The standard is objective – that is, "wrongdoing" requires an actual violation, not simply conduct that the employee subjective believes to be wrong or unethical. *Sukenik v. Twp. of Elizabeth*, 131 A.3d 550, 555-56 (Pa. Cmwlth. 2016).

Jacobs does not appear to have attempted to report any violations of law by his own employer, the Police Department. Instead, the only potential violations of the law or a code of ethics are Tripp's supposed use of perjured testimony before the grand jury, and her filing allegedly fabricated charges against Jacobs for leaking grand jury information.[11]

While Jacobs also alleges that the disciplinary action violated Police Department Directive 8.10 ("Preventing Corruption Within Our Ranks – Creating a Values Driven Organization"), which could constitute a "code of conduct" under the Whistleblower Law, 43 P.S. § 1422, he fails to identify an underlying act of corruption within the Police Department

---

[11] We assume for the sake of argument – but do not concede -- that Jacobs has pled actual violations of the law. Assuming his claims were viable otherwise, Jacobs would have the burden of establishing an <u>actual</u> violation, not merely his subjective belief that the law had been violated. *Kimes v. University of Scranton*, 126 F. Supp. 3d 477, 505 (M.D. Pa. 2015); *Riggio v. Burns*, 711 A.2d 497, 501-503 (Pa. Super. 1998).

ranks that he reported pursuant to that policy. 5AC ¶¶ 228-236 & Ex. 15. The Directive cannot

bootstrap his vague allegations of a grand conspiracy against him into an actionable violation of

the Whistleblower Law. Instead, the discipline is more appropriately construed as the claimed

adverse employment action under the Whistleblower Law, not the underlying violation itself.[12]

> ### b. Jacobs Did Not Report the Alleged Misconduct to an "Appropriate Authority"

Second, the only "appropriate authority" to whom Jacobs reported Tripp's alleged

wrongdoing was the Attorney General; his reports to the Police Department and to various media

outlets were not protected.

The Whistleblower Law protects only reports made to an "appropriate authority", which

is defined as: "[a] Federal, State or local government body, agency or organization having

jurisdiction over criminal law enforcement, regulatory violations, professional conduct or ethics,

or waste; or a member, officer, agent, representative or supervisory employee of the body,

agency or organization." 43 P.S. §§ 1422, 1423.

For his report to the Police Department, even though the Law includes reports to the

plaintiff's employer, it does not protect an employee's efforts to inform his employer of any and

all legal violations by third parties. *Gray v. Hafer*, 651 A.2d 221, 224 (Pa. Cmwlth. 1994), aff'd,

669 A.2d 335 (Pa. 1995). Rather, if the "wrongdoing" is not that of the plaintiff's employer, then

it must involve a law that the employer is charged to enforce. *Id.*

---

[12] In addition, to the extent Jacobs characterizes his memoranda to Commissioner Outlaw and former Acting Commissioner Coulter as reporting the Department's own violations of the Whistleblower Law, these memoranda do not meet the Law's definition of a "good faith report", which requires that the report be made "without malice or consideration of personal benefit". 43 P.S. § 1422. While the memoranda accused command staff of "corruption" due to the disciplinary action, they also sought reversal of the disciplinary action, reinstatement of his used sick time, and a transfer to Injured on Duty status. *See* 5AC Exs. 4, 6-11.

However, as Jacobs was informed numerous times, the Police Department is not the proper authority for complaints against the District Attorney's Office. The clear intent of the Whistleblower Law was to allow employees to report wrongdoing the entity with the power to investigate and remediate the alleged violation. *Accord Ambrose v. Twp. of Robinson, Pa.*, CIV.A. 99-1218, 2000 WL 35907776, at *9 (W.D. Pa. Oct. 11, 2000). But even if the Police Department chose to investigate alleged perjury, it could not obtain a search or arrest warrant or file a criminal complaint unilaterally without approval by the District Attorney's Office. *See* Phila. Co. Crim. Div. L.R. 202, 507. Instead, the state Attorney General has authority to investigate and prosecute perjury or corruption by local district attorneys. *See* 71 P.S. § 732-205; *see, e.g. Lutz v. Com.*, 505 A.2d 1356, 1357 (Pa. Cmwlth. 1986). Additionally, the Pennsylvania Supreme Court and its appointed Disciplinary Board, not the Police Department, has exclusive responsibility for enforcing any ethical rules governing a district attorney's conduct. *See* Pennsylvania Rules of Disciplinary Enforcement 103 & 205.[13]

Next, Jacobs' reports to the podcast, the Bigtrial.net website, and other media sources were not made to appropriate authorities with enforcement power. *Dennison v. Pennsylvania Dep't of Corr.*, 268 F.Supp.2d 387, 407 (M.D. Pa. 2003) (media outlets are not appropriate authorities).

Lastly, Jacobs' civil lawsuit is not a report to an appropriate authority because this Court is not a law enforcement agency, regulator, or professional conduct board that polices violations of state criminal law or conduct in state courts. *Cf. Baker v. Benton Area Sch. Dist.*, 418 F.Supp.3d 17, 58 (M.D. Pa. 2019). In addition, Jacobs' lawsuit is not a "good faith" report made

---

[13] Available at https://www.padisciplinaryboard.org/for-attorneys/rules/rule/5/the-pennsylvania-rules-of-disciplinary-enforcement.

"without malice or consideration of personal benefit". 43 P.S. § 1422. On the contrary, Jacobs'

suit sought "personal benefit" in the amount of $10 million. *See* ECF 1 at 5; *cf. Cipriani v.*

*Lycoming Cnty. Hous. Auth.*, 177 F.Supp.2d 303, 331 (M.D. Pa. 2001) (noting evidence of

animosity between plaintiff and supervisor "compromises any finding that his complaints were

made in 'good faith'").

### c. Jacobs Alleged No Causal Link Between the Sole Protected Report (to the Attorney General) and Any Retaliation

Given that the only appropriate authority that Jacobs contacted would be the Attorney

General's Office, his claim fails on a third element of a Whistleblower Law claim: causation.

Mere temporal proximity between a protected report and an adverse employment action, by

itself, is insufficient to show causation. *Golaschevsky v. Dep't of Env't Prot.*, 720 A.2d 757, 759

(Pa. 1998). Instead, "a plaintiff must 'show by concrete facts or surrounding circumstances that

the report [of wrongdoing or waste] led to [the plaintiff's] dismissal, such as that there was

specific direction or information received not to file the report or [that] there would be adverse

consequences because the report was filed.'" *Id.* (quoting *Gray*, 651 A.2d at 225)).

Here, there are no facts linking any alleged retaliation by the Police Department (such as

the disciplinary action) to Jacobs' protected report to the Attorney General. Instead, on the face

of the Complaint, all of the alleged retaliation by the Police Department was due to his

appearance on the podcast or his civil lawsuit. *E.g.* ¶¶ 67, 98-99, 107-108, 121, 219-223. The

Complaint alleges not a single act of retaliation that was causally linked to him contacting the

Attorney General's Office. Further, the Complaint alleges in detail that his superiors <u>encouraged</u>

and directed him to contact the Attorney General or other enforcement authorities to report his

accusations against the District Attorney's Office *E.g.* ¶¶ 77, 87, & Ex. 12.

## 2. Jacobs' Allegations Against Each Defendant Fail to State a Viable Whistleblower Law Claim

In addition to their immunity and statute of limitations defenses, Jacobs' claims against each Defendant all manifest one or more of the global deficiencies in his Whistleblower Law claim. Also, in many instances Jacobs does not identify with particularity any actionable conduct by specific Defendant. We discuss each Defendant below.

### a. District Attorney Lawrence Krasner

In addition to the District Attorney's immunity and the fact that only employers can be liable under the Whistleblower Law, Jacobs fails to plausibly allege that Krasner was personally involved in the claimed Whistleblower Law violation. This deficiency echoes the Third Circuit's finding with regard to Jacobs' federal civil rights claim. *Jacobs*, 2022 WL 1772989, at *3 n.7.

Many of the allegations against Krasner consist of vague statements that he conspired with the Police Department, but without specifying any action that Krasner personally undertook as part of this claimed conspiracy. E.g. ¶¶ 59, 215, 216, 237, 265, 269, 271. However, "conspiracy" is a legal conclusion, not a factual allegation. A "bare assertion of conspiracy" will not satisfy *Twombly* and *Iqbal*'s plausibility standard. *Twombly*, 550 U.S. at 556.

Although Jacobs also alleges that Krasner was involved with Tripp's decision to initiate a criminal investigation of Jacobs for leaking grand jury information, "retaliation" by a non-employer is not actionable under the Whistleblower Law. But further, Jacobs does not allege any personal involvement in the investigation beyond a conclusory statement that he "ordered and approved" this action. ¶ 269. *Cf. Iqbal*, 556 US. at 681 (rejecting allegations that defendants "knew of, condoned, and willfully and maliciously agreed" to the illegal conduct as "bare assertions" not entitled to assumption of truth). The same deficiency strikes his allegation that Krasner "ordered the PPD" (and specifically, Wilson and Healy) to take disciplinary action

21

against him. ¶¶ 59, 98, 269. In addition, the latter allegation is not credible because the District Attorney does not have direct supervisory power over the Department and therefore cannot "order" police officials to do anything. *See* Phila. Charter §§ 3-206, 5-100.

### b.   Assistant District Attorney Tracey Tripp

Just as with the allegations against the District Attorney, Jacobs' attempt to cast Tripp's investigation of him as retaliatory fails because she is immune and she was not his employer. In addition, with regard to actions potentially affecting Jacobs' employment, Jacobs alleges: (1) that Tripp told his supervisors she wanted Jacobs removed from the OISI Unit, (2) that she threatened Lt. Hendershot, Jacobs' supervisor, that she would prosecute the entire OISI Unit unless Hendershot revealed who had spoken to the unidentified attorney about the grand jury testimony; and (3) that Inspector Healy initiated a disciplinary investigation of Jacobs "on behalf of Krasner and Tripp"." ¶¶ 11, 21. However, as discussed above, Tripp had no authority to force the Department to initiate an internal disciplinary action, and her merely speaking with Hendershot or other supervisors do not constitute an adverse employment action under the Law.

### c.   Patricia Cummings

In addition to immunity, statute of limitations, and the fact that Patricia Cummings (formerly head of the District Attorney's Office's Conviction Integrity Unit) was not Jacobs' employer, Jacobs has failed to plausibly allege any causal link between Cummings' actions and any adverse employment decision affecting Jacobs.

The sole factual allegation involving Cummings is that she and Tripp attended a meeting in or around August of 2018 with some of Jacobs' superior officers, at which Cummings and Tripp allegedly stated that they wanted Jacobs removed from the OISI Unit. ¶¶ 11, 272. Other than his vague references to conspiracy, Jacobs does not allege any causal link between this

22

meeting and any adverse employment action. On the contrary, he alleges that "The Plaintiff's superiors disagreed with the removal, indicating they were the best two detectives in the unit and were personally recruited for their investigative acumen", and Deputy Commissioner Wilson "seemed stunned" when informed of this conversation. *Id*. ¶ 11. Additionally, this meeting took place around 18 months before Jacobs was actually removed from the OISI Unit, which does not support an inference of Cummings' participation in the hazy alleged conspiracy against Jacobs. *Id*. ¶¶ 140, 276 (removed from OISI in March 2020). *See Golaschevsky*, 720 A.2d at 759.

### d. Kia Ghee

In addition to the statute of limitations, immunity, and the fact that Ghee was not Jacobs' employer, the Complaint does not identify any actionable conduct that she undertook. First, Jacobs alleges that some of his memoranda to the Police Commissioner were "redirected" to Ghee by someone in the Police Department. 5AC ¶ 291. This does not state any action by Ghee, and is not a violation of any law or code of conduct such as to be actionable under the Whistleblower Law. Second, Jacobs alleges: "Prior to Jacobs' January 30, 2020 disciplinary interview Hendershot and Ghee communicated on multiple occasions to formulate questions showing Jacobs violated Departmental policy." ¶ 273. Jacobs ignores that the Law Department is legal counsel to the Police Department, and Ghee represented Hendershot and other Police Department defendants once Jacobs added them to his Third Amended Complaint. *See, e.g.* ECF 28. Even if Jacobs had properly pled a viable conspiracy claim, the law does not recognize a "conspiracy" between a lawyer and her client when she is acting in the scope of her representation. *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999).

### e.   Commissioner Outlaw

In addition to the Commissioner's immunity, and even assuming Jacobs' memoranda and emails to Commissioner Outlaw were protected reports of wrongdoing under the Whistleblower Law (which they are not), he also does not allege any unlawful actions by the Commissioner. Instead, the complaint alleges only: (1) that Jacobs heard a rumor (the source of which he fails to identify) that the Commissioner would take direct disciplinary action (Commissioner's Direct Action or "CDA") against him, 5AC ¶ 132; (2) he sent Commissioner Outlaw numerous memoranda regarding his accusations against the District Attorney's Office and the disciplinary proceeding against him, but she did not respond as he had requested, 5AC ¶¶ 118-120, 142-147, 162-200, 270; and (3) she ordered Quinn to inform him that it was inappropriate for him to continue sending such correspondence to the Commissioner, ¶ 270. Jacobs does not allege that the Commissioner actually took direct action to discipline him, nor does he plead whether or how the Commissioner was involved in the disciplinary proceeding that did occur (which resulted in the Conduct Unbecoming charge).

Additionally, the Commissioner's simply not responding to his numerous memoranda and demands for a meeting is not actionable conduct affecting the terms or conditions of his employment. The Whistleblower Law imposes liability for adverse employment actions, not for refusing to respond to or investigate the whistleblower's accusations. 43 P.S. §§ 1422, 1423. Lastly, these allegations appear to conflict with Jacobs' other claim that other Police Department defendants "intercepted" the memoranda and therefore the Commissioner did not receive them. ¶ 291.

### f.   Deputy Commissioner Coulter

In addition to immunity, the allegations against Commissioner Coulter are even more cursory than those against Commissioner Outlaw. The Complaint alleges that she also did not respond to Jacobs' memoranda sent to her while she was Acting Commissioner, but also that the memoranda were "intercepted" by others within the Department and never reached her. ¶¶ 47-51, 57-58, 50-52, 117, 291. As with Commissioner Outlaw, Coulter's lack of response to Jacobs' memoranda is not actionable conduct under the Whistleblower Law. Jacobs also makes a vague and conclusory statement that Coulter "violated Philadelphia Police Department policy during the retaliatory actions against Jacobs", but does not state what policy, how she allegedly violated it, or how that violation was actionable under the Whistleblower Law. ¶ 268.

### g.   Chief Inspector Dennis Wilson

Jacobs alleges that Wilson initiated the disciplinary investigation of Jacobs for appearing on the podcast, which he claims was retaliatory. ¶¶ 98-99, 107-108, 121, 126-127, 221, 274. However, Jacobs alleges, clearly and repeatedly, that the discipline was for his participation on the podcast, which is not a protected report to an appropriate authority. *E.g.* ¶ 99 ("On January 22, 2020 Hendershot informed Jacobs; Defendant Wilson wants a disciplinary investigation started immediately against Jacobs for his participation in the Search Warrant podcast."); ¶ 108 ("The disciplinary interview was for **Jacobs' participation in the podcast.**") (emphasis in original); ¶ 121 ("On February 10, 2020 retaliatory disciplinary charges (75-18s) were authored by Defendant Pace per Defendant Hendershot against Jacobs for his participation in the podcast."); ¶ 224 ("The disciplinary documents actually state the reason for the charges were because Jacobs spoke out against the DAO and Krasner during [the] podcast.").

The other allegations against Wilson appear to be merely background information and not conduct potentially violating the Whistleblower Law. Namely, Jacobs alleges that Wilson was present at the August 2018 meeting with Cummings and Tripp; that he disapproved Jacobs' request to speak directly with the Police Commissioner and wrote a response informing Jacobs that "PPD is not the proper authority to investigate the 'victimization' by the DA's office"; that he "commended Jacobs on his fight against the corruption at the DAO" and encouraged Jacobs to direct his complaint against Tripp to the Attorney General's Office; and that he did not respond when Jacobs asked Hendershot to ask Wilson to file a complaint against Tripp with the U.S. Attorney. ¶¶ 11, 62, 68, 75-89, 92-95, 104. None of these events constitute retaliation with respect to the terms and conditions of employment, which is the only conduct actionable under the Whistleblower Law. 43 P.S. § 1423.

### h.  Deputy Commissioner Benjamin Naish

Against Naish, Jacobs alleges only (1) that he was an "appropriate authority" to report corruption because he was within the chain of command , ¶ 93, and (2) he "conspired to intercept memorandums" Jacobs wrote to the Police Commissioner. ¶ 277, 291. The first allegation is insufficient, both because nobody within the Police Department was an appropriate authority (*see* Section E(1)(b), above), and additionally because the Law does not impose liability on an "appropriate authority" simply for failing to take enforcement action. The second allegation does not describe an actionable adverse employment action; that is, Wilson's alleged diversion of memoranda addressed to the Commissioner did not adversely affect the terms and conditions of Jacobs' employment. 43 P.S. § 1423(a) & (b).

### i.   Chief Inspector Frank Vanore

Jacobs alleges that Vanore, like Naish, was an "appropriate authority" and participated in an alleged scheme to intercept his memoranda to the Commissioner. 5AC ¶¶ 93, 291. As discussed above, this conduct is not actionable.

Jacobs also alleges generally that Vanore participated in the disciplinary investigation and conspired with Hendershot to have Jacobs removed from the OISI Unit. ¶¶ 276, 285. The Complaint does not state what Vanore's role was in the alleged conspiracy, what actions he took against Jacobs, or whether he did so with the intent to retaliate for any protected conduct. This is akin to the bare recitation that defendants "knew of" and "agreed" to join the challenged conduct that the Supreme Court rejected in *Iqbal*, 556 US. at 681.

### j.   Inspector Francis Healy

Apart from the untimeliness of Jacobs' claim against Healy, the sole allegation against him is that he initiated an investigation of Jacobs around November 15, 2019 after Jacobs filed his civil lawsuit. ¶¶ 59, 275. This appears to be a separate internal investigation from the one that led to the disciplinary charges against him; that investigation was allegedly instituted by Chief Inspector Wilson as a result of the January 18, 2020 podcast. ¶¶ 96, 98-99. Jacobs does not allege that Healy's investigation led to any adverse employment action. In addition, though Jacobs claims this investigation retaliated against him for filing this lawsuit, a civil lawsuit is neither a report of wrongdoing to an appropriate authority (i.e. an authority with enforcement power), nor was his damages lawsuit a "good faith" report made without expectation of personal benefit. 43 P.S. § 1422.

### k.  Inspector DF Pace

Jacobs alleges that Pace authored and approved the charging documents for the Conduct Unbecoming charge. ¶ 121, 126, 223, 278. As discussed with the allegations against Wilson, who Jacobs claims was the driving force behind the disciplinary matter, Jacobs does not plausibly plead that the discipline was causally linked to his protected report of wrongdoing, but instead, that it was due to his participation on the podcast.

### l.  Lieutenant Jason Hendershot

Jacobs' primary allegation against Hendershot was that he participated in the disciplinary investigation that resulted in the Conduct Unbecoming charge. ¶¶ 126, 221-223, 276, 284-85. As previously discussed, Jacobs alleges that this this discipline was in response to the podcast, not in response to a potential report to the Attorney General or other appropriate authority. Further, Jacobs does not allege what Hendershot's role was, other than he "witnessed" the disciplinary action.

Jacobs also alleges that Hendershot took away his unmarked police vehicle in 2019 and stopped Jacobs' overtime in retaliation for his filing the civil lawsuit. ¶¶ 64, 67, 281, 284. However, as discussed above with Healy, a lawsuit is not a protected, good-faith report to an appropriate authority.

Jacobs also alleges that Hendershot took away the police vehicle in March of 2020. ¶¶ 140-41. He does not allege any connection between this action and any protected report of wrongdoing. Instead, although Jacobs does not make this connection explicit, it appears to be related to the disciplinary investigation. As we showed previously, Jacobs alleged that the disciplinary action was in response to the podcast, which is not a protected report of wrongdoing to an appropriate authority.

28

Various other allegations against Hendershot are similar to those against the other defendants, which as we showed above, was not actionable conduct. Specifically, Jacobs alleges that he reported Tripp's alleged wrongdoing to Hendershot, who failed to take action, ¶¶ 280, 282 (*see* above re Wilson); Hendershot intercepted memoranda to the Police Commissioner (*see* above re Naish); he assisted with Healy's investigation, ¶ 59 (*see* above re Healy); and Jacobs asked him to ask Wilson to contact the U.S. Attorney's Office, ¶¶ 90-95, 104 (*see* above re Wilson).

### m.  Lieutenant Patrick Quinn

The sole allegation against Quinn is that he sent an email on October 9, 2020 responding to Jacobs' repeated messages to Commissioner Outlaw, stating it was "inappropriate and disruptive" for Jacobs to continue sending emails and memoranda to the Commissioner. ¶¶ 200-201, 245-248. Although Jacobs claims this email was a threat that he would be charged with insubordination if he contacted the Commissioner again, no such threat appears on the face of the email. Further, Jacobs' emails and memoranda were not protected reports of wrongdoing to an appropriate authority, so even if Quinn's email could plausibly be construed as a threat in retaliation for those memoranda, it would still not be actionable under the Whistleblower Law.

### n.  The City

Lastly, Jacobs appears to name the City itself solely on the basis of respondeat superior liability. He points to no official act or policy of general applicability as the source of his alleged injuries. As the claims against the individual City employees are unavailing, the City should also be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court dismiss Jacobs'

Whistleblower Law claims against all defendants.

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
DIANA P. CORTES, City Solicitor

Dated: September 15, 2022

*/s/ Nicole S. Morris*
Nicole S. Morris
Chief Deputy City Solicitor
Pa. Atty. I.D. No. 88265
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
(215) 683-5075 (phone)
(215) 683-5099 (fax)
Nicole.Morris@phila.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date indicated below, I filed, via the Court's ECF system, a true and correct copy of the attached Defendants' Motion and Memorandum of Law in Support of Defendants' Motion to Dismiss Whistleblower Act Claim. I further certify that I sent the filed documents to Plaintiff at the address provided below, both by regular mail and electronic mail.

Derrick Jacobs
PO Box 1454
Berlin, MD 21811

Derrick Jacobs
P.O. Box 56091
Philadelphia, PA 19130

derrickjacobs9116@gmail.com

Date:   September 15, 2022                    _/s/ Nicole S. Morris___
                                             Nicole S. Morris, Esq.

31