## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Derrick Jacobs,** | : | CIVIL ACTION |
| Plaintifff, | : | |
| | : | No. 19-CV-4616 |
| v. | : | |
| | : | |
| **CITY OF PHILADELPHIA, et al.** | : | |
| Defendant. | : | |

## <u>REQUEST FOR RECUSAL</u>

Pro Se Plaintiff, Derrick Jacobs, hereby request the Honorable **Judge Harvey Bartle III** to recuse himself from the above listed matter. In the Plaintiff's opinion the Court has a racially and/or personality motivated bias against the Plaintiff. The Court has abused its discretion in favor of the defendants on multiple matters. This Court has "parroted" the defendants' claims, without any supporting facts, causing irreparable harm and damage to the Pro Se Plaintiff. For these reasons the Pro Se Plaintiff requests this Court's recusal.

I.  **<u>28 U.S.C. § 455 (1988)</u>**

   **ANY justice, judge, or magistrate of the United States shall disqualify himself in ANY proceeding in which his impartiality might reasonably be questioned.**

   The impartiality and neutrality of judges is an indispensable feature of the American justice system. An impartial judiciary is imperative to ensure procedural fairness to individual litigants and to preserve public confidence in the integrity of the judicial process. Realizing these objectives requires that

judges be neutral and unbiased in fact. Preserving public confidence, however, additionally requires that judges present an appearance of scrupulous impartiality even in the absence of any actual bias. For the judiciary to maintain its authority in the public eye, "justice must satisfy the appearance of justice," at all times.

## II.    **Racial and/or Personal animus against the plaintiff by the Court**

On November 21, 2022, the Court held a rule 16 conference inside of the courtroom 16A. Prior to the conference, the plaintiff had NEVER personally encountered **Judge Harvey Bartle III**. Judge Bartle summoned security on the black male plaintiff for his "protection" (German Shepherds and water not available). The plaintiff, at ALL times, handled himself with meticulous professionalism during the conference although seething inside by the actions of the Court against a former law enforcement officer, who was highly decorated. On November 22, 2022, the plaintiff authored correspondence to the Court expressing his concerns with the Court's racially bias treatment. The Court inferred the PLAINTIFF and former LEO was an uncontrollable black baboon, who would attack a federal court judge (**Exhibit A**). The Court to date has never addressed the plaintiff's concerns, choosing only to continue with his bias legal decisions and manipulation of the record.

The Court also showed its disdain for the black plaintiff when he DENIED his Request for "Emergency Injunctive Relief" who was facing termination by the defendants through a "constructive discharge." The Court's DENIAL was without OPPOSITION from the defendants, thereby destroying Jacobs' black

family INTENTIONALLY.  The Court had within its power to save Jacobs' employment, but chose not to (ECF 26) without explanation. Jacobs informed the Court he would suffer irreparable harm and be constructively discharged or terminated without the Court's intervention (Document 25, page 2, paragraph 4).

III.   **Procedural History**

**The Court has DENIED every Motion by the Plaintiff. The Court has GRANTED every Motion by the Defendants.**

The plaintiff admits at the time of the initial filing on October 4, 2019, he did not know a federal question from a question on a calculus test. The only thing the plaintiff knew was that the defendants retaliated against him for reporting corruption. The defendants smelling blood in the water immediately filed a 12(b)3 Motion to Dismiss for lack of jurisdiction. The plaintiff immediately researched the defendants' motion and filed an amended complaint as a matter of course. The Court DENIED the defendant's motion to dismiss as moot (This would be the ONLY DENIAL of any defendant's motion).

1. The defendants' filed a motion for a 30 day extension on 11/22/19 (ECF 6). The Court GRANTED the extension of 34 days on 11/26/19 (ECF 7).

2. On 2/3/20 the Court issued an ORDER that defendants' would file their motion to dismiss by 2/18/20 and the plaintiff must reply by 3/3/20 or the complaint would be dismissed WITH prejudice (ECF 10).

3.  After missing the 2/18/20 deadline, the defendants contacted the plaintiff on 2/19/20 requesting a stipulation for an extension, which the plaintiff agreed and the Court GRANTED (ECF 12).

4.  The defendants file their motion to dismiss on 2/25/20 (ECF 13).

5.  The plaintiff filed his reply on 3/3/20 (Document 14).

6.  The Court DISMISSED the plaintiff's claims WITH PREJUDICE on 4/9/20 (ECF 16).

7.  The plaintiff appealed to the Third Circuit Court of Appeals on 5/6/20 (ECF 18) *Note: Appealed filed by plaintiff's former counsel Bochetto and Lentz, P.C.*

8.  The Third Circuit Court of Appeals Affirmed in part and VACATED in part the plaintiff's appeal on December 1, 2020 (ECF 21). Note: Plaintiff's counsel withdrew representation on 6/30/20 (20-1967, ECF 11) and the Court GRANTED the withdrawal on 7/6/20. Plaintiff filed appeal on 7/20/20 (Document 15, 20-1967).

9.  On 1/4/21 the plaintiff attempted to file a NEW civil complaint by ECF against the Philadelphia Police Department for retaliation and threatened termination of employment. The plaintiff was informed to contact Gail Olson for ECF privileges. The plaintiff contacted Ms. Olson who informed the plaintiff he was a pro se plaintiff attempting to file a "new" civil complaint and he was under time constraints. Ms. Olson informed the plaintiff he would need to fill out a form to receive permission for electronic filing. On 1/5/21, the plaintiff emailed Ms. Olson the filing

form. On 1/6/21 Ms. Olson informed the plaintiff he would need

permission from Judge Bartle for filing privileges. On 1/7/21 after not

receiving an answer from Judge Bartle or Clerk, the plaintiff contacted

Ms. Olson seeking assistance. On 1/7/21 Ms. Olson informed the plaintiff

to file his complaint at PAED_Documents@paed.uscourts.gov (**Exhibit**

**B**). On 1/8/21 the plaintiff filed his "NEW" complaint against the PPD

after being unable to obtain ECF privileges (21-128, Document 1).

10. On 1/4/21 the Court issued an ORDER to everyone, ***but the pro se***

***plaintiff*** to file a "second amended" complaint by February 1, 2021, or

complaint would be DISMISSED WITH PREJUDICE (ECF 22). *Note:*

*pro se plaintiff was NEVER served ORDER by Court.*

11. On 1/14/21 the plaintiff filed a Motion for Emergency Injunctive Relief

(21-128, Document 3).

12. On 1/25/21 the Court redirected the plaintiff's filings because it was

"clear" to the Court the plaintiff was black, uneducated, and incompetent

to know what his was doing. The Court therefore stated he was redirecting

the plaintiff's NEW complaint against the PPD as the "Second Amended

Complaint" in the matter against the DAO because the Clerk

"inadvertently" docketed the plaintiff's (Court's bias) intentions (ECF 23

and 21-128, ECF 4). ***Note: The Court still has not SERVED the plaintiff***

***his 1/4/21 ORDER (Document 22).***

13. On 1/25/21 the COURT (not plaintiff) filed the plaintiff's "new"

complaint (21-128) as the plaintiff's "Second Amended Complaint" (ECF

24, 24-1, 24-2). ***Note: The Court still has not SERVED the plaintiff his***
***1/4/21 ORDER (Document 22).***

14. On 1/25/21 the Court filed the plaintiff's Motion for Emergency Injunctive
Relief against the PPD (21-128, Document 3) as (ECF 25).

15. On 1/25/21 the Court DENIED the plaintiff's Motion for Emergency
Injunctive Relief (ECF 26). The Court DENIED the motion without any
OPPOSITION from the defendants. Why? What did the Court know?

16.  Panicked by the actions of the Court, the pro se plaintiff hastily filed HIS
RESPONSE/"Second Amended" complaint (Document 27) on 1/26/21.
The Court "categorized" this as the plaintiff's "Third Amended
Complaint" ("TAC").

17. On 2/10/21, the defendants filed their motion to dismiss the plaintiff's
complaint (ECF 28).

18.  On 2/24/21 (filed by court on 2/25/21) the plaintiff filed his response to
the defendants' motion to dismiss (Document 29, 29-1). The Court
"categorized" this filing as the plaintiff's "Fourth Amended Complaint"
("FAC").

19.  On 2/24/21 the Court contacted the plaintiff's former counsel, (Bochetto
& Lentz, P.C.) and instructed them to "officially" withdraw as counsel.
This was done so the Court could DISMISS the plaintiff's claims without
affecting counsel. The Court conducted this communication without the
plaintiff's knowledge or consent. If the plaintiff was informed of the

multiple errors by the Court, albeit intentional, they could have been avoided with discussion.

20. On 3/1/21, the plaintiff's former counsel filed its motion to withdraw (ECF 30).

21. On 3/2/21, the Court GRANTED the "uncontested" motion of the plaintiff's former counsel to withdraw (ECF 31).

22. On 3/2/21, the Court then proceeded to adopt the pro se plaintiff's initially filed response to the defendants' motion to dismiss, which was mandated as a FLAWED FAC (Document 29) without "Malicious Prosecution" (which had been part of the complaint) as the operative pleading post-facto. The Court accomplished altering the plaintiff's motion to dismiss response by denying the defendants' motion to dismiss as moot. This allowed the Court to change a response into an amended complaint for the record. The Court then allowed the defendants to respond to the FLAWED FAC by 3/22/21 and the plaintiff to file their opposition by 4/8/21 (ECF 32).

23. On 3/20/21, the defendants filed their motion to dismiss the plaintiff's complaint for failure to state a claim (ECF 33).

24. On 4/8/21 the plaintiff filed his response in opposition of the defendants' motion to dismiss. The plaintiff also attempted to address the FLAWS in the Court's mandated FAC (Document 34).

25. On 6/16/21, the Court GRANTED the defendants' motion to dismiss the plaintiff's claims (ECF 36) and authored a "Memorandum" that lacked

candor and inserted their own conclusions not based on facts (ECF 35). The Court maliciously stated the plaintiff violated Rule 15. The Court altered the filings create the "illusion of violations."

26.  On 7/12/21, the plaintiff filed Notice of Appeal to the Third Circuit Court of Appeals (Document 37).

27. On 6/1/22, the Third Circuit Court of Appeals AFFIRMED in part and VACATED in part the plaintiff's appeal (ECF 40, 21-2314, ECF 26).

28. On 6/30/22, the Court ORDERED the plaintiff to file an "Amended Complaint" only addressing the PA Whistleblower Law (This was a deliberate action by the Court to keep the plaintiff from amending his complaint to receive Justice for the defendants' actions) This would also cover up the complicity of the Court (ECF 41).

29. On 7/13/22 (filed by Clerk on 7/14/22) filed his Court ORDERED PA Whistleblower Complaint (Document 42).

30. On 7/27/22, the plaintiff filed his first Motion for the Court's Recusal (Document 43).

31. On 8/4/22, the defendants, (confused by the Court's bias against the plaintiff) and in violation of Local Rule 7.1 (failing to respond in a timely manner) filed a "PROPOSED ORDER." The "proposed order" initiated by the defendants to the Court would allow the plaintiff to file a "Six Amended" complaint and the defendants would have sixty (60) days to respond, or in the alternative, documents 29 and 42 would be the operative

pleading(s), which if allowed would make the plaintiff's filings "uncontested," pursuant to the Local Rules of Civil Procedure (ECF 44).

32. On 8/8/22, the Court DENIED the plaintiff's request for recusal (ECF 45).

33. On 8/8/ 22, the Court GRANTED the defendants' request for "clarification" and combined Documents 29 and 42 as the "operative pleading" and gave the defendants until 9/8/22 to respond (ECF 46). The defendants (attorneys) receive "clarification" and were allowed to violate the Local Rules of Civil Procedure. The Court constantly threatens plaintiff with DIMISSAL WITH PREJUDICE. The Court also allowed the defendants (attorneys) to respond a second time to document 29 and late to document 42.

34.  On 9/2/22, the plaintiff filed a Motion for Leave to Amend to file "Six Amended" complaint (according to Court filings). The plaintiff informed the Court he has acquired new evidence to support the leave to amend (Document 47).

35. On 9/2/22, the plaintiff filed a request for ECF privileges for the third time (Document 48).

36. On 9/7/22, the defendants requested an additional seven (7) day extension to adhere to the Court's ORDER (ECF 46) allowing them additional time to the late and second filings already violated (ECF 49).

37. On 9/7/22, the Court GRANTED the defendants' request for a seven (7) day extension (ECF 50). What's amazing is the extremely quick response to the defendants' "proposed order" (same day) while "zero" response to

the plaintiff's third request for ECF privileges and Request for Leave to Amend, both filed on 9/2/22.

38. On 9/12/22, the Court DENIED (shocker) the plaintiff's request for leave to amend, even though the plaintiff claimed to have uncovered new evidence. The bias Court challenged Jacobs' recent acquisition of the new evidence and fabricated his ORDER to justify his racial and/or personal bias against Jacobs (ECF 51).

39. On 9/15/22, the defendants filed their motion to dismiss the plaintiff's PA Whistleblower claim (ECF 52).

40. On 9/15/22, the defendants filed their affirmative defenses to the plaintiff's FAC (ECF 53).

41. On 9/15/22, the plaintiff filed his second request of the Court's recusal (Document 54). The plaintiff attached Exhibit 1 (Document 55 – 55-3) showing the plaintiff was never served the Court's 1/4/21 ORDER, thereby the Court clearly erred by filing the plaintiff's new complaint against the PPD as his SAC. This single error and the Court's subsequent bias denials of leave to amend clearly are intentional, nefarious, and prejudicial to the pro se plaintiff. Meanwhile the Court continues to provide lawyers every advantage to crush the pro se plaintiff.

42. On 9/19/22, the Court DENIED the plaintiff's second request for recusal (ECF 58).

43. On 9/19/22, the plaintiff filed a request for leave to amend (Document 59). The plaintiff cited numerous instances of new evidence in response to the

Court's previous DENIAL citing "undue delay" to acquire evidence "intentionally" hidden by the defendants.

44. On 9/21/22, the Court DENIED the plaintiff's request for leave to amend (ECF 60).

45. On 9/22/22, after observing the clear bias of the Court and the constant abuses of discretion, the plaintiff again requested leave to amend due the Court's obvious agenda of DISMISSAL prior to trial (ECF 61).

46. On 9/26/22, the Court now citing "generosity" and "interest of justice" DENIED the plaintiff's request for leave to amend (ECF 62). The generosity and justice reminds me of the Inflation Reduction Act (both lack candor).

47. On 9/26/22, the Court finally GRANTED the plaintiff Electronic Court Filing ("ECF") privileges (ECF 63).

48. On 10/6/22, the plaintiff filed a Motion for Reconsideration, citing several new evidentiary revelations and newly obtained evidence (ECF 64).

49. On 10/18/22, the bias Court DENIED the plaintiff's **UNCONTESTED** Motion for Reconsideration (ECF 65).

50. On 10/20/22, the Court GRANTED the defendants' motion to dismiss the plaintiff's PA Whistleblower claims (ECF 67).

51. On 11/3/22, the Court scheduled a Rule 16 conference for 11/22/22 inside Courtroom 16A (ECF 68).

52. On 11/7/22, the Court rescheduled the conference for 11/21/22 (ECF 69).

53. On 11/16/22, the plaintiff requested the Court's recusal for racially motivated bias and numerous abuses of discretion against the plaintiff (ECF 70).

54. On 11/16/22, the plaintiff filed Notice of Appeal of the DISMISSAL of the plaintiff's PA Whistleblower complaint (22-3181) (ECF 71).

55. On 11/17/22, the Court DENIED the plaintiff's request for recusal (ECF 72).

56. On 11/21/22, the Court held a rule 16 conference inside courtroom 16A. Present during the conference were **Judge Harvey Bartle III**, Nicole Morris from the Philadelphia City Solicitor's Office, Plaintiff Derrick Jacobs, Judge Bartle's female assistant, and a security officer summoned by Judge Bartle to protect everyone from the plaintiff, Derrick Jacobs. During the conference, numerous issues were discussed. Jacobs' explained to the Court complaint number 21-3428 had not been adjudicated. The Court looked at the Ms. Morris and stated that's duplicative; right? Jacobs informed the Court it was not duplicative and it was not adjudicated and the Court had stayed the matter. At that moment, the assistant left the room to research the matter. The assistant returned and confirmed the facts as stated by the plaintiff. The plaintiff also discussed the continuous denials by the Court and the newly acquired evidence obtained by the plaintiff, which had been hidden by the defendants. Finally, the plaintiff informed the Court of the defendants' (Krasner and Tripp) involvement in the plaintiff's constructive discharge from the Philadelphia Police

Department. The Court informed the plaintiff he could not stop the plaintiff from filing any paper (this was news to the plaintiff who had received constant threats of dismissal from the Court if the pro se plaintiff "slipped on any banana peel"). The plaintiff informed the Court that Krasner and Tripp conspired with Jacobs' superiors at the PPD through their attorney, Kia Ghee to terminate Jacobs' career. Krasner ordered the PPD (Wimberly, Wilson, Vanore, and Hendershot) to terminate Jacobs' Law Enforcement Career. When Jacobs brought this new information to the Court's attention, Nicole Morris informed the Court that Kia Ghee was representing all parties during her participation in the conspiracy to retaliate against and terminate his law enforcement career for Jacobs for reporting corruption. All witnessed by the Court's security protection from the dangerous "because he is black" Jacobs. The Court discussed the scheduling order and the conference ended.

57. On 11/21/22, the Court issued its first scheduling order (ECF 74). The ORDER informed the parties to have fact discovery completed by 3/31/23 and motions for summary judgment filed by 4/17/23.

58. On 11/22/22, the plaintiff authored a letter to the Court attempting to receive justification for the "clear" demonstration of racial and/or personal animus directed at the plaintiff during the Rule 16 conference (**Exhibit A**).

59. On 12/15/22, pursuant to the conversations between parties and the Court during the Rule 16 conference held on 11/21/22, the plaintiff filed his motion for reconsideration and request for leave to amend (ECF 75

through 75-15). The plaintiff submitted multiple attachments/exhibits of "new" items of evidentiary value in support/defense of the plaintiff's claims.

60. On 1/10/23, the defendants, in violation of the Local Rules of Civil Procedure filed their response to the plaintiff's motion for reconsideration (probably after a call from the court informing them of their tardiness). The Court normally would DENY the plaintiff's motion without a defendant response. The highlights of the defendants' response were the numerous bias rulings against the plaintiff by the Court and the parroted comments of generosity of the Court and defendants (ECF 76).

61. On 1/12/23, the Court DENIED the plaintiff's request for reconsideration and leave to amend. The Court deemed the request "out of time" (the bias is glaring, as the motion should have been GRANTED as UNCONTESTED). The Court has a consistent pattern of DENYING and THREATENING the plaintiff while claiming it's in the "interest of justice" (ECF 77).

62. On 1/26/23, the plaintiff filed another motion for reconsideration and leave to amend (ECF 78). It is clear at this point the racist court is acting in concert with the defendants as both cannot defend the claims, their only remedy is to adjust the record to survive the Court's planned DISMISSAL on Summary Judgment motion in an effort to survive another Third Circuit Appeal.

63. On 2/14/23, the Third Circuit Court of Appeals dismissed the plaintiff's appeal for jurisdictional defects (ECF 79).

64. On 2/17/23, the defendants through their new counsel requested an extension until 3/3/23 to respond to the plaintiff's motion for reconsideration (ECF 78) due to the "complex procedural history" (the Plaintiff files a motion, the Court issues a denial). Once again the defendants have violated the Local Rules of Civil Procedure (7.1) and request additional advantages against the pro se plaintiff (ECF 83).

65. On 2/21/23, the plaintiff filed his response in opposition to the defendants' request for an extension. The plaintiff cited the defendants' repeated violations of the Local Rules of Civil Procedure (ECF 84).

66. On 3/3/23, the defendants filed its opposition to the plaintiff's request for reconsideration and leave to amend (ECF 85).

67. On 3/14/23 the defendants requested a ninety (90) day extension until 6/30/23 to complete discovery (ECF 90).

68. On 3/14/23, the Court scheduled a telephone conference with the parties at 3/15/23 at 3:30pm (ECF 91).

69. On 3/15/23, the Court held a telephone conference at 3:30pm. Present during the conference were **Judge Harvey Bartle III**, the plaintiff, Samantha Banks, Monica Matias Quinones, Ashley Coates, and John Gonzalez. Judge Bartle's law clerk, Sabrina Menhas was also present during the conference. The Court requested the conference to address

scheduling in light of the defendants' "11th hour" change of counsel (at the

plaintiff's and other City of Philadelphia taxpayers).

70. During the conference, lawyers for the defendants requested a ninety (90)

day extension due to the "overly broad" (a term used by lawyers when

they do not wish to provide discovery in support/defense of a parties'

claim. Furthermore, the discovery was requested from the City of

Philadelphia, which employs hundreds of lawyers) discovery request from

the plaintiff. The plaintiff attempted to stipulate to the extension in

exchange for a stipulation from the defendants for leave to amend. Prior to

the defendants' accepting or denying the plaintiff's stipulation request, the

Court intercepted the request and GRANTED the defendants' extension

and informed the plaintiff he would revisit (the Court's term for DENIAL)

the plaintiff's motion for reconsideration and leave to amend.

71. On 3/16/23, the Court issued his "Second Scheduling ORDER"

GRANTING the defendants ninety (90) day extension and actually

providing a one hundred six (106) day extension until 6/30/23, prejudicing

the plaintiff once again (ECF 92).

72. On 3/20/23, the plaintiff issued his response to defendants' opposition to

plaintiff's motion for reconsideration (ECF 93).

73. On 3/29/23, the Court DENIED (shocker) the plaintiff's request for

reconsideration. The Court totally disregarded the November 21, 2022

conference. The Court infers in the record he cannot allow the plaintiff

amendments on end. This statement/record LACKS CANDOR (ECF 94).

**IV.**   **The Court's and Defendants' Amendment Fabrications**

The Court and defendants would have the Third Circuit Court of Appeals

(their target audience, not a jury of the plaintiff's peers) believe they have

afforded the pro se plaintiff every opportunity by allowing him a plethora of

amendments to his claims/defenses. The parties lack candor in this regard.

The plaintiff has been afforded "two" amendments, one unrestricted, not the

five, six, seven the Court and defendants have authored and presented in the

intentionally manipulated record. The plaintiff has as a matter of course

authored an amendment. The second was a FLAWED amendment (response)

after the Court injected the proverbial ink in this matter's water. On January 4,

2021, after the plaintiff contacted the Court seeking ECF privileges to file a

new matter. On January 4, 2021, the Court issued an ORDER (not served on

plaintiff) instructing the plaintiff to file a second amended complaint by

February 1, 2021 (Question: Why didn't the Court serve the pro se plaintiff?

This question has never been answered). After not hearing from the Court

regarding ECF privileges, the plaintiff contacted Gail Olson on January 5,

2021. Ms. Olson indicated the plaintiff would have to receive permission from

**Judge Harvey Bartle III**. After plaintiff was unable to contact anyone for

two days regarding the filing of the "new" complaint against the PPD, the

plaintiff contacted Ms. Olson again on January 7, 2021, who instructed the

plaintiff to submit the "new" complaint through

PAED_documents@paed.uscourts.gov. On January 8, 2021, the plaintiff filed

his "new" complaint (21-128) against the PPD. On January 14, 2021, due to

17

the pending "constructive discharge" of the plaintiff by the PPD for reporting corruption, the plaintiff filed an emergency petition for injunctive relief (21-128). On January 25, 2021, the Court ORDERED plaintiff's "new" complaint and petition for emergency injunctive relief (21-128) DIRECTED as the plaintiff "Second Amended Complaint" (SAC) (19-4616). The Court then "assisted" in terminating the plaintiff's career by DENYING the plaintiff's request for emergency injunctive relief **WITHOUT any OPPOSITION** from the defendants. The Court used terms like it was "clear" of the plaintiff's intent and the Clerk "inadvertently" docketed the plaintiff's "new" complaint. For the record and clarity, the Court was not CLEAR and the "new" filing was not docketed INADVERTENTLY as the attached emails will show. The plaintiff has been attempting to contact the Court since January 4, 2021. The Court NEVER responded and intentionally soiled this record to PREJUDICE the plaintiff. The plaintiff did not file THIS SAC. Furthermore, this is the first contact with the plaintiff regarding the "redirection" of this matter, "interpreting" the plaintiff's intentions (if the defendants would have made this filing, would the Court "redirect" or hold a conference for "clarity"). On January 26, 2021, panicked by the Court's actions and the end of his law enforcement career, with the denial of injunctive relief, the plaintiff attempted to FIX the COURT'S ERRORS by filing a second amended complaint, which the Court deemed the plaintiff's TAC (Document 27). On February 10, the defendants filed a motion to dismiss for failure to state a claim (ECF 28). On February 24, 2021 (filed 2/25/21, as plaintiff still not GRANTED ECF

privileges by the Court) the plaintiff "clearly" filed his response to the defendants' motion to dismiss, which the Court deemed the plaintiff's FAC (Document 29). The Court "transformed" Jacobs Motion to Dismiss response into the FAC with "legal gymnastics" against the pro se plaintiff by making the defendants' Motion to Dismiss (ECF 28) moot (These nefarious biases by the Court are blatant).The Court realizing the FLAWS (The indefensible Malicious Prosecution omitted) in the plaintiff's "response" observed his opportunity to strike down the plaintiff's claim and contacted the plaintiff's counsel of record and informed them to "officially" withdraw as plaintiff's counsel. Immediately after the plaintiff's motion to dismiss response, the Court contacted the plaintiff's former counsel on February 26, 2021 without any input or interaction from the plaintiff, asking the former counsel to "officially" withdraw as counsel for the plaintiff. On March 1, 2021 Counsel for the plaintiff filed a motion to withdraw as counsel pursuant to the Court's order (ECF 30). The Court quickly GRANTED the uncontested motion on March 2, 2021. On that same day, March 2, 2021, the Court ORDERED Jacobs' motion to dismiss response as his FAC completing his unequal justice. The Court ORDERED the FLAWED Motion to Dismiss response filed by the plaintiff to "supersede" all previous filings and once again, issued a threat, only to Jacobs, NOT to file anything else since his mission was complete, hedging his bets against the pro se plaintiff locating his FLAWS. On March 20, 2021, the defendants filed their motion to dismiss (ECF 33). On April 8, 2021 (approximately one month after defendants' constructive discharge of

Jacobs) the plaintiff filed his response to the defendants' motion to dismiss. In viewing his previous filings the plaintiff observed "Malicious Prosecution" (which had been included from the original amended complaint) was not included. The plaintiff included the malicious prosecution claim, which caused the Court to disregard the plaintiff's response (ECF 34). The Court knew and knows the malicious retaliatory prosecution cannot be defended. The plaintiff sought/seeks a jury trial of his peers. The Court is determined to make sure that does not occur. On June 16, 2021 the Court, once again, GRANTED the defendants' motion to dismiss (ECF 36) with supporting memorandum (ECF 35). In the supporting memorandum the Court justified disregarding the plaintiff's response to defendants' motion to dismiss by stating it would not hear malicious prosecution because it would be "prejudicial" to the defendants. The Court states the separate malicious prosecution complaint, which was timely filed, was "duplicative." The Court, further exhibiting its bias stated the plaintiff filed the TAC and FAC without leave. The Court INTENTIONALLY manufactured the TAC then transformed a motion to dismiss response into the FAC. After the second Third Circuit Appeal resulted in another remand, the Court showed its bias by DIRECTING the plaintiff's "Fifth Amended Complaint" to ONLY include the PA Whistleblower complaint and ONCE AGAIN threatened the plaintiff with dismissal if any other information was included in the COURT'S directed amended complaint. The pro se plaintiff has suffered harm and prejudice at the hands of this Court. After the Court's clear legal and clerical errors soiled

this matter beyond repair without amendments, one (the plaintiff) could argue the plaintiff only filed one "second amended complaint" (Document 34). The plaintiff filed responses to the defendants (including the Court, who is clearly sleeping with the enemy) in his document 27 and 29 filings. The Court is determined to DENY the black plaintiff JUSTICE. If the plaintiff was a black criminal he could call AL Sharpton to scream "No Justice No Peace" (after all that's how the Court views the plaintiff) and maybe receive this Court's recusal.

V.  **New Evidence Disregarded by Court in Support/Defense of Plaintiff's Claims**

The plaintiff has provided to the Court numerous "newly discovered" items of evidentiary value in support/defense of plaintiff's claims since the plaintiff's Motion to Dismiss response (Document 29) filed on February 25, 2021 (the Court "filed" this as the plaintiff's Fourth Amended Complaint). The new evidence included the following (Note: these items "intentionally" withheld/hidden from plaintiff by the defendants).

1. Tracy Tripp and Patricia Cummings instructing Jacobs' superiors of the Officer Involved Shooting Investigation Unit ("OISI") to remove Jacobs from the unit because of his race.

2. District Attorney Lawrence Krasner instructing Jacobs' superiors to terminate Jacobs law enforcement career with the Philadelphia Police Department for exposing corruption at the District Attorney's Office ("DAO").

3. The PPD and DAO conspiring to terminate Jacobs' law enforcement career, using Krasner and Tripp's attorney, Kia Ghee to coordinate termination.

4. Documents proving the "constructive discharge" of Jacobs. Documents provided to the Court included emails and memorandums.

5. The participation of Philadelphia Police Commissioner, Danielle Outlaw ("Outlaw") participating in the termination of Jacobs' law enforcement career after Jacobs' personally informed Outlaw of corruption at the Philadelphia Police Department.

6. A former Philadelphia Police Commissioner informed the plaintiff the Philadelphia Police Department violated departmental policy during the disciplinary process and constructive discharge of the plaintiff.

These are just a few instances where the Court abused its discretion in its bias treatment of the plaintiff. One (1) act would have been sufficient, including calling security on Jacobs during the November 21, 2022 conference.

**VI.**  **Argument**

FRCP 15(a)(1)(B) states a pleading may be amended as a matter of course if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

FRCP 15(a)(2) states "the court should "freely" give leave when "justice" so requires."

*Definition of freely: Without restriction or interference. Given in copious or generous amounts.*

The Court is also disregarding Third Circuit Precedent (Mullin v Balicki, 3rd Circuit, 2017, Precedential) The plaintiff was DENIED the opportunity to amend as a matter of course in response to a 12(b)(6) motion to dismiss. Further the plaintiff was not allowed to amend by the Court after the discovery of newly discovered evidence.

This Court has also parroted the defendants' claim that you have to be an "employee" to file a PA Whistleblower claim. The claim only indicates reporting public corruption and your employer retaliates. There is NOTHING that states ONLY your employer, it is quite the contrary. PA Supreme Court precedent (Bailets v Pennsylania Turnpike Commission, 2017) shows a "Whistleblower" can be anyone reporting public corruption. This is just another example of the Court colluding with the defendants to DISMISS the plaintiff's claims.

The Court has consistently interfered with this matter proceeding to a jury of the plaintiff's peers and its only mission is to "interfere." Although the Court has stated it has been "generous" with allowing the plaintiff leave, nothing could be further from the truth.

FRCP 60(a)(1) the Court may relive a party from a judgment for mistake, inadvertence, surprise, and/or excusable neglect.

FRCP 60(a)(2) the Court may relive a party from a judgment for newly

discovered evidence that, with reasonable diligence, could not have been

discovered in time to move for a new trial under Rule 59(b).

FRCP 60(a)(6) any other reason that justifies relief.

The Court has abused its discretion and "clearly" has not provided the plaintiff

Equal Justice Under the Law.

## VII.   <u>Conclusion</u>

Lady Justice wears a blindfold and in her outstretch arm she is holding a scale

indicating the fair and balance nature of the "Justice" system. Let's examine

the procedural history in this complaint pebble by pebble and place on each

side of the corresponding scale of "Justice" in this matter. The bias exuded by

this Court is so overwhelming in the defendants' favor that not only is the

scale held by Lady Justice tilting in the defendants' favor, but Lady Justice is

falling as a result of the weight of the bias decisions of this Court. The Court

has proven he views the plaintiff as a caricature of an American citizen, not

entitled to "true" justice. So this Court clearly has lifted the blindfold,

disregarded the scale, and is wielding his sword to destroy the plaintiff.

The hypocrisy of the Court is astounding. How can a family that proudly

places roman numerals behind their names indicate the plaintiff is not entitled

to the same level of pride? Is it because the plaintiff is black with a black

family? Is it due to the different garments used in employment? The Court

while acting in concert with the defendants destroyed the plaintiff's ability to

produce for his family and attempted to throw the plaintiff and his family on

the street with his denial of injunctive relief without opposition. So I asked the Court, who has loudly demonstrated to the plaintiff I will continue to let Larry Krasner kill black males and destroy black families as long as it's within my POWER. Mr. Jacobs you do not have Constitutional Rights and FREEDOMS in this COUNTRY. I am the Third, you are still a SLAVE.

Respectfully submitted,

Date: _4/10/23_

_____
Derrick Jacobs
Pro Se Plaintiff

## CERTIFICATE OF SERVICE

I, Derrick Jacobs, Plaintiff within the above-captioned matter, hereby certify that a true and correct copy, according to the Federal Rules of Civil Procedure was sent via email and/or ECF on the date shown below.

Date:   4/10/2023

_____
Derrick Jacobs,
Plaintiff, *Pro Se*