

# EXHIBIT A

SECTIONS　　LATEST　　POPULAR　　CALENDAR

NEWS  /  INTERESTS  /  PEOPLE

# COMPLAINT ALLEGES A PATTERN OF MISCONDUCT AT D.A.'S OFFICE

A. Benjamin Mannes
April 21st, 2021



**Philadelphia Weekly has obtained court documents filed earlier this month describing a pattern in which the Philadelphia District Attorney's office allegedly repeatedly pressured police**

detectives to change official statements and investigative reports in police use-of-force cases.

In an amended filing to a whistleblower lawsuit filed in U.S. District Court by former Philadelphia Police Det. Derrick Jacobs, court papers describe an attempt by Assistant District Attorney Vincent Corrigan to coerce Police Det. Daphne Smith into changing her sworn affidavit in her investigation of the police shooting of armed suspect Walter Wallace in October 2020.

The amended filing accuses Corrigan of behavior similar to that of ADA Tracy Tripp, who was originally **named** in Jacobs' 2019 whistleblower suit for instructing Jacobs to change his investigative reports in the case of Officer Ryan Pownall's 2017 shooting of suspect David Jones. In that case, he claimed he was "maliciously" prosecuted for refusing to change his testimony previously given to the Attorney General's Office and interim district attorney's administration prior to District Attorney Larry Krasner's election.

The 82-page filing in response to the city's motion to dismiss Jacobs' lawsuit also describes a link to Krasner, correlating requests by Corrigan and Tripp to public statements by Krasner about indictments and investigations into both cases, before the police department's Officer Involved Shooting unit had finished its official investigations.

> **Jacobs' lawsuit, which seeks $50 million in damages, may also illustrate a disturbing racial pattern.**



In the Wallace investigation, the filing states that Corrigan wanted Smith's affidavit based on her investigation at the crime scene, analysis of video evidence, and statements of witnesses changed – so that Krasner could make good on his public promise to conduct his own investigation. Police sources told PW that on Oct. 27, 2020, Corrigan told Smith to change her sworn search warrant affidavit where Wallace was described as "aggressively approaching and lunged" at the officers with a knife to "walking towards and continued to approach." The filing also states that "Assistant District Attorney Vincent Corrigan, informs Detective Smith he will not approve her affidavit unless she falsifies the facts known to her."

When Smith refused to falsify her affidavit, the complaint states that Corrigan had Lt. Jason Hendershot, Smith's commanding officer, void Smith's factual affidavit and author a separate affidavit recharacterizing Wallace's actions as less threatening. This allegedly happened without Smith's knowledge on Oct. 28, 2020. It was on the same day that the city descended into **riots** in response to the narrative that Wallace was unjustly shot by police. To date, the officers who shot Wallace have still not been cleared of their officer-involved shooting and returned to full duty.

Jacobs' filing further accuses Krasner of collusion with Shaka Johnson, the attorney representing the Wallace family in a multi-million-dollar lawsuit against the city. In 2019, Johnson was the attorney with whom Krasner negotiated a "phony proffer" with, according to Krasner, in the nearly eight-hour televised standoff where Maurice Hill shot multiple police officers.

Jacobs' complaint describes this pattern as collusion between the District Attorney's Office and ranking members of the police department, to include Commissioner Danielle Outlaw; which includes corruption and conspiracies to violate the civil rights of police officers; starting when the complaint alleges Tripp, at Krasner's behest, threatened to arrest Jacobs because he refused to change his 2017 statement in the investigation of Pownall. Jacobs also charges that, in response to media coverage of his whistleblower lawsuit, the city had served notice that it intends to suspend or possibly fire the detective for "conduct unbecoming – unspecified."

In his legal complaint, Jacobs stated that on Aug. 2, 2018, Tripp called Jacobs to go over his "potential grand jury testimony" for Pownall's shooting of suspect David Jones, a case that had already been declined for prosecution by the state Attorney General's Office following its investigation. Following his election, Krasner subsequently charged Pownall with first-degree murder. A judge subsequently reduced the charge to third-degree murder.

When Jacobs discussed the case with Tripp, she "knew Jacobs was not on the same page and would not go along with the criminal narrative" that Pownall was a murderer, Jacobs wrote in his civil complaint. So, according to court documents, Tripp "began to develop a plan to keep [Jacobs] silent, by withholding Jacobs' exculpatory testimony and ending with another criminal abuse of the court by initiating criminal proceedings against Jacobs, which she knew was false."

According to the complaint, on Sept. 27, 2018, Tripp told Hendershot, the commanding officer of the Officer Involved Shooting Investigation Unit [OISI], that she would be investigating members of his unit for leaking grand jury information, targeting Jacobs. On Nov. 9, 2018, "criminal proceedings were initiated against Jacobs for leaking grand jury information." Tripp subsequently informed Hendershot that "she was withdrawing prosecution against Jacobs because the transcripts for the case were lost." The complaint details a conversation where Tripp told Hendershot that "she had a private conversation with Judge Robert Coleman, and that as a result, the judge was supposed to conduct a fake admonishment of Jacobs to scare him."

The revelations in this allegation come as the latest in official misconduct scandals at Krasner's office. On Jan. 7, Common Pleas Judge Karen Simmons [reprimanded](#) ADA Rachel Black of the Special Investigations Unit, where both Corrigan and Tripp are also assigned, for being less than truthful regarding a witness in the case against former police Chief Inspector Carl Holmes. Simmons reportedly summoned Black's supervisors, Robert Listenbee and Patricia Cummings, to the court, and said she believed Black's "actions were intentional…to the point to be not candid and to mislead this court." Judge Simmons told Black's supervisors, "I realized I had had enough because if I can't trust Miss Black or anyone else from the District Attorney's office who are prosecuting these cases…then I don't know what to do with you, actually, I really don't."

> **I was a decorated law enforcement officer known for talking, being straightforward and honest. Then came Krasner. Krasner has assembled a group of prosecutors who consistently lie to the court in order to arrest police officers and set murderers free. When I refused to participate in their criminality, they came after my freedom and employment.**
>
> — DERRICK JACOBS

Cummings herself was the subject of the Showtime series "**Outcry**," where she was implicated in falsely accusing and imprisoning a Texas high school student for sexually assaulting a child. Here, in Philadelphia, U.S. District Court Judge Mitchell Goldberg issued a 23-page **admonishment** on Feb. 11, considering sanctions on Cummings for violating her "duty of candor" in her efforts to exonerate murder suspect Antonio Martinez. This was the same type of violation cited by Simmons of Black, who was working under Cummings' supervision. In his admonishment, Goldberg stated, henceforth he would require the Philadelphia district attorney to submit status reports on future cases, stating, "I typically do not impose requirements of this nature on counsel, but such oversight of the district attorney is now, unfortunately, warranted."

Jacobs' lawsuit, which seeks $50 million in damages, may also illustrate a disturbing racial pattern. Tripp and Corrigan are white and are accused in the complaint of pressuring Jacobs, who is African-American and Smith, who is Latina, to change official statements in officer-involved shooting investigations into white Philadelphia police officers.

The District Attorney's Office did not respond to PW's request for comment. A police department email in response to our request for comment read: "Due to ongoing litigation, we cannot comment on this case."

In a statement to PW, Jacobs said, "I was a decorated law enforcement officer known for talking, being straightforward and honest. Then came Krasner. Krasner has assembled a group of prosecutors who consistently lie to the court in order to arrest police officers and set murderers free. When I refused to participate in their criminality, they came after my freedom and employment."

Jacobs continued: "Krasner's corrupt district attorney's office has to be investigated criminally. They have destroyed the city of Philadelphia."

Jacobs' comment prompted PW to contact the two agencies who would have the authority and responsibility to criminally investigate members of the District Attorney's Office to ask if the allegations made in the Jacobs complaint do constitute crimes, and whether they could be investigated accordingly. In an email, Molly Stieber, spokesperson for the Pennsylvania Attorney General's Office, said, "If proven, these allegations could support state criminal charges. As is our practice, we can neither comment on, confirm nor deny any investigation."

Similarly, an email response from Jennifer Crandall, Public Information Officer at the United States Attorney's Office for the Eastern District of Pennsylvania, read, "The U.S. Attorney's Office can neither confirm nor deny the existence of any investigation – no comment."

@PublicSafetySME

If you read this story and liked it, consider joining AltPhilly, our new membership program that offers exclusive content, instant access to the editor and awesome perks for like-minded individuals. Since the fall, our coverage has gone against the grain of the mainstream media in Philly. Click here to learn more.

## Related

- Icepack | Jan. 14-21
- State of Our City | March 25-April 1
- Kanaval! will have you up off your feet in no time flat
- How I met the late, great crime novelist Elmore Leonard

criminal justice    Larry Krasner    lawsuits    news    people    philly

 A. Benjamin Mannes     @PublicSafetySME

A. Benjamin Mannes, MA, CPP, CESP, is a Subject Matter Expert in Security & Criminal Justice Reform based on his own experiences on both sides of the criminal justice system. He has served as a federal and municipal law enforcement officer and was the former Director, Office of Investigations with the American Board of Internal Medicine.

8/20/23, 2:03 PM
Complaint alleges a pattern of misconduct at DA's office - Philadelphia Weekly
Case 2:19-cv-04616-HB Document 123-1 Filed 08/21/23 Page 7 of 8

## UP NEXT IN NEWS



### How to Get Over Your Ex and Stop Obsessing Over Your Past Relationship

Aug 11, 2023



### Philadelphia's I-95 Reopens Ahead of Schedule, Bringing Relief and Hope to the City

Jun 23, 2023



### Major I-95 Colla Disrupts Comm Concerns

Jun 12, 2023

## MOST POPULAR THIS WEEK

**MORE POPULAR ARTICLES**

## UPCOMING PHILLY EVENTS

FOLLOW @PHILLYWEEKLY

   

## ABOUT PW

About Us

Our Writers

Dropbox Locations

Advertising & Partnerships

Submit An Event

## EXPLORE PW

Sections

Latest

Popular

Calendar

Philadelphia, PA

mail@philadelphiaweekly.com

© Copyright Philadelphia Weekly