IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DERRICK JACOBS, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF PHILADELPHIA, et al., <br><br> Defendants. | CIVIL ACTION NO. 19-4616 |

## DEFENDANT TRACY TRIPP'S MOTION FOR SUMMARY JUDGMENT

Defendant Tracy Tripp ("**Defendant Tripp**"), by and through her undersigned counsel, hereby moves this Honorable Court to grant summary judgment in her favor and against Plaintiff, Derrick Jacobs, as to his claims for Section 1983 Retaliation and Section 1983 Conspiracy. In support of this motion, Defendant Tripp incorporates the arguments and law set forth in the accompanying brief.

DATED: December 29, 2023

By: /s/ Christopher Nana-Sinkam
David Smith, Esquire (ID: 21480)
Anne Kane, Esq. (ID: 81872)
Christopher Nana-Sinkam, Esq. (ID: 320189)
**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102

124028280-1

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND .............................................................................................. 2

III. PROCEDURAL BACKGROUND ....................................................................................... 5

IV. ARGUMENT ........................................................................................................................ 5

   A. Legal Standard ................................................................................................................ 5

   B. Section 1983 Retaliation Standard .................................................................................. 6

   C. Plaintiff Suffered No Criminal Prosecution or Retaliatory Action ................................. 7

   D. Defendant Did Not Conspire to Terminate Plaintiff's Employment ............................... 8

      1. The Uncontroverted Evidence Shows that Plaintiff Willingly Resigned, and Was Not Dismissed. ............................................................................................................ 9

      2. The Uncontroverted Evidence Shows that Defendant Tripp Played No Role Whatsoever in Disciplinary Action Taken Against Plaintiff ..................................... 10

      3. There is No Record Evidence of an Agreement or Meeting of the Minds ............. 11

   E. Defendant Tracy Tripp's Actions Are Protected by Qualified Immunity ..................... 11

      1. Defendant Tripp did not violate Plaintiff's Constitutional Rights .......................... 12

      2. Plaintiff's alleged right was not clearly established ............................................... 13

V. CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby Inc.*,
   477 U.S. 242 (1986) .................................................................................................... 5

*Bayer v. Monroe County Children and Youth Serv.*,
   577 F.3d 186 (3d Cir.2009) ....................................................................................... 12

*Brantley v. Wysocki*,
   145 F.Supp.3d 407 (E.D.Pa. 2015) ............................................................................. 7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................................... 5

*Checker Cab Philadelphia v. Philadelphia Parking Authority*,
   306F.Supp.3d 748, 751 (E.D.Pa. 2018) ..................................................................... 6

*Cicchiello v. Beard*,
   726 F. Supp. 2d 522 (M.D. Pa. 2010), *aff'd sub nom. Cicchiello v. Sec'y Pennsylvania Dep't of Corr.*, 458 F. App'x 117 (3d Cir. 2012) ............................... 12

*Crawford-El v. Britton*,
   523 U.S. 574 (1998) .................................................................................................... 7

*Curly v. Klem*,
   298 F.3d 271 (3d Cir. 2002) ..................................................................................... 13

*In re Dauphin County Fourth Investigating Grand Jury*,
   19 A.3d 491 (Pa. 2011) ............................................................................................... 8

*Douglas Oil Co. of Cal. V. Petrol Stops N.W.*,
   441 U.S. 211 (1979) .................................................................................................... 8

*Egolf v. Witmer*,
   526 F.3d 104 (3d Cir. 2008) ..................................................................................... 12

*Frompovicz v. Hissner*,
   434 F.Supp.3d 269 (E.D.Pa. 2020) ......................................................................... 6, 9

*Glass v. City of Phila*,
   455 F.Supp.2d 302 (E.D.Pa. 2006) ............................................................................. 9

*Gruenke v. Seip*,
   225 F.3d 290 (3d Cir. 2000) ..................................................................................... 12

*Malley v. Briggs*,
    475 U.S. 335 (1986) ................................................................................................12

*Parker v. School District of Philadelphia*,
    415 F.Supp.3d 544 (E.D.Pa. 2019) ..........................................................................6

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ................................................................................................12

*Rosembert v. Borough of East Lansdowne*,
    14 F.Supp.3d 631 (E.D.Pa. 2014) .........................................................................8, 9

*Saucier v. Katz*,
    533 U.S. 194 (2001) ................................................................................................12

*Smith v. City of Allentown*,
    589 F.3d 684 (3d Cir. 2009) .....................................................................................6

*Sullivan v. Warminster Twp.*,
    765 F. Supp. 2d 687 (E.D. Pa. 2011) ......................................................................11

*Thomas v. Indep Twp*,
    463 F.3d 285 (3d Cir. 2006) .....................................................................................7

*United States v. Smith*,
    123 F.3d 140 (3d Cir. 1997) ..............................................................................8, 13

*Willis v. UPMC Children's Hosp. of Pittsburgh*,
    808 F.3d 638 (3d Cir. 2015) .....................................................................................6

*Wright v. City of Philadelphia*,
    409 F.3d 595 (3d Cir. 2005) ..............................................................................11, 12

**Statutes**

42 U.S.C. §1983 ................................................................................................................6

Grand Jury Secrecy Act ..................................................................................................13

**Other Authorities**

Fed. R. Civ. P. 56(a) .........................................................................................................5

Pa.R.Crim.P. Rule 556.10 .................................................................................................8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DERRICK JACOBS,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF PHILADELPHIA, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 19-4616 |

**DEFENDANT TRACY TRIPP'S BRIEF IN SUPPORT OF HER
MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Federal Rules of Civil Procedure, Defendant Tracy Tripp ("**Defendant Tripp**"), by and through her undersigned counsel, Dilworth Paxson LLP, hereby submits the following Brief in Support of Her Motion for Summary Judgment ("**Brief**").

**I.    INTRODUCTION**

Plaintiff, Derrick Jacobs' ("**Plaintiff**") surviving claims against Defendant Tripp are that: (a) she supposedly brought baseless criminal charges against him; and (b) she supposedly conspired with senior officials of the Philadelphia Police Department to have him fired.

After extensive discovery, there is no evidence to support either claim. Plaintiff was never charged with any crime. He mistakes his compelled testimony before the grand jury as being charged with a crime. As a matter of law, it was not.

Plaintiff was not fired from his employment with the Philadelphia Police Department. To the contrary, he resigned to avoid an investigation into his possible misconduct. And there is absolutely no evidence that Defendant Tripp had anything whatsoever to do with the Philadelphia

1

Police Department's investigation of Plaintiff's decision to resign rather than cooperate with an investigation.[1]

Finally, even if there were a scintilla of evidence providing a fact basis for Plaintiff's claims (which there is not), any conduct by Defendant Tripp would have been protected by immunity.

## II.     FACTUAL BACKGROUND

1. On June 8, 2017, an officer-involved shooting occurred whereby an individual was fatally injured. 4th Amended Complaint at ¶1.

2. While at a hearing involving the officer-involved shooting, Attorney Fortunato Perri made certain statements which led Defendant Tripp to reasonably believe a potential leak of grand jury information had occurred. Tripp Dep. at 34:21-35-11.[2]

3. Defendant Tripp understood what Mr. Perri said to indicate there was a leak of grand jury information. Tripp Dep. at 42:19-23.

4. Defendant Tripp spoke with Defendant Hendershot after she became aware of the potential grand jury leak to determine whether he knew anything about the leak. Tripp Dep. at 32:8-33:2.

5. Defendant Tripp asked Defendant Hendershot which members of the Office Involved Shooting Investigation Unit ("**OISI**") team were at the courthouse that day, based upon Defendant Tripp's understanding of Mr. Perri's statements. Tripp Dep. at 40:7-41:9.

6. Defendant Tripp found out from Defendant Hendershot that Plaintiff spoke with Mr. Perri. Tripp Dep. at 37:19-38:1.

---

[1] During the deposition of Defendant Dennis Wilson, when questioned by Plaintiff as to the extent of Plaintiff's discipline, Defendant Wilson testified that Plaintiff's violation was a minor violation and Plaintiff would not have been terminated for that incident, making Plaintiff's decision to resign a massive miscalculation. Wilson Dep. at 145:7-24.

[2] Excerpts from the Deposition of Defendant Tracy Tripp are attached hereto as **Exhibit "A."**

2

7. Defendant Tripp never even initiated a criminal investigation against Plaintiff. Tripp Dep. at 31:21-23. Rather, Defendant Tripp questioned Plaintiff about the leak before the grand jury investigating the officer involved shooting. Plaintiff declined to answer those questions, invoking his right against self-incrimination under the Fifth Amendment. Jacobs Dep. at 143:4-8; 149:6-6; 185:10-12.

8. Defendant Tripp never initiated a criminal proceeding against Plaintiff. Tripp Dep. at 31:18-20.

9. Defendant Tripp, in August 2019, informed Plaintiff that the grand jury investigation with respect to the leak was not going to proceed further and was closed. Tripp Dep. at 84:20-85:3.

10. Defendant Tripp informed Defendant Hendershot that were was no criminal prosecution against Plaintiff and therefore no charges to withdraw. Tripp Dep. at 93:12-94:1.

11. On January 18, 2020, Plaintiff participated in a podcast titled Search Warrant: Clear and Present danger, in which he disparaged the Philadelphia District Attorney, Lawrence Krasner and Defendant Tripp by referring to them as criminals. Pace Dep. at 31:17-21.[3]

12. As a result of appearing on the podcast and levying the aforementioned allegations, the Philadelphia Police Department commenced an internal disciplinary investigation into Plaintiff's actions. 4th Amended Complaint at ¶ 91.

13. The disciplinary investigation was initiated by Defendant Wilson. Hendershot Dep. at 171:13-16.[4]

14. Defendant Wilson never spoke to Defendant Tripp regarding Plaintiff. Wilson Dep. at 164:22-23.[5]

---

[3] Excerpts from the Deposition of Defendant D.F. Pace are attached hereto as **Exhibit "B."**
[4] Excerpts from the Deposition of Defendant Jason Hendershot are attached hereto as **Exhibit "C."**
[5] Excerpts from the Deposition of Defendant Dennis Wilson are attached hereto as **Exhibit "D."**

15. On January 27, 2020, in connection with the internal Philadelphia Police Department disciplinary investigation, Defendant Hendershot provided Plaintiff with a memorandum notifying him of a pending disciplinary interview. 4th Amended Complaint at ¶ 99.

16. On January 30, 2020, Defendant Hendershot conducted a disciplinary interview with Plaintiff. 4th Amended Complaint at ¶106.

17. Following the interview, Defendant Hendershot sent correspondence up the chain of command and recommended disciplinary charges against Plaintiff for violation of policy. Hendershot Dep. at 71:20-22.

18. On February 11, 2020, Plaintiff was charged by the Philadelphia Police Department with conduct unbecoming an officer and neglect of duty. 4th Amended Complaint at ¶ 115.

19. The individual responsible for making the decision concerning the charges against Plaintiff was Defendant Pace, as commanding officer of the Police Board of Inquiry. Pace Dep. at 106:9-12; Hendershot Dep. at 126:14-127:17.

20. There is no factual evidence that Defendant Tripp had any involvement in Plaintiff's discipline. Jacobs Dep. at 181:5-12; 191:15-22.[6]

21. Defendant Wilson testified the discipline against Plaintiff was a minor violation and Plaintiff's employment would not have been terminated as a result, but Plaintiff might have been subjected to a short disciplinary period. Wilson Dep. at 145:7-24.

22. Plaintiff resigned from the Philadelphia Police Department to avoid discipline. Hendershot Dep. at 45:22-24; Jacobs Dep. at 189:11-14; Jacobs Dep. 2 at 267:19-268:11; 295:1-2; 296:24-297:4.[7]

---

[6] Excerpts from the August 15, 2023 Deposition of Plaintiff Derrick Jacobs are attached hereto as **Exhibit "E."**
[7] Excerpts from the August 3, 2023 Deposition of Plaintiff Derrick Jacobs (Jacobs Dep. 2) are attached hereto as **Exhibit "F."**

### III.   PROCEDURAL BACKGROUND

Plaintiff instituted this action on October 4, 2019 by filing a complaint *pro se* [ECF 1]. Plaintiff's initial complaint named the City of Philadelphia, the Philadelphia District Attorney's Office, Lawrence Krasner, and Tracy Tripp as Defendants and generally alleged misconduct against the Defendants which allegedly led to the end of his employment with the City of Philadelphia. *Id.* After the filing of countless amended complaints by Plaintiff, which included adding additional defendants Jason Hendershot, Dennis Wilson, and D.F. Pace, all defendants filed a motion to dismiss on March 20, 2021 [ECF 33], which this Court granted on June 16, 2021 [ECF 35, 36]. Plaintiff appealed to the Third Circuit Court of Appeals. The Third Circuit reversed and remanded the Section 1983 retaliation claim, Section 1983 conspiracy claim, and Pennsylvania state whistleblower claim [ECF 40]. Thereafter, this Court, upon the motion to dismiss by all defendants, dismissed Plaintiff's whistleblower claim [ECF 67]. The only remaining claims against Defendant Tripp are: (I) Retaliation under Section 1983; and (II) Conspiracy under Section 1983.

### IV.   ARGUMENT

#### A.   Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). To successfully oppose entry of summary judgment, the non-moving party must designate specific factual averments through the use of affidavits or other permissible evidentiary material that demonstrate a triable factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Summary judgment is appropriate, "if the moving party has

5

shown that the evidentiary material on the record, if reduced to **admissible evidence**, is insufficient to permit the nonmoving party to carry its burden of proof." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (emphasis added). "Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment." *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009).

"Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by 'pointing out to the district court that there is an absence of evidence to support the non-moving party's case.'" *Checker Cab Philadelphia v. Philadelphia Parking Authority*, 306 F.Supp.3d 748, 751 (E.D.Pa. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Summary judgment is appropriate if the non-moving party fails to rebut the motion by making a factual showing 'that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Id*.

### B.  Section 1983 Retaliation Standard

Generally, a party seeking to "establish any claim under §1983, a plaintiff must demonstrate that: (1) the conduct at issue was committed by a person acting under the color of state law, and (2) the complained-of-conduct deprived the plaintiff of rights secured under the Constitution or federal law." *Parker v. School District of Philadelphia*, 415 F.Supp.3d 544, 552 (E.D.Pa. 2019) (citing *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

A party is permitted to bring a retaliation claim in the context of a Section 1983 violation. "To prevail on a retaliation claim under 42 U.S.C. §1983, plaintiff must demonstrate: (1) that he was engaged in a constitutionally protected activity; (2) that he suffered an 'adverse action' by government officials; and (3) that there is a 'causal link between the exercise of his constitutional rights and the adverse action taken against him." *Frompovicz v. Hissner*, 434 F.Supp.3d 269, 283 (E.D.Pa. 2020) (citing *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001)). When specifically discussing

a possible violation of the First Amendment, i.e. the right to free speech, courts have articulated the plaintiff's burden slightly differently, holding that the plaintiff must show "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep Twp,* 463 F.3d 285, 296 (3d Cir. 2006). "The key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *Thomas*, 463 A.2d at 296; *see also, Crawford-El v. Britton*, 523 U.S. 574, 589 n.10 (1998) ("The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right.").

## C. Plaintiff Suffered No Criminal Prosecution or Retaliatory Action

Throughout Plaintiff's various amended complaints, he alleges that he was improperly subject to retaliation in that Defendant Tripp initiated criminal proceedings against him as a result of her investigation into the leak of grand jury information. Plaintiff's mistaken belief and his inability produce any evidence to support his allegations and carry his burden is fatal to his claim.

Defendant Tripp testified that based upon comments made during a proceeding by an attorney not representing Plaintiff that she believed it was very possible that a leak of grand jury information had occurred. Tripp Dep. at 42:21-23. Based upon this good-faith belief, Defendant Tripp utilized the proper channels to speak to Plaintiff's superior, Defendant Hendershot, regarding the possible leak and who, if anyone, may have been responsible for same. Tripp Dep. at 32:14-33:2. Defendant Tripp did not initiate any criminal proceeding against Plaintiff. Tripp Dep. at 31:18-23. Indeed, Plaintiff also admitted that he was never criminally charged by Defendant Tripp. Jacobs Dep. at 20:11-12; *see also, Brantley v. Wysocki*, 145 F.Supp.3d 407, 412 (E.D.Pa. 2015) (holding that criminal charges are an adverse action for

7

purposes of 1983 retaliation claim). Plaintiff was simply provided a court notice to come and provide testimony before the grand jury as to his involvement in any grand jury leak. Jacobs Dep. at 12:13-19. Plaintiff declined to provide substantive testimony, claiming his Fifth Amendment right against self-incrimination. The act of being summoned to testify before a grand jury does not amount to criminal prosecution, as Plaintiff suggests. Defendant Tripp initiated a good faith investigation into the leak of grand jury information and ultimately, after investigating the leak of grand jury information, informed Plaintiff that the grand jury investigation with respect to the leak was not going to proceed and was closed. Tripp Dep. at 84:20-85:3.

These are the facts and Plaintiff can produce no admissible evidence to fulfil his burden that he was subject to any retaliatory conduct. Accordingly, Defendant Tripp is entitled to summary judgment on Plaintiff's Section 1983 retaliation claim.[8]

### D. Defendant Did Not Conspire to Terminate Plaintiff's Employment

To state a claim for conspiracy under Section 1983, "a plaintiff must establish (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Rosembert v. Borough of East Lansdowne*, 14 F.Supp.3d 631, 647 (E.D.Pa. 2014) (*quoting Gale v. Stori*, 608 F.Supp.2d 629, 635 (E.D.Pa. 2009).

---

[8] Plaintiff similarly cannot fulfil his burden as to the remaining two elements required for a Section 1983 retaliation claim. First, Plaintiff cannot produce any evidence to show he was engaged in constitutionally protected conduct with respect to the leak of grand jury information. Courts in this Circuit have repeatedly held that First Amendment Protections often give way to the importance of the secrecy of the grand jury process. *See*, *e.g.*, *United States v. Smith*, 123 F.3d 140, 143-44 (3d Cir. 1997) (denying the press access to briefs and hearings because "there is no presumptive First Amendment or common law right of access to them if secret grand jury material would be disclosed by that access."). "Among the few limitations to the First Amendment right of access in criminal hearings, none is more important than protecting grand jury secrecy." *Douglas Oil Co. of Cal. V. Petrol Stops N.W.*, 441 U.S. 211, 218 (1979). Pennsylvania has also recognized the importance of grand jury secrecy. *See*, *In re Dauphin County Fourth Investigating Grand Jury*, 19 A.3d 491 (Pa. 2011) ("the secrecy of the grand jury proceedings is 'indispensable to the effective functioning of a grand jury'") (internal citations omitted). "All evidence, including exhibits and all the testimony presented to the grand jury, is subject to grand jury secrecy, and no person may disclose any matter occurring before the grand jury, except as otherwise provided." Standard Pennsylvania Practice 2d, §132:425; *see also* Pa.R.Crim.P. Rule 556.10. Therefore, Plaintiff cannot demonstrate he was engaged in constitutionally protected conduct by allegedly leaking grand jury information. Finally, with respect to the causal link element of Plaintiff's claim, this element cannot be satisfied where there is no constitutionally protected conduct and no retaliatory action taken by the supposed violator. Plaintiff is also unable to produce any evidence to satisfy this prong. As such, Plaintiff cannot fulfill the third element of his Section 1983 retaliation claim.

"A plaintiff must allege that there was an agreement or meeting of the minds to violate his constitutional rights." *Id.* A section 1983 civil conspiracy claim requires a predicate federal violation. *Glass v. City of Phila,* 455 F.Supp.2d 302, 359 (E.D.Pa. 2006); *see also, Frompovicz v. Hissner*, 434 F.Supp.3d 269, 283 (E.D.Pa. 2020) (holding that determination that no evidence existed to support due process claim precluded plaintiff from using said claims as anchor violations for his conspiracy claim).

As established throughout this Brief, Plaintiff can produce no admissible evidence or testimony to meet his burden of demonstrating a Section 1983 retaliation claim relating to Defendant Tripp's actions in investigating the leak of grand jury information and deciding not to bring any formal charges against Plaintiff. Therefore, as to Plaintiff's Section 1983 conspiracy claim surrounding Defendant Tripp's investigation of the grand jury leak, it must inevitably fail, as Plaintiff cannot establish the requisite predicate federal violation. Further, Plaintiff's conspiracy claim must also fail because (1) there is no evidence Plaintiff was terminated, as he willingly resigned to avoid investigation; (2) there is no evidence Defendant Tripp had any role in Plaintiff's discipline as a result of the podcast; and (3) there is no evidence of any agreement or meeting of the minds among the Defendants.

### 1. The Uncontroverted Evidence Shows that Plaintiff Willingly Resigned, and Was Not Dismissed.

The record plainly shows that Plaintiff was not fired from his employment with the Philadelphia Police Department. There is no document or testimony evidencing that his employment was terminated. To the contrary, he resigned to avoid an investigation into his possible misconduct. In fact, the uncontroverted evidence shows that Plaintiff's employment would not have been terminated had he not chosen unilaterally to resign. During the deposition of Defendant Dennis Wilson, when questioned by Plaintiff as to the extent of Plaintiff's discipline,

Defendant Wilson testified that Plaintiff's violation was a minor violation and Plaintiff would not have been terminated for that incident. Wilson Dep. at 145:7-24. Plaintiff may now wish he had not resigned willingly, but his regret cannot change the facts as they actually played out. Plaintiff willingly resigned his employment, and therefore Plaintiff's conspiracy claims fail.

### 2. The Uncontroverted Evidence Shows that Defendant Tripp Played No Role Whatsoever in Disciplinary Action Taken Against Plaintiff

Plaintiff's conspiracy claim must also fail as to Defendant Tripp, as the Defendants' testimony evidences that Defendant Tripp was not involved in any way in the discipline process By way of example, Plaintiff's direct supervisor at the time, Defendant Hendershot, testified that after interviewing Plaintiff concerning his appearance on the podcast, he believed there was a violation of policy, he sent that information up the chain of command, and that the only individual responsible for approving charges was the commanding officer of the Police Board of Inquiry, Defendant Pace. Hendershot Dep. at 126:14-127:17. Defendant Hendershot also testified that it was Defendant Wilson who initiated the discipline investigation into Plaintiff as a result of his podcast appearance. Hendershot Dep. at 171:13-16. Additionally, Defendant Wilson, when questioned at his deposition regarding whether or not the District Attorney's Office would be involved in the removal of certain police officers from units, replied "I don't think that would be something that anyone would really take serious. It seems crazy to me. The DA's office don't decide who we put in our units." Wilson Dep. at 35:1-15. In fact, Defendant Wilson testified that he has never spoken with Defendant Tripp about the Plaintiff. Wilson Dep. at 164:22-23. Defendant Pace also testified that the decision concerning the charges brought against Plaintiff for his participation in the podcast were "my decision with respect to my evaluation of the facts of the case." Pace Dep. at 106:9-12.

Finally, Plaintiff's own testimony at his deposition revealed that he had no facts regarding any involvement of Defendant Tripp in his disciplinary proceeding aside from what he claims Defendant Hendershot told him. Jacobs Dep. at 181:5-12; 191:15-22. This self-serving testimony in insufficient to carry Plaintiff's burden. Even if this testimony *was* sufficient to carry his burden, it is entirely inadmissible. This testimony is classic hearsay. A statement made out-of-court by someone else cannot be used for the truth of the matter asserted with respect to Defendant Tripp.

       **3.**     **There is No Record Evidence of an Agreement or Meeting of the Minds**

Finally, the record is entirely devoid of any evidence whatsoever that Defendants had a common purpose of any kind. Plaintiff cannot produce any admissible evidence to demonstrate that Defendant Tripp acted in concert with any of the other Defendants to conspire to deprive Plaintiff of his civil rights. Plaintiff's unsupported and conclusory allegations need not be credited at this stage. To survive, Plaintiff's conspiracy claim needs to be supported by evidence not *just* that various actors played a role in his discipline, but that the decisions they made and actions they took were in furtherance of an affirmative actual agreement that those actors made to advance a goal that those actors all shared. There is no evidence whatsoever to support that conclusion. Plaintiff's conspiracy claim fails and should be dismissed as to Defendant Tripp.

       **E.**     <u>**Defendant Tracy Tripp's Actions Are Protected by Qualified Immunity**</u>

Qualified immunity is a powerful shield which is designed to protect public officials from "undue interference with their duties and from potentially disabling threats of liability." *Wright v. City of Philadelphia,* 409 F.3d 595, 599 (3d Cir. 2005) (internal quotation marks and citation omitted). When it applies, "[q]ualified immunity is an immunity from suit, not a mere defense to liability." *Sullivan v. Warminster Twp.*, 765 F. Supp. 2d 687, 709 (E.D. Pa. 2011) (internal quotation marks and citation omitted). Public officials are protected unless their actions "violate clearly established statutory or constitutional rights of which a reasonable person would have

11

known." *Wright*, 409 F.3d at 599–600 (internal quotation marks and citation omitted). Qualified immunity is, therefore, a two-step inquiry: 1) has there been a violation of a constitutional right; and 2) whether that right was clearly established at the time of the alleged violation? *Cicchiello v. Beard*, 726 F. Supp. 2d 522, 531–32 (M.D. Pa. 2010), *aff'd sub nom. Cicchiello v. Sec'y Pennsylvania Dep't of Corr.*, 458 F. App'x 117 (3d Cir. 2012).

Importantly, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. " *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (receded from on other grounds *Pearson v. Callahan*, 555 U.S. 223 (2009)). "It is now axiomatic that our qualified immunity analysis gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Egolf v. Witmer*, 526 F.3d 104, 110–11 (3d Cir. 2008) (internal quotation marks and citation omitted). Qualified immunity can be- and often is- decided at summary judgment. "[I]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Bayer v. Monroe County Children and Youth Serv.*, 577 F.3d 186, 193 (3d Cir.2009) (*quoting Saucier*, 533 U.S. at 202, 121 S.Ct. 2151). "The evaluation of a qualified immunity defense is appropriate for summary judgment because the court's inquiry is primarily legal: whether the legal norms the defendant's conduct allegedly violated were clearly established." *Gruenke v. Seip,* 225 F.3d 290, 299 (3d Cir. 2000).

### 1. **Defendant Tripp did not violate Plaintiff's constitutional rights**

Once a defendant raises qualified immunity, the plaintiff bears the burden of proving: (1) that the defendant violated the plaintiff's constitutional right; and (2) that it would have been clear

12

to a reasonable person that the defendant's conduct violated that right. *Curly v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002).

While a party has an established First Amendment right to free speech under the United States Constitution, the Constitution does not explicitly recognize the right of a party to divulge information protected by the secrecy of a grand jury proceeding. As set forth in Section C above, Plaintiff suffered no violation of his constitutional rights. Defendant Tripp's questioning of Plaintiff before the grand jury (to which Plaintiff invoked his Fifth Amendment rights), did not violate any constitutional right. Plaintiff was never criminally charged and ultimately, the grand jury investigation was closed without any finding against Plaintiff. Plaintiff cannot produce any admissible evidence to demonstrate that his constitutional rights were violated as a result of this lawful process. Accordingly, Defendant Tripp's actions are protected by qualified immunity.

### 2. Plaintiff's alleged right was not clearly established

Relatedly, Defendant Tripp is protected from Plaintiff's Section 1983 retaliation claim on the basis of qualified immunity because any alleged "right" Plaintiff claims was violated was not clearly established at the time of the alleged violation. Indeed, as set forth in footnote 2 above, "there is no presumptive First Amendment or common law right of access to them if secret grand jury material would be disclosed by that access." *U.S. v. Smith*, 123 F.3d at 143-44.

Furthermore, Plaintiff cannot produce any evidence to demonstrate that his alleged right to discuss protected grand jury information was a clearly established right at the time Defendant Tripp initiated a lawful investigation into the grand jury leak. Similarly, Plaintiff cannot produce any evidence to establish that it would have been clear to a reasonable person that Defendant Tripp's actions, in investigating a possible leak of grand jury information, information afforded the highest protection from disclosure under the Pennsylvania Grand Jury Secrecy Act, was a clear violation of Plaintiff's alleged rights. This lack of admissible evidence is fatal to Plaintiff's claim.

## V.     **CONCLUSION**

For the foregoing reasons set forth in this Brief, summary judgment is appropriate as to Plaintiff's Section 1983 retaliation claim and Section 1983 conspiracy claim as to Defendant Tracy Tripp and all of Plaintiff's remaining claims as to Defendant Tracy Tripp should be dismissed, with prejudice.

DATED: December 29, 2023                                    */s/ Christopher Nana-Sinkam, Esq.*
                                                                                    David Smith, Esquire (ID: 21480)
                                                                                    Anne Kane, Esq. (ID: 81872)
                                                                                    Christopher Nana-Sinkam, Esq. (ID: 320189)
                                                                                    **DILWORTH PAXSON LLP**
                                                                                    1500 Market Street, Suite 3500E
                                                                                    Philadelphia, PA 19102
                                                                                    (215) 575-7000
                                                                                    *Counsel for Defendant, Tracy Tripp*

## **CERTIFICATE OF SERVICE**

I, Christopher C. Nana-Sinkam, hereby certify that on December 28 2023 a true and correct copy of the foregoing Motion for Summary Judgment and Supporting Brief was served via the Court's ECF System upon Plaintiff and all counsel of record in this matter.

*/s/ Christopher Nana-Sinkam, Esq.*
Christopher C. Nana-Sinkam, Esq.
